UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) ) ) | |
| Plaintiff, ) ) ) | |
| v. ) ) ) | Civil Action No. 89-1854 (RCL) |
| PAUL A. BILZERIAN, et al. ) ) ) | **FILED** |
| Defendants ) ) | MAY 1 1 2009 |
| | NANCY MAYER WHITTINGTON, CLERK U.S. DISTRICT COURT |

**MEMORANDUM OPINION**

Now before the Court are the motions of movants Ernest B. Haire [901] and National Gold Exchange, Mark Yaffe, and Alan Yaffe [896] for an order holding the defendant, Paul A. Bilzerian, and those acting in concert with him in civil contempt for failure to comply with the Court's order on July 19, 2001, prohibiting Bilzerian from commencing any proceeding in any court without permission of this Court. Also before the Court are various other motions that have spawned out of the orders to show cause. Upon consideration of the motions, and the responses by Bilzerian and those alleged to have acted in concert with him, the Court finds that Paul Bilzerian, David E. Hammer, and the *Puma Foundation* plaintiffs (the Puma Foundation, Bicoastal Holding Company, and Overseas Holdings Limited Partnership) are in civil contempt of this Court's order. The movants have not shown by clear and convincing evidence that any other party is in contempt of this Court's 2001 order.

I.  **BACKGROUND**

1

Paul Bilzerian was convicted in the United States District Court for the Southern District of New York of numerous violations of federal securities laws. On September 27, 1989, he was sentenced to four years in prison (later reduced to 20 months), fined $1.5 million dollars, and ordered to perform 250 hours of community service. *S.E.C. v. Bilzerian*, 29 F.3d 689, 691 (D.C. Cir. 1994). The same conduct that led to Bilzerian's convictions for securities fraud later served as the basis for the SEC's civil action against him in the United States District Court for the District of Columbia. In the civil action, Judge Stanley S. Harris entered orders in 1993 enjoining Bilzerian from future securities violations and disgorging $33,140,787, and those orders were affirmed by the Court of Appeals in 1994. *Id.*

Following entry of those judgments, Bilzerian, and those acting in concert with him, evaded enforcement of the judgments and continued filing frivolous lawsuits in an effort to undermine the judgments. In 2000, Judge Harris found Bilzerian in contempt of the 1993 judgments and appointed a receiver to collect Bilzerian's assets to effectuate the judgment. (Order [185], December 22, 2000.) Judge Harris also incarcerated Bilzerian for noncompliance with Court orders. *S.E.C. v. Bilzerian*, 131 F. Supp. 2d 10, 18 (D.D.C. 2001). When Bilzerian continued to evade the orders and judgments entered against him, this Court held that Bilzerian was in contempt of the receivership order on July 19, 2001. (Order [416], July 19, 2001.) The Court also enjoined Bilzerian from commencing any proceedings in any court without permission of this Court, in the July 19, 2001 Order, which provided that:

> ". . . it is further ORDERED that Defendant Paul A. Bilzerian, his agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are prohibited from filing or causing the filing of any complaint, proceeding or motion in the United States Bankruptcy Court for the

Middle District of Florida, or from commencing or otherwise causing the commencement of any proceedings in any court, other than in this Court or in appeals of this Court's Orders to the United States Court of Appeals for the District of Columbia, without prior application to and approval of this Court . . ."

The Court of Appeals affirmed this Court's entry of an injunction barring Bilzerian from "commencing any proceeding in any court." *S.E.C. v. Bilzerian*, 75 Fed. Appx. 3, 4 (D.C. Cir. 2003).

The current procedural posture arises from motions filed by movants Ernest B. Haire and National Gold Exchange, Mark Yaffe, and Alan Yaffe, alleging that Bilzerian is yet again in contempt of court orders, this time the orders that prohibit him or anyone acting in concert with him from commencing any proceeding in any court.

