UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PAUL A. BILZERIAN, et al. ) <br> ) <br> Defendants ) <br> ) | Civil Action No. 89-1854 (RCL) |

### MEMORANDUM OPINION

Now before the Court are the motions of David E. Hammer for reconsideration [992], amended by docket entry [1000], a motion [995] for a hearing, and a motion [1002] for clarification. Paul Bilzerian and the Puma Foundation have filed motions to stay ([994], [997], [1043]) pending appeal. Paul Bilzerian has also filed a motion [1036] to pursue limited discovery. Ernest B. Haire, a periodic target of Bilzerian's lawsuits, has also filed a motion [998] for reconsideration. The National Gold Exchange movants ("NGE movants") have filed a bill of costs and expenses [990] for costs incurred in bringing show cause proceedings against Bilzerian.

**I.     BACKGROUND**:

Paul Bilzerian has been convicted of securities fraud, found liable for a multi-million dollar judgment in an SEC civil action, and been found in contempt multiple times for violations of court orders. (Mem. Op. [987] at 2.) Even after his conduct resulted in a period of incarceration, Bilzerian steadfastly refused to abide court orders and cease his vexatious litigation

in efforts to frustrate the Court's receivership that was put in place in an attempt to collect the civil judgment from Bilzerian. As a result, this Court entered an injunction in 2001, barring Bilzerian from "commencing any proceeding in any court" without prior permission of this court. (Order [416], July 19, 2001) (*affirmed by SEC v. Bilzerian*, 75 Fed. Appx. 3, 4 (D.C. Cir. 2003)). His latest run-in with this Court results from that injunction. On May 11, 2009, this Court found Bilzerian in civil contempt for violation of that injunction and ordered him to purge his contempt by dismissing the offending lawsuits and by paying the attorneys' fees of the NGE movants, who brought show cause proceedings against him. The Court also found that David E. Hammer, an attorney who assists Bilzerian in his lawsuits, and the Puma Foundation, Bicoastal Holding Company, and Overseas Holdings Limited Partnership (the *Puma Foundation* plaintiffs) in civil contempt as agents and instrumentalities of Bilzerian.[1]

## II.    DISCUSSION

### A.    Applicable Law

Applicable civil contempt law was discussed by the Court in its original opinion. The only law cited by the parties in their motions for reconsideration and stay that will warrant additional discussion is the case of *Food Lion, Inc., v. United Food and Commercial Workers*

---

[1] The 2001 injunction prohibits "Paul A. Bilzerian, his agents, servants, employees and attorneys, and those persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are prohibited from filing or causing the filing of any complaint, proceeding or motion in the United States Bankruptcy Court for the Middle District of Florida, or from commencing or otherwise causing the commencement of any proceedings in any court, other than in this Court or in appeals of this Court's Orders to the United States Court of Appeals for the District of Columbia, without prior application to and approval of this Court . . ." (Order [416], July 19, 2001.)

*International Union*, 103 F.3d 1007, 1019–20 (D.C. Cir. 1997).  In *Food Lion*, the D.C. Circuit affirmed this Court's finding that a party was in civil contempt for failing to search and produce documents during a ten-day period specified in the Court's order.  The Court of Appeals affirmed despite the fact that there was no "separate evidentiary hearing on the contempt issue." *Id*.  The Court of Appeals stated that although a hearing is required if there is a "genuine issue of material fact," in that case the acknowledged "failure [to search] alone justified the contempt order . . . ." *Id*.

    B.    **Analysis**

        1.    **Paul Bilzerian**

Bilzerian has filed a motion to stay the Court's May 11, 2009 order pending appeal.[2]  In this Circuit, four factors must be considered when determining whether a stay pending appeal is warranted: (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the Court grants a stay; and (4) the public interest in granting the stay.  *United States v. Phillip Morris, Inc.,* 314 F.3d 612, 617 (D.C. Cir. 2003).  After evaluating those factors, it is clear that the May 11, 2009 order should not be stayed pending appeal.

As for the likelihood of success on the merits of his appeal, Bilzerian has not made convincing arguments.  Instead, he merely rehashes meritless arguments that were rejected by this Court in its original opinion.  Those arguments do not warrant additional discussion.  The

---

    [2]Bilzerian filed the same motion twice, and his motions to stay are docketed as [997] and [1043].

only argument that warrants any additional discussion is Bilzerian's claim that the Court erred in denying a hearing because there are genuine issues of material fact in dispute.

