UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 89-1854 (RCL) |
| PAUL A. BILZERIAN, *et al.*, | ) ) ) | |
| Defendants | ) ) | |

## MEMORANDUM OPINION ON RECUSAL

### I. INTRODUCTION

This matter is here on Paul A. Bilzerian's Motion to Recuse Judge Lamberth. Mot. Recuse, August 24, 2010, ECF No. 1106. Having considered the Motion to Recuse and the relevant law at length, the Court will deny the Motion for the reasons that follow.

### II. BACKGROUND

This Court has summarized the background of this decades-old case many times and only repeats the facts relevant to this decision. A more detailed chronicling can be found at *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 68–69 (D.D.C. 2009).

More than twenty years ago, a jury sitting in the United States District Court for the Southern District of New York convicted Bilzerian of securities fraud and conspiracy to defraud the United States. *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) (affirming conviction). Bilzerian was sentenced to four years' imprisonment and fined $1.5 million. *Id.* The SEC then filed a civil suit against him, and this Court ultimately ordered him to disgorge $62 million in ill-gotten gains. *SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994) (affirming judgment) (ruling for the SEC in its civil suit against Bilzerian); *SEC v. Bilzerian*, 814 F. Supp. 116 (D.D.C.

1

1993) (ordering disgorgement of $33 million in profits), *aff'd*, 29 F.3d 689 (D.C. Cir. 1994); *SEC v. Bilzerian*, 1993 WL 542584 (D.D.C. 1993) (ordering disgorgement of $29 million in prejudgment interest).

Seven years later, with the judgment still unpaid, this Court held Bilzerian in contempt of the disgorgement order, *SEC v. Bilzerian*, 112 F. Supp. 2d 12 (D.D.C. 2000), *aff'd*, 75 Fed. Appx. 3 (D.C. Cir. 2003), established a receivership estate "for the purpose of identifying, marshalling, receiving, and liquidating his assets," *SEC v. Bilzerian*, 127 F. Supp. 2d 232, 232 (D.D.C. 2000), appointed a receiver, *id.*, and sent Bilzerian back to prison for continued noncompliance, *SEC v. Bilzerian*, 131 F. Supp. 2d 10 (D.D.C. 2001). Undaunted, Bilzerian and his agents continued to abuse the judicial system in a concerted effort to interfere with this Court's attempts to establish the sources and amounts of his assets. Mem. and Order 5, November 27, 2001, ECF No. 560. To put an end to their frivolous lawsuits, which had made progress in this case all but impossible, this Court issued an injunction prohibiting Bilzerian and his cohorts from filing lawsuits in any other court without this Court's permission. Order 2, July 19, 2001, ECF No. 416. Since then, they have been held in contempt—repeatedly—for violating that injunction. *See, e.g.*, Order, May 11, 2009, ECF No. 986 (holding Bilzerian and David E. Hammer in civil contempt); Order, July 13, 2010, ECF No. 1091 (holding Bilzerian, Hammer, and others in civil contempt).

In response to being held in contempt twice, one of Bilzerian's agents, David E. Hammer, filed a Declaration of Compliance explaining that he had ceased his contumacious behavior and distanced himself as far as possible from Bilzerian. Decl. Compliance, July 15, 2010, ECF No. 1093. In his Declaration, Hammer warns me of what he describes as Bilzerian's murder plans. Specifically, Hammer states,

> Bilzerian told me that if Bilzerian outlives his wife, Bilzerian intends to go to Washington, murder Judge Lamberth, seek a jury trial, admit the intentional killing, but seek an acquittal on the basis of justifiable homicide. Bilzerian believes that an all-black Washington, D.C. jury will acquit Bilzerian when Bilzerian tells his sob story of what the government and this Court supposedly did to Bilzerian and his family.