Specifically, Haire alleges that the following lawsuits are in violation of this Court's order: *Bilzerian v. Haire*, Case No. 08-09149 in the Thirteenth Circuit Court in Hillsborough County, Florida; *Jack Rabbit Limo Service v. Haire*, Case No. 06-007700 in the Thirteenth Circuit Court in Hillsborough County, Florida; *Puma Foundation et al. v. Haire*, Case No. 06-009816 in the Thirteenth Circuit Court in Hillsborough County, Florida; as well as a miscellaneous action filed against Haire for failing to appear for a deposition related to this case, Case No. 08-mc-212 in the Middle District of Florida. Movants National Gold Exchange, Mark Yaffe, and Alan Yaffe have separately alleged that the lawsuit of *Caligula Corporation v. National Gold Exchange Inc., et al.*, Case No. 07-CA-017763 in the Thirteenth Circuit Court in Hillsborough County, Florida, as well as Bilzerian's counterclaims and crossclaims in that action, violate this Court's order.

After reviewing the filings by Haire, National Gold Exchange, Mark Yaffe, and Alan

3

Yaffe, this Court entered orders to show cause as to why Bilzerian should not be held in contempt, as well as those who were alleged to have been acting in concert with Bilzerian: Terri L. Steffen, Overseas Holdings Limited Partnership, Jack Rabbit Limo Service, Inc., Puma Foundation, Bicoastal Holding Company, David E. Hammer, Esq., Robert Bleakley, Esq., and the Caligula Corporation. (Orders [913], [914].) The parties have now responded to the orders to show cause, and the Court finds that Bilzerian, David E. Hammer, and the *Puma Foundation* plaintiffs are in contempt for the reasons set forth below.

## II.  DISCUSSION

### A.  Applicable Law

The power to punish parties for contempt is inherent in all courts, and its existence is essential to its ability to enforce judgments and orders. *Broderick v. Donaldson*, 437 F.3d 1226, 1234 (D.C. Cir. 2006). Civil contempt, unlike the punitive remedy of criminal contempt, is designed to coerce compliance with a court order or to compensate a complainant for losses sustained. *In re Fannie Mae Securities Litigation*, 552 F.3d 814, 823 (D.C. Cir. 2009). Civil contempt "will lie only if the putative contemnor has violated an order that is clear and unambiguous, and the violation must be proved by clear and convincing evidence." *Broderick*, 437 F.3d at 1234. Clear and convincing evidence in the context of civil contempt means "a quantum of proof adequate to demonstrate to a 'reasonable certainty' that a violation has occurred." *Levin v. Tiber Holding Corp.*, 277 F.3d 243, 250 (2d Cir. 2002).

Additionally, non-parties may be held in civil contempt where they are successors in interest to a party bound by an order or "aiders and abettors" to a violation of the order by a party

thereto. *See Regal Knitwear Co. v. N.L.R.B.*, 324 U.S. 9, 13–14 (1945). This principle is codified in Federal Rule of Civil Procedure 65(d)(2), which states that every order granting an injunction binds the parties, the parties' officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with the parties' or their agents—provided that they have actual notice of the order.

### B. Analysis

#### 1. Paul Bilzerian

With respect to Paul Bilzerian, the movants have met their burden of showing that he is in civil contempt of this Court's 2001 order. Paul Bilzerian is subject to a clear and unambiguous order, and the movants have shown that he has violated that order by clear and convincing evidence.

The meaning of the 2001 order is clear. Paul Bilzerian is prohibited "from filing or causing the filing of any complaint, proceeding or motion in the United States Bankruptcy Court for the Middle District of Florida, or from commencing or otherwise causing the commencement of any proceedings in any court." Indeed, Bilzerian has shown that he is well-aware of the meaning of the Court's order. (*See, e.g.*, Paul Bilzerian's Motion for Permission to File Motions [888] at 2 ("On July 5, 2001 and July 19, 2001, this Court entered *ex parte* injunctions, that permanently enjoined me from commencing any proceeding in any court.").) The United States Court of Appeals for the District of Columbia Circuit has affirmed both orders. *S.E.C. v. Bilzerian*, 75 Fed. Appx. 3 (D.C. Cir. 2003).