The Court rejects Bilzerian's argument because the Court found him in civil contempt on the basis of undisputed evidence. Paul Bilzerian has filed at least one original lawsuit, one counterclaim and cross claim, and one miscellaneous action in his own name that were not approved by this Court—there is no argument that this violates the 2001 injunction. (Mem. Op. [987] at 6.) Moreover, as to the propriety of the injunction itself, which Bilzerian continues to dispute, the D.C. Circuit has already affirmed this Court's imposition of an injunction barring Bilzerian from "commencing any proceeding in any court." *S.E.C. v. Bilzerian*, 75 Fed. Appx. 3, 4 (D.C. Cir. 2003). Bilzerian is extremely unlikely to prevail given another chance in the Circuit.

Similarly, with regard to the *Puma Foundation* lawsuit, for which Bilzerian was also held in civil contempt, the civil cover sheet states "Signature of Attorney or Party Initiating Action," with the words "Paul A. Bilzerian for David Hammer" signed by Bilzerian. (Docket [924-4] at 12.) In other words, Bilzerian himself literally filed the *Puma Foundation* lawsuit. This conduct, which is admitted by Bilzerian, is sufficient for a contempt finding. In fact, the Court cannot contemplate any better evidence that would indicate Bilzerian's participation in the *Puma Foundation* lawsuit than the appearance of his name on the civil cover sheet as the person who filed the suit. Much like the Court in *Food Lion*, this Court found Bilzerian in civil contempt on the basis of undisputed evidence.

The additional findings by the Court, which indicate that Bilzerian did not merely file the lawsuit but was actually a driving force behind the *Puma* litigation—while convincing to the Court—are not necessary for a finding of civil contempt. No matter how vehemently Bilzerian

disputes the extent of his involvement in the *Puma* Litigation, the fact remains that he admittedly commenced the lawsuit. His signature on the civil cover sheet (and his admission that he filed the suit) made no hearing necessary. Indeed, Paul Bilzerian has drained this Court's and other courts' resources throughout the country for years in an effort to frustrate the receivership—the Court will not grant him unnecessary hearings. Given that Bilzerian has filed a suit, counterclaim, and crossclaim in his own name in direct violation of the 2001 injunction, the Court thinks it is unlikely that Bilzerian will prevail in his appeal.[3]

While the first factor weighs strongly in favor of denying a stay, the remaining three factors also favor denying a stay. Certainly, an order denying a stay to Bilzerian may deprive him of the opportunity to frustrate the receivership by suing others without the permission of this Court; however, that is what the 2001 injunction was intended to do. As for the third and fourth factors, staying the order and opinion may allow Bilzerian to continue vexatious litigation, which would not serve the public interest. Bilzerian's motion for a stay pending appeal will be denied. Likewise, Bilzerian is already prohibited from conducting discovery (Order [926]) and has shown no valid basis as to why discovery should be permitted. Accordingly, his renewed motion [1036] to pursue limited discovery will be denied. Finally, Bilzerian has filed a motion [1044] to use funds in a frozen account or pursue his appeal in forma pauperis. However, he has not provided

---

[3] Additionally, Bilzerian has not shown he will suffer injury in the absence of a stay. Any claim that Bilzerian has belongs to the receiver, not to him personally. Moreover, pursuant to the 2001 injunction this Court would have to approve any of Bilzerian's claims before he could pursue them; he has not presented a valid basis for the Court to grant him permission to pursue his claims. (*See* Resp. of Receiver [1011] at 2.)

detailed information as to his assets or expenses.[4]  Accordingly, his motion will be denied.  *See Flippin v. Coburn*, Fed. Appx. 520, 521 (6th Cir. 2004) (stating that when a litigant fails to provide information as to his expenses the district court cannot evaluate indigency and can properly deny a motion to proceed in forma pauperis).

The NGE movants have filed a bill [990] of costs and expenses, seeking $63,215.88 in costs and expenses for bringing show cause proceedings against Bilzerian.  In his twenty page opposition [1022] to the bill of costs and expenses, Bilzerian eschewed the principle that the "opposing party must challenge the requested fee with specificity,"[5] and only included approximately one page that opposed the bill of costs and expenses itself (*See* docket [1022] at 7–8) and used the other nineteen pages to reassert meritless arguments.  With respect to the bill of costs, Bilzerian's only objection is that 56.6 hours of work (amounting to $26,713.38 in fees) were incurred before Bilzerian even filed his counterclaims and cross claims in the Caligula case (for which he was held in contempt).  The Court agrees that the NGE movants have not met their burden of showing how Bilzerian can be liable for this amount, as it is not clear how these fees could arise from his contemptuous conduct.  However, the Court has scrutinized the remaining fees for reasonableness, and they appear to conform to the *Laffey* matrix and are reasonable for the quality of work provided in the community.  Accordingly, the Court will award $36,502.50 to the NGE movants to be paid by Paul Bilzerian.