*Id.* at 12. He goes on to report a Skype message Bilzerian sent to him in which Bilzerian discusses his plans to appeal this case. According to Hammer, the message is a preview of what Bilzerian wishes he could use as the opening line in his brief to the Court of Appeals:

> I would like to start the appeal as follows: This appeal is likely the last peaceful stage of an ongoing war being waged over the past twenty-three years by multiple branches and numerous agencies of the United States government against Paul Bilzerian and his family, friends and their attorneys. Over these twenty-three years, the United States has employed every non-violent means available to it— whether illegal, dishonest, unconstitutional, unscrupulous or unconscionable— while sparing no financial or human resource to bully and ruin Bilzerian and his family, friends and their attorneys.

*Id.* at Ex. K.

Bilzerian denies that he made any such threat and points out that nothing in the Skype message above threatens anyone at all. Bilzerian's Resp. to Hammer's Decl. Compliance and Mot. Strike from R. 4, July 23, 2010, ECF No. 1094; Mot. Recuse 1, August 24, 2010, ECF No. 1106. He further explains that he hopes to publish an account of his trials and tribulations (literally and figuratively), and regrets that some of the judges with whom he has dealt in the past are no longer alive to read and potentially to answer his allegations against them. Bilzerian's Resp. Hammer's Decl. Compliance and Mot. Strike from R. 4, July 23, 2010, ECF No. 1094. Accordingly, he claims not only that he would never murder me, but that he hopes I remain in good health for a long time so that I, too, can read and respond to his future publications. *Id.*

Bilzerian files this Motion for my recusal because he says that in light of the alleged threat against me, a reasonable person would question my impartiality in this case. Mot. Recuse 3–4, August 24, 2010, ECF No. 1106.

### III. LEGAL STANDARD

28 U.S.C. § 455(a) provides that "[any] justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might be reasonably questioned." The statute safeguards the public's confidence in judicial impartiality—a prerequisite to its faith in and adherence to judicial decisions. *United States v. Microsoft*, 253 F.3d 34, 114 (D.C. Cir. 2001) (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 865 (1998)). Because even the appearance of questionable impartiality poses a significant threat to these fundamental values, Congress created a very broad § 455(a) net, one that would ensnare not only those actually lacking impartiality, but also those whose impartiality might *appear* questionable to a reasonable person. *See Litkey v. United States*, 510 U.S. 540, 548 (1994) (emphasizing the objective nature of § 455(a) and noting that "recusal [is] required whenever 'impartiality might reasonably be questioned'"). Thus, when applying § 455(a), courts must ask whether a reasonable and informed observer would question a judge's impartiality. *Microsoft*, 253 F.3d at 114. To deter unhappy litigants from abusing the recusal statute and to promote faith in the judicial system, courts have emphasized that a judge has as much an obligation *not* to recuse himself where there is no reason to do so as he does to recuse himself when proper. *United States v. Greenspan*, 26 F.3d 1001, 1005 (10th Cir. 1994). Furthermore, because judges are presumed to be impartial, "the Court must begin its analysis of the allegations supporting . . . a request [for recusal] with a presumption against disqualification." *Cobell v. Norton*, 237 F. Supp. 2d 71, 78 (D.D.C. 2003).

To overcome this presumption, a party seeking recusal must "show a true personal bias" on the part of the judge by alleging "specific facts and not mere conclusions or generalities." *Bd. of Locomotive Firemen & Engineermen v. Bangor & Aroostook R.R. Co.*, 380 F.2d 570, 576–77 (D.C. Cir. 1967) (citations omitted). Under this standard, a court need not "accept [] as true" the facts alleged by a party in its papers. *United States v. Heldt*, 668 F.2d 1238, 1271 (D.C. Cir. 1981). The burden this presumption places on parties seeking recusal is necessary in light of the grave threats that potential abuses of this potent statutory tool pose to the judicial system. One of those threats is paramount in this case: using § 455(a) to manufacture recusal to delay proceedings. If courts reward parties who—fearing imminent adverse consequences—file meritless § 455(a) motions in hopes of postponing the inevitable, they invite every desperate litigant willing to "cry wolf" to flood the courts with baseless, exploitive recusal motions. Such a witch hunt would threaten the public's confidence in judicial fairness that § 455(a) is supposed to safeguard.