As a result, Bilzerian's arguments that he did not believe that the injunction still applied to him because he has already satisfied the disgorgement judgment and because the order is

ambiguous are completely without merit. Moreover, those arguments have already been rejected by this Court and the Court of Appeals. *Bilzerian*, 75 Fed. Appx. at 4 (D.C. Cir. 2003) (stating that Bilzerian's argument that he has satisfied a disgorgement judgment as a matter of law is without merit).

Not only is the meaning of the order clear, but it is also clear that Bilzerian has violated the order. He has filed at least one original lawsuit, one counterclaim, and one motion for a party to be held in contempt in his own name.[1] Those lawsuits, and any other lawsuits that Bilzerian has filed, are in direct and clear violation of this Court's order.

In addition to the lawsuits, motions, and claims filed in his own name, Bilzerian is in contempt for filing suit in the *Puma Foundation, et al*[2] *v. Ernest B. Haire* litigation. Although Bilzerian denies active participation in the suit, on the civil cover sheet that says "Signature of Attorney or Party Initiating Action," Paul Bilzerian signed the form, with the words, "Paul A. Bilzerian for David Hammer." (Docket [924-4] at 12.) In other words, Bilzerian himself literally filed the *Puma Foundation* lawsuit, belying his claim that he is not in contempt for his conduct in

---

[1] *Bilzerian v. Haire,* Case No. 08-09149 in the Thirteenth Circuit, Hillsborough County, Florida, Complaint filed as Exhibit C to Haire's Motion for an Order to Show Cause [901-2] at 18; Paul A. Bilzerian's Answer To Amended Third-Party Complaint, Affirmative Defenses, Counterclaim Against National Gold Exchange, Inc., and Crossclaim Against Mark Yaffe and Alan Yaffe, filed on April 21, 2008 in Thirteenth Circuit, Hillsborough County Florida, Complaint filed as attachment to Yaffe's memorandum in support of an order to show cause [900-2]; Motion for Contempt, Case No. 08-mc-212 in the Middle District of Florida, filed as [904] at 3–10.

[2] The *Puma Foundation* suit is a two-count case by Puma, Bicoastal, and Overseas Holdings Limited Partnership (the *Puma Foundation* plaintiffs) against Haire. (Puma Foundation's Response [928] at 5.) Although the Court issued orders to show cause as to each entity, both Haire and the respondents have treated the respondents interchangeably. It is unclear to the Court how they differ in any meaningful way for purposes of this litigation. *See infra* at 12–14.

the *Puma Foundation* litigation. Bilzerian admits that he filed the lawsuit, but asserts that he was merely serving as a runner for Hammer. Even if this claim were true, Paul Bilzerian is to play no role in the commencing of a lawsuit. Accordingly, by filing the *Puma Foundation* lawsuit he was in contempt of this Court's 2001 order.

The evidence indicates, however, that Bilzerian was not merely a runner for Hammer but is a driving force behind the *Puma* litigation. He sent an e-mail to Haire's counsel just before the *Puma Foundation* lawsuit was filed, in which he states that Terri Steffen (Bilzerian's wife and the nominal owner of Puma) "will be forced to file various papers including a new action against Ernie. . ." He also states that he has "advised [Steffen's] attorneys that, contrary to conclusions that they have drawn from the court record, I do not believe you intended that Ernie would violate all our understandings with respect to the OHLP litigation." (Ex. D to Haire's Mot. [901-2] at 25.) Bilzerian—as someone who was threatening litigation, advising the plaintiffs' attorneys, and referring to "our" understandings in the litigation—was exercising control over the litigation in an effort to cause a lawsuit to be commenced, which he ultimately filed in violation of this Court's order.

Despite the clear and convincing evidence of Bilzerian's contempt, he makes numerous arguments in an attempt to again evade this Court's order. First, he argues that the motions for an order to show cause should be stricken from the record and that the order should be vacated because the motions were not served on him. Indeed, it appears that the movants originally served their motions for an order to show cause to Bilzerian at the wrong address. Nevertheless, Bilzerian has now had months to respond to the motions and the order to show cause (and has done so); he is no longer prejudiced by the original improper service.