**2.    David E. Hammer**

---

[4]Bilzerian also has a history of misleading the Court as to his assets.  (*See* Receiver's Opp'n [1052] at 2.)

[5]*Playboy Enterprises, Inc. v. Universal Tel-A-Talk, Inc.*, 1999 WL 712580 (E.D. Pa. 1999) (citing *Bell v. United Princeton Properties*, 884 F.2d 713, 719–20) (3d Cir. 1989).

David Hammer has filed a motion for clarification [1002], a motion for reconsideration [992], and an amended motion [1000] for reconsideration.[6] Although Hammer is correct that the Court erred with respect to one portion of its order, the majority of his arguments are meritless and will be rejected.

Specifically, the Court rejects Hammer's argument that the Court's order held him in "criminal contempt" because it forwarded the opinion and order to the Florida Bar for consideration of disciplinary action. Hammer cites to *Cobell v. Norton*, 334 F.3d 1128 (D.C. Cir. 2003), in which the Court of Appeals held that despite the Court's failure to impose "any clear sanction" on the defendants in the case, its strongly worded opinion was akin to criminal contempt. *See* 334 F.3d at 1145–46. In that case, however, the Court of Appeals' held that a district court "may not impose a reprimand as the *sole sanction* for an adjudication of contempt . . . ." *Id*. at 1146 (emphasis added). Also of consequence to the Court of Appeals was the severity of this Court's language in admonishing the defendants. *See id*. By contrast, Hammer did not face the lack of "any clear sanction" following the adjudication that he was in civil contempt. Instead, the finding of contempt was designed to coerce Hammer into complying with court orders—he was ordered to comply with this Court's 2001 injunction and to cease assisting Paul Bilzerian in his vexatious litigation. The referral to the Florida Bar was collateral to the finding of civil contempt, not the "sole function" of the order, as Hammer claims. (Hammer's Mot. [992] for Reconsideration at 7.) Moreover, in contrast to the admonishment in *Cobell*, the

---

[6]Hammer and the Puma Foundation have also filed a motion to strike Haire's opposition to his motion for reconsideration as untimely. Although the Court has the authority to strike Haire's opposition and treat Hammer's motion as conceded, it will deny Hammer's motion [1025] to strike because of the judicial preference for deciding litigation matters on the merits.

order in this case merely forwarded a copy of the Court's order and opinion to the Florida Bar for consideration.  The Court made no specific recommendation to the Florida Bar as to whether it should impose disciplinary actions.  Courts are not precluded from finding parties in civil contempt and ordering them to obey court orders merely because that finding may start a chain of events that would have an adverse effect on the party at some later point.

The Court also rejects Hammer's claim that he was entitled to a hearing because there are genuine issues of material fact that are in dispute. *See Food Lion, Inc. v. United Food and Commercial Workers Int'l Union*, 103 F.3d 1007, 1019–20 (D.C. Cir. 1997).  While Hammer disputes certain irrelevant findings by the Court, even accepting Hammer's challenges as true does not change the Court's civil contempt finding, which was based on undisputed facts.  As a basis for the Court's contempt order, it found: (1) that Hammer served Haire with initial process in *Bilzerian v. Haire*, Case No. 08-CA-009149; (2) that Hammer was involved in the Puma Foundation litigation with Bilzerian despite his knowledge of the Court's 2001 injunction; and (3) that Hammer served as Bilzerian's attorney when Bilzerian filed for Haire's subpoena to issue in another case and served Haire with the actual subpoena in that case. (See Mem. Op. [987] at 9; Order [986] at 2.)