The D.C. Circuit has addressed numerous cases involving § 455(a), but none involving a request for recusal based on a threat to the district judge. Where other Courts of Appeals have faced these scenarios, they have applied varying legal standards tailored to the unique circumstance involved. *See, e.g.*, *In re Basciano*, 542 F.3d 950, 956 (2d Cir. 2008); *United States v. Holland*, 519 F.3d 909 (9th Cir. 2008); *Greenspan*, 26 F.3d 1001. In particular, while all of these Courts recognize that the seriousness of the underlying threat is a factor to consider in evaluating a § 455(a) motion, they disagree about the proper amount of weight to give it in the ultimate decision.

The Ninth and Tenth Circuits place significant emphasis on the seriousness of the underlying threat. In *Greenspan*, the Tenth Circuit said that "[t]he bottom line here is that this

5

judge learned of an apparently genuine threat made against him . . . . The judge obviously took the threat very seriously, . . . . Under such circumstances, it is obvious to us that a reasonable person could question the judge's impartiality." *Greenspan*, 26 F.3d 1007. Similarly, in *Holland*, the Ninth Circuit crafted a three-factor test focused on assessing "how much risk there is that [the threat] may be carried out and how much harm there would be if it were." *Holland*, 519 F.3d at 914–15.

The Second Circuit places less emphasis on the seriousness of the underlying threat. It has held that while the seriousness of the underlying threat is a factor to consider, it is "wary of the approach taken by the Tenth Circuit in *Greenspan*, which focused largely on the seriousness of the threat rather than the evidence of resulting bias." *In re Basciano*, 542 F.3d 950, 957 (2d Cir. 2008). The Court worried that this emphasis "would suggest that a person awaiting trial must mount not only a threat, but a *serious* one, in order to obtain a new trial judge." *Id.* (emphasis in original). Therefore, the Second Circuit turned away from the *Greenspan* Court's emphasis on the seriousness of the underlying threat, concluding instead that "[t]he principal indicium of whether a judge's 'impartiality might reasonably be questioned,' we think, is whether judicial action subsequently taken by the judge with respect to the defendant in the wake of his or her discovery of the plot or threat does or does not appear to be impartial." *Id.*

Fortunately, the facts of this case make it unnecessary for this Court to decide between the two approaches. For reasons explained below, regardless of the amount of emphasis one places on the underlying threat in this case, recusal is improper.

IV. **ANALYSIS**

Bilzerian contends that recusal is appropriate because a reasonable person would question my impartiality in light of the allegation that he has threatened me. The Court rejects this

6

argument for three straightforward reasons. First, in light of the totality of the circumstances, the underlying threat here is not serious enough—under either standard discussed above— to require recusal. Second, even if the threat were more serious, Bilzerian's recusal argument rests entirely on an *alleged* threat, but even an *actual* threat is not ordinarily sufficient, by itself, to require recusal. Finally, courts have recognized that recusal is inappropriate where, as here, one of the reasons the party seeks recusal is to delay the proceedings. The Court will fully explain each reason in turn.

    i.    **The Seriousness of the Underlying Threat**

The only fact that Bilzerian alleges might cause a reasonable person to question my impartiality is an alleged threat. As discussed above, there is a slight disagreement among the Courts of Appeals about the amount of emphasis to give to the seriousness of the underlying threat in cases like this one. The Ninth and Tenth Circuits would give it more weight than would the Second Circuit. This Court needs not decide which standard to apply because, under either standard, the underlying threat in this case is not serious enough to require recusal in light of the totality of the circumstances.

I learned of the alleged threat against me from Hammer's declaration of compliance. That report from a third party is less serious than a threat made directly to me or, as was the case in *Greenspan*, a report from the FBI detailing a conspiracy to kill me that spanned many states and involved large sums of money spent on a hit man. *Greenspan*, 26 F.3d at 1005. Hammer offers no evidence corroborating his murder-plot story aside from the Skype message quoted above, and that message mentions neither my name nor murder. It says,

> I would like to start the appeal as follows: This appeal is likely the last peaceful stage of an ongoing war being waged over the past twenty-three years by multiple branches and numerous agencies of the United States government against Paul Bilzerian and his family, friends and their attorneys. Over these twenty-three

7

> years, the United States has employed every non-violent means available to it—
> whether illegal, dishonest, unconstitutional, unscrupulous or unconscionable—
> while sparing no financial or human resource to bully and ruin Bilzerian and his
> family, friends and their attorneys.