7

Next, Bilzerian argues that movants Yaffe should not have been permitted to intervene because they do not have standing and therefore the orders to show cause should be vacated. First, the orders to show cause issued from this Court, not from the intervenors; this Court can initiate orders to show cause under its own inherent authority, and, as a result, whether or not the decision to allow the Yaffe movants was correct, Bilzerian cannot escape the order to show cause. The Yaffe movants can intervene under Federal Rule of Civil Procedure 24(b)(1)(B), however, because they have claims that share a common question of law or fact with the main action—the main action prohibits Bilzerian from commencing proceedings without permission of this Court, and the Yaffe movants claim that Bilzerian has in fact commenced proceedings.

Bilzerian next contends that he is entitled to court-appointed counsel before he can be found in contempt. While many Circuits have held that a party is entitled to counsel when a civil contempt proceeding may result in incarceration, the Court is not required to appoint counsel absent a showing of indigency. *See, e.g., United States v. Anderson*, 400 F. Supp. 2d 32, 35 (D.D.C. 2005); *United States v. Bobart Travel Agency, Inc.*, 699 F.2d 618, 620 (2d Cir. 1983). Bilzerian both does not currently face incarceration for his civil contempt and has also made no showing of indigency—he is not entitled to appointed counsel.

Bilzerian argues that with respect to his own claims in the *Caligula* litigation, he did not violate the 2001 order because his own claims are mandatory counterclaims filed in response to a third-party complaint against Bilzerian. Bilzerian has no authority for his argument, and, as explained above, the Court's order is clear and ambiguous—Bilzerian was aware that he was not to commence any proceeding in any Court without this Court's permission; there is no exception for counterclaims or crossclaims.

In the alternative, Bilzerian asks the Court's permission to file his various claims. Of course, even if Bilzerian's claims had merit, the claims would belong to the receiver, not to him personally. As a result, the Court will deny Bilzerian's requests to pursue his actions.[3]

### 2. David E. Hammer

The movants have also shown by clear and convincing evidence that David Hammer is in contempt of this Court's order. Hammer admits that he received actual notice of the order against Bilzerian in December 2006. (Docket [927] at 11.) Yet Hammer apparently served Haire with initial process in the case *Bilzerian v. Haire*, Case No. 08-CA-009149 (Hammer's Response [927] at 3), served as Bilzerian's attorney when Bilzerian filed for Haire's subpoena to issue in another case, and served Haire with the actual subpoena in that matter. (*See* [904] at 3 (subpoena signed by David Hammer as the attorney of record for Bilzerian); [904] at 5 (Bilzerian's motion for contempt stating that the subpoena was signed by Mr. Hammer and that Hammer served the subpoena upon Haire); [904] at 16 (Hammer's declaration in which he states that he served the subpoena on Haire)).

Hammer's arguments for why he should not be held in contempt range from meritless to preposterous. For example, Hammer argues that he should not be held in contempt because he "reasonably relied on Bilzerian's interpretation" of the 2001 order. (Docket [927] at 14.) Reliance on Bilzerian's interpretation—given that Bilzerian is not an attorney, has been convicted of securities fraud, and has a 33 million dollar judgment entered against him in a civil

---

[3]This includes Bilzerian's motion [978] to enjoin Douglas Menchise from filing lawsuits against him or in the alternative for permission to defend himself. Although Bilzerian does have the right to defend himself (by filing an answer), he does not have permission to file any crossclaims or counterclaims in that action or any other action without permission of this Court. In addition, the 2001 order gives him no authority to enjoin others from filing suit against him.

action by the SEC—is probably *per se* unreasonable. In addition, however, Hammer was not required to nor could he rely on Bilzerian's interpretation because by his own admission he had actual notice of the order itself in December 2006 and therefore cannot resort to Bilzerian's unorthodox interpretations as an excuse for his contemptuous conduct.