With respect to the Court's first finding, there is no genuine issue of material fact that Hammer at the very least assisted with service of initial process in *Bilzerian v. Haire*, Case No. 08-CA-009149.  Hammer admits that he received actual notice of the injunction prohibiting Bilzerian from commencing or filing any proceeding in any court other than this one without prior permission of this Court in December 2006.  (Docket [927] at 11.)  Yet Hammer has never disputed Haire's allegation that he assisted a process server to serve Haire with initial process in

*Bilzerian v. Haire*, Case No. 08-CA-009149.[7] (*See* Hammer's Response [927] at 3; Haire's Response to Hammer's Mot. for Reconsideration [1024] at 3). Accordingly, not only is there clear and convincing evidence that Hammer was in violation of the 2001 order, but there was no need for a hearing because the material fact was not in dispute.[8]

With respect to the *Puma Foundation* lawsuit (which states on the cover sheet that it was filed by Paul Bilzerian for David Hammer), Hammer states that he was not aware of the 2001 injunction at the time he and Bilzerian worked together to file that lawsuit on October 25, 2006. (Hammer Mot. [1000] for Reconsideration at 10.) He states that he learned of the 2001 injunction prohibiting Bilzerian from commencing any proceeding in any court in December 2006. *Id*. That fact, even if true, is irrelevant, however, as Hammer did not withdraw from the suit or ask this Court's permission to continue participating upon learning of the injunction. Instead, he states that he "reasonably relied on Bilzerian's interpretation of the injunction." (Hammer's Response to Order to Show Cause [927] at 14.) Of course, this Court has already addressed the absurdity of relying on Bilzerian's interpretation given that he is not an attorney, has been convicted of securities fraud, has had a multi-million dollar civil judgment entered

---

[7]Even on reconsideration, Hammer does not dispute that he assisted Bilzerian's process server, but merely states that he is "not a certified process server" and that he "has not purported to serve initial process in this case." (Docket [1000-3] at ¶ 7.) Indeed, although the Court phrased Hammer's violation as "serving initial process" in its May 11, 2009 opinion, Haire's actual allegation is that Hammer assisted the process server. Indeed, Hammer has never disputed this claim. Hammer's hypertechnical arguments do not absolve him of his knowing violation of the order prohibiting "those persons in active concert or participation" with Bilzerian from instituting or commencing any proceeding in any court without permission of this court.

[8]Indeed, as noted by the Court in its May 11, 2009 opinion, there are colorable claims that Hammer is "more extensively involved in Bilzerian's litigious schemes . . ." (Opinion [987] at 10.) However, because Hammer denied those claims, the Court did not use them as a basis to hold him in contempt.

against him, and has been held in contempt by the Court multiple times. As noted by the receiver, the purpose of the 2001 injunction is for *the Court* to determine whether the injunction covers any Bilzerian-related suits (Receiver's Response [1011] at 1–2); the proper course was for Hammer and/or Bilzerian to ask this Court's permission to undertake proceedings in any other court. Indeed, that requirement is included in the plain language of the 2001 injunction and does not leave open the possibility of Bilzerian proceeding based on his unilateral "interpretations" of the injunction.[9] Hammer was in civil contempt of this Court's order from the time that he learned of the injunction and continued taking actions in a lawsuit that was at the very least commenced by Bilzerian— and because this finding was based on undisputed facts no evidentiary hearing was needed.

With respect to the Court's third finding, that Hammer served as Bilzerian's attorney when filing for a subpoena to issue, Hammer argues that because the subpoena was to issue in this case, he was not in contempt by that action.[10] While the Court could have certainly been more clear on this point in its original opinion, Hammer is correct that he was not in civil contempt for that action alone; however, his acknowledgment that he served the subpoena for Bilzerian in this case is significant for two reasons.

First, the Court cited the fact that Hammer functioned as Bilzerian's attorney and served a subpoena on behalf of Bilzerian to demonstrate that Hammer's representations to this Court that

---

[9] The Court rejects Hammer and Bilzerian's arguments that the 2001 injunction is a "complex injunction" that requires the Court to afford increased procedural protections before holding Bilzerian and Hammer in civil contempt.

[10] The 2001 injunction allows Bilzerian to litigate in this Court and in the United States Court of Appeals for the District of Columbia Circuit without getting prior permission.

he "does not, and has never represented Paul Bilzerian" are meaningless. The Court stated in May 11, 2009 (and Hammer acknowledges) that he "issued a subpoena in this case out of the Middle District of Florida, at Mr. Bilzerian's request." (Amended Mot. for Reconsideration [1000] at 11.) The Court's recitation of Hammer's actions in issuing the subpoena were not meant to hold him in civil contempt for that action alone but to provide support for the Court's conclusion that Hammer has assisted Bilzerian in litigation, despite his statement that he "has never represented Paul Bilzerian."[11]