Decl. Compliance Ex. K, July 15, 2010, ECF No. 1093. This Court strains to see how any reasonable person could glean a threat of any kind from that message. It appears, in fact, to describe Bilzerian's fear that the government, having already exhausted "every non-violent means available to it," must now turn to violent means in its "ongoing war" against "Paul Bilzerian and his family, friends and their attorneys." *Id.* Moreover, the Skype message's twenty-three year frame of reference makes it even harder to construe as a threat against me—a judge who has not even been a part of this case for the majority of that time. Finally, the Court notes that not only has Bilzerian denied having made the alleged threat, there is no evidence that he has taken any steps in pursuance of a plot. This is not to say that third party reports of death threats to judges are somehow insignificant. Rather, it is recognition that when compared with the unfortunate variety of death threats to judges, this one's allegation status and lack of corroboration place it in the less serious part of the spectrum.

### ii. A Threat to a Judge Without More Is Not Ordinarily Sufficient to Require Recusal

Furthermore, even if this allegation were an actual and more serious threat, a threat to a judge, without more, does not ordinarily require recusal. *See, e.g.*, *United States v. Oaks*, 606 F.3d 530 (8th Cir. 2010) (concluding that a threat against a judge together with additional evidence of questionable impartiality did not require recusal); *In re Basciano*, 542 F.3d 950, 956 (2d Cir. 2008) (concluding that a death threat against a judge did not require recusal); *United States v. Holland*, 519 F.3d 909, 915–16 (9th Cir. 2008) (concluding that a judge's decision not to recuse after receiving a threatening phone message from a defendant was not plain error);

*United States v. Yousef*, 327 F.3d 56, 170 (2d Cir. 2003) (concluding that a judge who did not recuse after learning of a defendant's threat to kidnap and harm an unnamed federal judge to obtain a mistrial did not abuse his discretion); *United States v. Yu-Leung*, 51 F.3d 1116, 1120 (2d Cir. 1995) (concluding that a judge did not abuse his discretion by failing to recuse after learning of defendant's death threat against him); *United States v. Cooley*, 1 F.3d 985, 993–94 (10th Cir. 1993) (listing among "matters . . . which will not ordinarily satisfy the requirements for disqualification under 455(a)," "threats or other attempts to intimidate the judge"); *United States v. Studley*, 783 F.2d 934, 940 (9th Cir. 1986) (concluding that recusal is not required); *United States v. Grismore*, 564 F.2d 929, 934 (10th Cir. 1977) (same). In fact, Bilzerian has pointed to no case—and this Court is aware of none—in which a district judge abused his discretion by failing to recuse in light of nothing more than a very serious threat.

Bilzerian's reliance on *Greenspan* is misplaced because that opinion actually underscores this principle. Bilzerian suggests that "the Tenth Circuit [in *Greenspan*] reversed the district court for not recusing itself when it was advised [sic] defendant's alleged threat to kill the judge or members of his family." Mot. Recuse 3–4, August 24, 2010, ECF No. 1106. Although one would never guess it from Bilzerian's misleadingly simple one-sentence encapsulation of the decision, the *Greenspan* Court actually wrote a careful, fact-intensive opinion that took into account "the totality of the circumstances"—circumstances that Bilzerian completely glosses over, but which nonetheless distinguish *Greenspan* from this case in critical ways. *Greenspan*, 26 F.3d at 1006.