Hammer also—while acknowledging that he served as Bilzerian's "process server"—denies that he has ever represented Bilzerian. Even if Hammer has never represented Bilzerian as an attorney, which is a dubious claim given that Hammer signed as an attorney on the subpoena summons that was served on Haire, he at the very least functioned as Bilzerian's process server, despite the fact that he knew Bilzerian was prohibited from commencing any proceedings in any court without first getting permission from this Court. Of course, the movants accuse Hammer of being more extensively involved in Bilzerian's litigious schemes, which Hammer denies. Whether Hammer was in fact more extensively involved or not, however, is irrelevant, as he was in civil contempt from the moment he served as Bilzerian's agent in his lawsuits despite his actual knowledge of the order. (*See* Order [416], July 19, 2001 (barring "Paul A. Bilzerian, his agents, servants, employees and attorneys, and those persons in active concert or participation with them" from commencing proceedings in any Court other than this one).)

Hammer next argues that this Court lacks personal jurisdiction over him. This argument is also without merit. "Nonparties who reside outside the territorial jurisdiction of a district court may be subject to that court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts iwth the forum." *S.E.C. v. Homa*, 514 F.3d 661, 674 (7th Cir. 2008) (citing *Waffenschmidt v.*

*MacKay*, 763 F.2d 711, 714 (5th Cir. 1985)). This principle makes sense because "the injunctive mandate of a federal court runs nationwide, and the issuing court has the authority to deal with defiance of its order regardless of where that defiance occurs." *Homa*, 514 F.3d at 674.

Hammer also argues that he is entitled to a hearing, citing *In re Oliver*, 333 U.S. 257, 275 (1948). *In re Oliver* dealt with criminal contempt, however, in which greater procedural protections are afforded the accused. With respect to civil contempt, the requirements are that the accused have notice and an opportunity to be heard. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826 (1994); *Pigford v. Veneman*, 307 F. Supp. 2d 51, 56 (D.D.C. 2004) (Friedman, J.). Hammer was given both notice and an opportunity to be heard; he has been provided the necessary procedural protections.

### 3. Jack Rabbit Limo Service, Inc.

Movant Ernest Haire has also alleged that Jack Rabbit Limo Service, Inc., is in contempt of this Court's order. Indeed, it appears that Jack Rabbit Limo Service was in contempt of this Court's order. However, the Honorable Judge Martha J. Cook, in the Thirteenth Circuit, Hillsborough County, Florida, dismissed the *Jack Rabbit* suit. (*See* Docket [951] at 14.) In a written opinion, Judge Cook stated that Jack Rabbit was Bilzerian's company and that he was represented in litigation by David E. Hammer. (*Id.* at 9.) Judge Cook also observed, citing her own observations and that of another judge on the court, that Bilzerian and Hammer's conduct in the litigation was "egregious" (*id.*), that they engaged in "sanctionable misconduct" (*id.*), that Mr. Hammer had engaged in "sandbagging, disrupting discovery, and walking down a road that would get him in a lot of trouble" (*id.* at 12), that Mr. Hammer's behavior was "clearly unethical" (*id.* at 10), and that Mr. Hammer's personal conduct was so poor that a judge was inclined to

order him to attend "peer review or some sort of remedial training" (*id.* at 12.). Judge Cook felt that Bilzerian and Hammer's conduct was so outrageous that it warranted the particularly extraordinary remedy of dismissing the *Jack Rabbit* lawsuit.

Accordingly, because civil contempt is designed to compel compliance with a Court order or to compensate a complainant for losses sustained[4], the civil contempt proceeding is now moot as to Jack Rabbit.

### 4. Puma Foundation, Bicoastal Holding Company, and Overseas Holdings Limited Partnership

Puma foundation, Bicoastal Holding Company, and Overseas Holdings Limited Partnership—through Bilzerian—are also in contempt of the Court's 2001 order. A case (Case No. 06-CA-009816) was filed by those plaintiffs against Haire in the Thirteenth Circuit Court for Hillsborough County, Florida. Puma claims that this case "was not brought by Bilzerian, his agent, servant, employee, or attorney, or anyone in active concert or participation with them." Docket [928] at 5–6. The civil cover sheet shows otherwise, however, as the suit was filed, literally, by Paul Bilzerian.