Moreover, Hammer's actions in serving the subpoena in that case gave rise to his civil contempt in later assisting Bilzerian in a miscellaneous action against Ernest B. Haire, Case No. 08-mc-102, in the United States District Court for the Middle District of Florida.[12] In that case, Bilzerian filed a "motion for contempt" in the Middle District of Florida when Haire failed to appear for a deposition in this case. The motion was assigned a miscellaneous case number, and

---

[11]Hammer misleading courts is nothing new. He told Judge Paskay of the Bankruptcy Court for the Middle District of Florida that the show cause proceedings against him in this Court had already concluded, when in fact they were still under advisement. (Paskay Order [980] at 12.) Judge Paskay found that Hammer's "blatant disregard" of the Court's order was "typical and additional proof of Mr. Hammer's litigious nature . . . ." In a separate matter, Judge Paskay characterized Hammer's conduct as "obstructive, defiant and inappropriate" and his suit as an "unethical use of the legal system." (*See* Docket [1029] at 19.) Judge Paskay is not the only judge to admonish Hammer, however. Judge Martha J. Cook, in the Thirteenth Circuit, Hillsborough County, Florida, has called Bilzerian and Hammer's conduct "egregious", "sanctionable", "clearly unethical", and has recommended that Hammer undergo "peer review or some sort of remedial training." (Cook's order, Docket [951] at 10, 12.) Nevertheless, the Court has not taken "judicial notice" of these findings, as Hammer alleges. The Court instead cites them to demonstrate that it is not the only Court that has found that Hammer has a propensity to disregard its orders.

[12]The Court, and at times the parties, has been mistakenly referring to the case number in this case as 08-mc-212. The actual case number in the Middle District of Florida is Case No. 08-mc-102.

Hammer filed a supporting affidavit in that case, which can be found on PACER. Case No. 08-mc-102, Docket [1], Exhibit 3, Filed 8/7/2008.  In the supporting affidavit, Hammer outlines the fact that he served Mr. Haire with a subpoena and responded to Haire's objection that the subpoena was improperly served.  Of course, Hammer provided Bilzerian with the affidavit to support his miscellaneous case well after Hammer was admittedly aware of the 2001 injunction prohibiting anyone in active concert with Bilzerian from commencing any proceeding in any court.  Once again, the fact that this action constituted civil contempt is clear and based on facts that are undisputed.

Although the majority of Hammer's arguments are rejected, Hammer has pointed out two instances in which the Court's order conflicts with its memorandum opinion.  Accordingly, with respect to these two arguments, the Court will grant Hammer relief.  Hammer's motion for clarification asks whether the Court's order that he cease representing Bilzerian in any capacity requires him to withdraw from representing Caligula Corporation.  The Court's opinion found that "the movants have not shown by clear and convincing evidence that Caligula Corporation is in violation of the 2001 order." (Mem. Op. [987] at 14.)  Accordingly, Hammer's representation of Caligula is not in violation of this Court's order.  However, this Court's order was ambiguous on this point.  The intent of the order was to prohibit Hammer from assisting Bilzerian's pursuit of his counterclaims and cross claims in the *Caligula* litigation, but to allow him to continue representing Caligula Corporation itself, because it is not yet apparent that Caligula is an instrumentality of Bilzerian.  Therefore, Hammer's motion for clarification will be granted; the portion of the Court's May 11, 2009 order pertaining to Caligula only requires Hammer to cease

assisting or representing Bilzerian personally in the Caligula litigation.[13]

Hammer also is correct in contesting the Court's order that he be partially liable for the fees incurred by National Gold Exchange, Mark Yaffe, and Alan Yaffe ("NGE movants"). Although Hammer was indeed in civil contempt of this Court's orders, this Court found him liable for assisting Bilzerian and the Puma Foundation plaintiffs in suits against Ernest B. Haire. (May 11, 2009 Mem. Op. [987] at 9.) However, the Court determined that because Haire is representing himself *pro se* he is not entitled to attorneys' fees. (Mem. Op. [987] at 18.) With respect to the NGE movants, the Court found in its opinion that the movants had not shown by clear and convincing evidence that Hammer or his client Caligula were in civil contempt. Accordingly, the Court erred to the extent that it purported to hold Hammer liable for participation in the Caligula litigation in the order, and Hammer's motion for reconsideration is granted in this limited respect. His motion [1028] to strike the National Gold Exchange movants' opposition will be denied as moot and his motion for a hearing [995] will be denied. His motion for an extension of time pending discovery [1026] is also denied; however, the Court considered his conditional reply in making this ruling.