Specifically, the district judge's post-threat behavior played a key role in *Greenspan*. His response to the threat included expediting Greenspan's sentencing hearing to "get [Greenspan] into the federal penitentiary system immediately, where he can be monitored more closely," and

9

refusing to continue the sentencing hearing at the request of defendant's counsel, who had been appointed only two days before the sentencing date. *Id.* The *Greenspan* Court found that those actions would lead a reasonable person to question the judge's impartiality. Here, by contrast, Bilzerian has pointed to no similar change in my behavior. Indeed, it would be impossible for him to do so because my behavior has not changed at all since I learned of the alleged threat. Thus, while there were factors in *Greenspan* that would lead a reasonable person to question the district judge's impartiality, no such factors are present in this case.

### iii. Bilzerian Seeks to Manufacture Recusal to Delay Proceedings

As important as what was present in *Greenspan* was what was not. Summarizing its holding, the *Greenspan* Court noted that "[i]n a case like present, where there is no inference that the threat was some kind of ploy, the judge should have recused himself pursuant to section 455(a) . . . . Had there been any reason to believe the threats were made only in an attempt to . . . *delay proceedings* . . . recusal would not have been warranted . . . ." *Id.* at 1006 (emphasis added). This careful exception to the *Greenspan* holding applies so clearly to this case that it almost seems the *Greenspan* Court had this case in mind when it wrote its opinion.

Any reasonable person fully aware of Bilzerian's litigation habits over the past two decades would conclude that he seeks recusal to delay the proceedings in this case.[1] Bilzerian has conjured up creative methods of dragging down the pace of this litigation and preventing the receivership's progress. His favorite method, discussed above, is the frivolous lawsuit. He and his cohorts have filed so many of them that this Court has had to enjoin them from filing any

---

[1] The Court notes that *Greenspan* refers to threats made to delay proceedings and not to seeking recusal to delay proceedings, but that is a distinction without a difference. The *Greenspan* Court was not concerned with litigants threatening judges when it carved out this exception. Instead, it was concerned with litigants abusing § 455(a) to manufacture recusals to delay proceedings or to forum shop. *Id.* at 1006 ("As we have stated earlier, if a judge concludes that recusal is at least one of the defendant's objectives . . . , then section 455(a) will not mandate recusal because that statute is not intended to be used as a forum shopping statute." *Id.* at 1006.).

others without its permission. Order 2, July 19, 2001, ECF No. 416. Their determination to slow this case down did not flag, though, and as a result Bilzerian and others have been held in contempt multiple times for their stall tactics. Bilzerian's current behavior is, unsurprisingly, consistent with this now twenty-year-old pattern. He seeks recusal here knowing that it would take a great deal of time to transfer the case to another judge. He knows it would take even more time for that judge to get up to speed in this complex case. Most importantly, though, he knows it would take even more time for the judicial system to force him to disgorge the money that he obtained by fraud. This Court will not allow Bilzerian to abuse § 455(a) to delay proceedings in this case even more than he already has.

    iv.    **Section 455(b)(1) Does Not Require Recusal**

Bilzerian does not mention § 455(b) in his Motion to Recuse. Still, the Court addresses it for thoroughness' sake. Section 455(b)(1) says that a judge must recuse himself if he "has a personal bias or prejudice concerning a party." 28 U.S.C. § 455(b)(1). This is a test for actual bias that requires a judge to determine whether he can be truly impartial when trying the case. *Holland*, 519 F.3d at 915. If the judge feels he cannot hear the case without bias, on account of the threat, then the judge has a duty to recuse himself irrespective of how it appears to the public. *Id.* This test is "highly personal in nature and requires each judge in such a situation to set aside emotion" and thoroughly examine his ability to administer justice impartially. *Id.* With full knowledge that failure to recuse if I were in fact biased toward Bilzerian would amount to "an abdication of duty and . . . clear derogation of the solemn promise [I] made when [I] took [my] oath of office," I conclude that § 455(b)(1) does not require my recusal in this case. *Id.*

## V.     CONCLUSION

For the reasons discussed above, the Court will deny Bilzerian's Motion to Recuse Judge Lamberth. A separate Order consistent with this opinion will issue today.


Signed by Royce C. Lamberth, Chief Judge, on November 1, 2010.