Accordingly, his and Puma's assertion that the 2001 order does not apply to the Puma case is incorrect. Bilzerian is prohibited from filing any proceeding in any court—whether it be in his own name or through other instrumentalities. Here, the fact that Bilzerian himself filed the Puma suit shows that he is involved in the litigation, in violation of the 2001 order. Puma admits

---

[4]Complainant Ernest B. Haire is not an attorney and was proceeding *pro se* in these show cause proceedings and therefore is not entitled to attorneys' fees for bringing his show cause motion. *See Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *Ellipso, Inc., v. Mann*, 583 F. Supp. 2d 1, 4 (D.D.C. 2008).

that Bilzerian filed the lawsuit, but states that it was filed "at Hammer's direction" and that "Bilzerian's role was that of a runner, not a principal in litigation." (Docket [928] at 6 n.3.) While Bilzerian cannot serve any role in causing lawsuits to be commenced, including as a runner, his claims that he was merely a runner are not credible given the e-mail that he sent just before the *Puma Foundation* lawsuit was filed, *see supra* at 6. The *Puma Foundation* lawsuit was directed and filed by Paul Bilzerian; therefore, the *Puma Foundation* plaintiffs, as instrumentalities of Bilzerian are in contempt of this Court's order.

In addition, although the civil cover sheet signed by Bilzerian only mentions the "Puma Foundation," the respondents have not shown that Bicoastal Holding Company and Overseas Holdings Limited Partnership differ in any meaningful way from the Puma Foundation for purposes of these proceedings, nor have they even tried to distinguish those entities. David E. Hammer represents all of the clients (Hammer's Response [926] at 7), all are referred to interchangeably by Hammer and Bilzerian, all have filed responses that mirror each other, and all clients were apparently influenced in commencing litigation by Bilzerian. (*See* Ex. D to Haire's Mot. [901-2] at 25, Paul Bilzerian's e-mail referring to "our understandings" in the "OHLP litigation.")

Bilzerian, Hammer, and the *Puma Foundation* plaintiffs argue that this Court should allow the *Puma Foundation* suit to continue because it has nothing to do with the receivership estate and because the consent agreement that the receiver entered into with these entities specifically contemplated the retention of a $100,000 claim against Haire. The Court's injunction, however, requires Bilzerian to request permission *before* commencing any proceeding in any court, whether related to the receivership or not. The purpose of the injunction is so that

13

the Court can ensure that Bilzerian, his agents, and instrumentalities are not using litigation to frustrate the receivership estate or the orders of this Court. Because Bilzerian commenced the *Puma Foundation* lawsuit in 2006, without getting permission from this Court, he violated the injunction. Moreover, because the *Puma Foundation* plaintiffs have not provided any proof that the suit is limited to the claims that were specifically retained in the consent agreement with the receiver, the Court cannot adequately evaluate whether the claims are limited to a $100,000 claim against Haire or whether the claims are overbroad and extend to other areas in an effort to accumulate assets and shield them from the receiver. Accordingly, Bilzerian, Hammer, and the *Puma Foundation* plaintiffs will be ordered to dismiss the *Puma Foundation* suit.

### 5. Caligula Corporation

The movants have not shown by clear and convincing evidence that Caligula Corporation is in violation of the 2001 order. Caligula Corporation has filed suit against National Gold Exchange, Inc., Mark Yaffe, and Alan Yaffe in state court in Florida. (Case No. 07-cv-17763, Complaint filed as [896-9].) Of course, if Caligula is controlled directly or indirectly by Paul Bilzerian or if Caligula is aiding and abetting in Bilzerian's violations, both Bilzerian and Caligula are in violation of the order. Indeed, Bilzerian does appear to have some involvement in Caligula. He claims to have "spen[t] hundreds of hours of [his[ time to assist Caligula . . . in an effort to raise capital" for National Gold Exchange. (*See* Bilzerian's Counterclaim at 5, [900-2].) The movants also assert that at various times prior to the filing of the Caligula lawsuit Bilzerian represented that the was the sole principal of Caligula Corporation and that he acted with full and complete authority to direct its operations and decisions. (Docket [896-5] at 10.)