### 3.     The Puma Foundation

The Court has evaluated—and rejected—the Puma Foundation's motion [994] for a stay pending appeal. The Puma Foundation plaintiffs (represented by David Hammer) recycle the

---

[13] Of course, that may change. Judge Bernard C. Silver in the Thirteenth Judicial Circuit in Hillsborough County, Florida has issued an order allowing discovery to proceed as to whether the Caligula Corporation is an agent, servant, employee, attorney or entity in active concert or participation with Paul Bilzerian within the meaning and ambit of this Court's July 19, 2001 order. (*See* Docket [1012-2] at ¶ 3.) In the event Judge Silver finds that Caligula is in active participation with Bilzerian, this Court can entertain show cause motions against Hammer and Bilzerian for their role with respect to Caligula.

same arguments that were used by Bilzerian and Hammer—these arguments have been rejected and warrant no further discussion.  On the basis of undisputed evidence that Paul Bilzerian literally commenced the *Puma Foundation* lawsuit, the Court concluded that the Puma Foundation plaintiffs are instrumentalies of Bilzerian.  No evidentiary hearing was needed to make this conclusion.  Other submissions, which showed that Bilzerian was not merely a runner but instead a driving force behind the *Puma Foundation* litigation—while disputed—were not necessary for a finding that the Puma Foundation plaintiffs, as instrumentalities of Bilzerian, were in civil contempt.  Accordingly, the Puma Foundation plaintiffs are unlikely to prevail on appeal, as the undisputed evidence shows Bilzerian's signature on the cover sheet as the individual who commenced the suit.  (*See* Order [416], July 19, 2001) (stating that Paul Bilzerian and his agents are prohibited from "filing or causing the filing of any complaint" or "commencing any proceeding in any court" without the permission of this Court).  Nor do any of the remaining equitable factors weigh in favor of the Puma Foundation.  The 2001 injunction is meant to prevent Bilzerian from frustrating the receivership through shell entities such as the Puma Foundation—allowing the lawsuit to remain pending will not serve the public interest, and others will likely continue to be harmed by Bilzerian's vexatious litigation were the Court to issue a stay.  The Puma Foundation's motion for a stay pending appeal will be denied.  The Puma Foundation's motion [1027] for an extension of time to file a reply will also be DENIED.  However, the Court considered the Puma Foundation's conditional reply in making this ruling.

    **4.**    **Ernest B. Haire**

Ernest B. Haire has also filed a motion [998] for reconsideration.[14]  Haire asks the Court to reconsider its ruling that his show cause request as to Haircut Partners LLLP is moot because that lawsuit has been dismissed.  Haire notes that the filing of an appeal in that case renders it no longer moot, and Haircut LLLP agrees.  The Court's examination of the filings indicates that a show cause order with respect to Haircut Partners LLLP is warranted.  Haire's motion for reconsideration will be granted, and the show cause order as to Haircut LLLP will be contained in an omnibus show cause order that will issue this same date.

### III.   CONCLUSION

For the reasons contained in this opinion, Paul Bilzerian's motions [997], [1043] for a stay pending appeal will be DENIED.  David Hammer's motion [1002] for clarification and motions [992], [1000] for reconsideration will be GRANTED in part and DENIED in part.  The Puma Foundation's motion [994] for a stay pending appeal will be DENIED.  The Puma Foundation's motion [1027] for an extension of time pending discovery will be DENIED.  Ernest B. Haire's motion [998] for reconsideration, construed as a motion for an order to show cause, will be GRANTED.

/

/

---

[14]Haire's motion for reconsideration, styled as a motion under Federal Rule of Civil Procedure 59(e), is untimely.  Moreover, the Court does not have the discretion to extend the time period or to allow an additional three days for mailing.  *Derrington-Bey v. District of Columbia Dep't of Corrections*, 39 F.3d 1224, 1225 (D.C. Cir. 1994).  However, because the motion raises new conduct by Hammer and Bilzerian that appears to violate the 2001 injunction (filing and continuing to pursue an appeal), the Court will construe Haire's motion as a renewed motion for an order to show cause, which will be granted.

Paul Bilzerian's motion [1036] to pursue discovery will be DENIED. David E. Hammer's motion [1026] for an extension of time pending discovery and motions [1025] [1028] to strike will be DENIED.

SO ORDERED.


Signed by Chief Judge Royce C. Lamberth on August 12, 2009.