However, the 2001 order is concerned with Bilzerian's involvement in litigation.

Movants have not provided any evidence with regard to Bilzerian's involvement in the Caligula litigation itself—they have only provided evidence that Bilzerian was involved with Caligula prior to the litigation being commenced. Caligula states that the lawsuit itself was was filed by Caligula—"not by Bilzerian, his agent, servant, employee, or attorney, or anyone in active concert or participation with them." Docket [929] at 3. This statement is not rebutted with evidence, only with the movants assertions that Caligula is "a corporation nominally formed by [Bilzerian's] wife and sons . . . as an effort to skirt the permanent injunction issued in this case . . ." Docket [896-5] at 6.

The documents provided by the movant show either Bilzerian's wife Steffen or his sons Adam or Dan Bilzerian as the President, Secretary, Treasurer, and registered agents of the Caligula Corporation at various times. (Docket [896-5] at 9.) That certainly raises the suspicion that Bilzerian is manipulating the Caligula litigation, given that he has previously "enmeshed his wife, Terri Steffen, his family members, and his friends in attempts to shield and distribute assets in such a way as to defeat [the receiver's] attempt to require Bilzerian to satisfy the judgment rendered against him for securities fraud." (April 5, 2002 Order [652] at 3.) In addition, Caligula's attorney is David Hammer, the attorney who has previously aided Bilzerian in his contemptuous conduct and has been sanctioned for his conduct by numerous courts in Florida.

Nevertheless, the mere assertion of the movants that Bilzerian is again using his family members to control the litigation is not enough to hold Caligula in contempt or to hold Bilzerian in contempt for allegedly directing the Caligula lawsuit. Any claims directed at Bilzerian's conduct as a consultant for Caligula or his fraudulent representations in that role would be properly raised in a suit against Bilzerian but would not be appropriately addressed through

contempt proceedings, as the 2001 order is concerned with Bilzerian's involvement in litigation. Accordingly, because movants have not met the clear and convincing evidence standard, Caligula cannot be held in contempt at this time.[5]

### 6. Terri L. Steffen

Likewise, there is no evidence—only allegations—that Bilzerian's wife Terri Steffen is aiding and abetting Bilzerian in violating this Court's orders. Indeed, it appears that Steffen may at least be complicit in Bilzerian's contemptuous conduct by allowing him to control corporations that are in her name. However, the movants have not presented any clear and convincing evidence to hold her in civil contempt. The motion to hold her in contempt will be denied, and her motion to appoint counsel is therefore moot.

### 7. Robert Bleakley

The movants have not shown that Bleakley was in contempt by clear and convincing evidence. Bleakley did not enter his appearance in the Puma Case until seven months after it had been filed ([933] at 4), and he did not receive notice of the 2001 order until July 3, 2008 (*id.* at 5). Upon receiving notice of the order, he inquired as to whether Bilzerian was a beneficial owner in any of the Puma entities and was told that he was not. (*Id.* at 5.)

Even if Bleakley was in contempt of this Court's order, the request for an order holding him in contempt is now moot. Bleakley represented Puma, Bicoastal, and OHLP in the Puma Case for approximately 13 months. (Bleakley's Response [933] at 2.) However, Bleakley no

---

[5]The trial court in the *Caligula* litigation is in a better position to observe whether or not Bilzerian is in fact actively participating in that suit. If a ruling of the court in Florida makes it apparent that Bilzerian or his agents are in fact in control of the *Caligula* litigation, that could give rise to clear and convincing evidence that Bilzerian is in contempt of an order of this Court.

longer represents any family member of Bilzerian or any entity controlled by a family member of Bilzerian as he withdrew from the Puma Case in June 2008.[6] Haire also claims that Bleakley is involved in the Haircut Partners litigation—that claim is now moot as well, *see infra*.

### 8. Haircut Partners

This Court has not yet issued an order to show cause as to Haircut Partners, LLLP. However, after the underlying order to show cause was issued, movant Douglas N. Menchise, the bankruptcy trustee for the estate of Terri Steffen, and Ernest Haire filed motions ([938], [970]) for an order to show cause as to why Haircut Partners, LLLP should not be held in contempt. After the motion was filed, Judge Paskay with the United States Bankruptcy Court for the Middle District of Florida dismissed Haircut Partners involuntary petition on March 11, 2009. ([980] at 14.) Judge Paskay held that the Haircut Partners petition was filed in bad faith, that Hammer's conduct was "typical and additional proof of Mr. Hammer's litigious nature not only in the State Court but in this Court" and therefore dismissed the Haircut Partners case.[7] (Docket [980] at 12–13.) Accordingly, Haire and Menchise's motions are now moot.

### 9. Tracy Hendershot

David Hammer has also filed a motion [942] for a declaration that Tracy Hendershot is not in violation of the orders of this Court for bringing divorce proceedings against Haire.

---

[6]Even assuming that Bleakley could be held in contempt, Haire cannot recover attorneys' fees for bringing these proceedings against Bleakley because he is a non-attorney proceeding *pro se*.

[7]Judge Paskay also noted that Hammer misled the Bankruptcy Court for the Middle District of Florida by telling the judge that the show cause proceedings in this Court against Hammer had been concluded, when in fact they were still under advisement. (Judge Paskay's order [980] at 12, March 11, 2009.)

Because no party has filed a motion for an order to show cause as to Hendershot, Hammer is asking for this Court to issue an advisory opinion as to the Hendershot litigation. Of course, the case or controversy requirement of Article III prohibits courts from issuing advisory opinions, *Munsell v. Department of Agriculture*, 509 F.3d 572, 585 (D.C. Cir. 2007); accordingly, Hammer's motion as to Hendershot will be dismissed for lack of jurisdiction.

### III. CONCLUSION

The relief the movants have requested is for Bilzerian to be ordered to dismiss all of his lawsuits that have been commenced in violation of this Court's order as well as for monetary sanctions. Punitive monetary sanctions would be inappropriate because these are civil contempt proceedings, and the only specific compensatory monetary sanctions requested by the movants are for attorneys' fees incurred in connection with these show cause proceedings.[8]

As a result, in the accompanying order, the Court has ordered Bilzerian to dismiss all lawsuits that were filed in contempt of the 2001 order and for Bilzerian and Hammer to pay the costs and expenses of movants National Gold Exchange, Mark Yaffe, and Alan Yaffe in bringing show cause proceedings against them. With respect to *Puma Foundation* plaintiffs, even though the Court found them in contempt as instrumentalities of Bilzerian and they will be ordered to dismiss their lawsuit, Haire is not entitled to attorneys' fees because he proceeded in the show cause proceedings *pro se*. Accordingly, pursuant to the accompanying order, it will be

ORDERED that Paul Bilzerian dismiss all claims, counterclaims, crossclaims, and

---

[8] (*See* [948-2] at 2, Yaffe movants' proposed order asking for costs and expenses "incurred by Movants in connection with this proceeding"; [960] at 5, Haire's proposed order asking for "monetary sanctions.")

motions filed in his own name, other than those filed in this Court or in the United States Court of Appeals for the District of Columbia Circuit, it will be further

ORDERED that the *Puma Foundation* plaintiffs (Puma Foundation, Bicoastal Holding Company, and Overseas Holding Limited Partnership) dismiss the lawsuit of *Puma Foundation et al. v. Haire*, Case No. 06-009816 in the Thirteenth Circuit Court in Hillsborough County, Florida, it will be further

ORDERED that movants National Gold Exchange, Mark Yaffe, and Alan Yaffe file with the Court their costs and expenses incurred in bringing show cause proceedings against Bilzerian and Hammer within 15 days of this date.

SO ORDERED.

_____    _____
Chief Judge Royce C. Lamberth             Date