UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Civil Action No. 89-1854 (RCL) ) |
| PAUL A. BILZERIAN, *et al.*, | ) ) ) |
| Defendants | ) ) |

## MEMORANDUM OPINION ON CONTEMPT

### I. INTRODUCTION

This matter now comes before the Court on David Eric Hammer's ("Hammer") Verified Consent Motion [1099] to Vacate Contempt Memorandum Order and Opinion [1091, 1092] with Respect to David E. Hammer, Esquire ("First Motion to Vacate") and his Verified Consent Motion [1100] to Vacate Contempt Memorandum Order and Opinion [986, 987] with Respect to David E. Hammer, Esquire ("Second Motion to Vacate"). Having considered Hammer's Motions to Vacate, Paul A. Bilzerian's ("Bilzerian") Response [1107], Hammer's Reply [1113], the relevant law, and the record in this case, the Court will deny the motions as set forth below.

### II. BACKGROUND

A detailed background of this case, which is now more than twenty years old, can be found in the Court's May 11, 2009, Memorandum Opinion [987]. *SEC v. Bilzerian*, 613 F. Supp. 2d 66, 68–69 (D.D.C. 2009). The facts relevant to the issue now before the Court are as follows.

Bilzerian was convicted of securities fraud and conspiracy to defraud the United States in 1989. *United States v. Bilzerian*, 926 F.2d 1285 (2d Cir. 1991) (affirming conviction). The SEC then filed a civil suit against him in the summer of 1989 and obtained a judgment for

approximately $62 million. *SEC v. Bilzerian*, 29 F.3d 689 (D.C. Cir. 1994) (affirming judgment). In 1993, Judge Harris of this Court ordered Bilzerian to disgorge $62 million in ill-gotten gains. *SEC v. Bilzerian*, 814 F. Supp. 116 (D.D.C. 1993) (ordering disgorgement of $33 million in profits), *aff'd* 29 F.3d 689 (D.C. Cir. 1994); *SEC v. Bilzerian*, 1993 WL 542584 (D.D.C. 1993) (ordering disgorgement of $29 million in prejudgment interest).

Rather than follow those orders, though, Bilzerian and his agents abused the judicial system in a concerted effort to interfere with this Court's attempts to establish the sources and amounts of his assets. To put an end to their frivolous lawsuits, which made progress in this case all but impossible, this Court issued the following injunction:

> Paul A. Bilzerian, his agents, servants, employees and attorneys, and those persons in active concert or participation with them, who received actual notice of this Order by personal service or otherwise, are prohibited from filing or causing the filing of any complaint, proceeding or motion in the United States Bankruptcy Court for the Middle District of Florida, or from commencing or otherwise causing the commencement of any proceedings in any court, other than in this Court or in the appeals of this Court's Orders to the United States Court of Appeals for the District of Columbia, without prior application to and approval of this Court.

Order 2, July 19, 2001, ECF No. 416.

That Order, however, did not stem the tide. On May 11, 2009, this Court held Bilzerian and Hammer (who acted on Bilzerian's behalf) in civil contempt for violating the 2001 order by commencing and prosecuting the following lawsuits: *Bilzerian v. Haire*, Case No. 08-9149 in the Thirteenth Circuit, Hillsborough County, Florida; Bilzerian's counterclaim and cross claims in *Caligula v. National Gold Exchange*, Case No. 07-cv-17763 in the Thirteenth Circuit, Hillsborough County, Florida; Bilzerian's miscellaneous action against Ernest B. Haire ("Haire"), Case No. 08-mc-102 in the Bankruptcy Court for the Middle District of Florida; and

Bilzerian's commencement of *Puma Foundation v. Haire*, Case No. 06-9816. Order 1–2, May 11, 2009, ECF No. 986.[1]

The Court ordered Hammer to purge his contempt "by ceasing his representation of Bilzerian in any capacity in any litigation matters and withdrawing as counsel, if listed as counsel of record, in any of the above cases." *Id.* at 2. The Court also ordered Hammer to file a sworn statement that he had complied with the order within ten days of the date it was filed. *Id.* Instead, he waited fifteen days to file a sworn statement that said, among other things, that "he has never represented Paul Bilzerian." Statement of Compliance, May 26, 2009, ECF No. 993.

That outright lie was paradigmatic of Hammer's habit of misleading courts. Mem. Order and Op. 11, August 12, 2009, ECF No. 1053. He told Judge Paskay of the Bankruptcy Court for the Middle District of Florida that the show cause proceedings in this Court had already concluded, when in fact they were still under advisement. Paskay Order 12, ECF No. 980. Judge Paskay found that Hammer's "blatant disregard" of the Court's order was "typical and additional proof of Mr. Hammer's litigious nature . . . ." *Id.* In a separate matter, Judge Paskay characterized Hammer's conduct as "obstructive, defiant and inappropriate" and his suit as an "unethical use of the legal system." *See* Docket 19, ECF No. 1029. Judge Paskay is not the only judge who has found it necessary to reprimand Hammer, though. Judge Martha J. Cook, in the Thirteenth Circuit, Hillsborough County, Florida, has labeled Bilzerian and Hammer's conduct "egregious," "sanctionable," and "clearly unethical." Cook's Order 10, 12, ECF No. 951. She

---

[1] This Court, on August 12, 2009, ordered that any portion of the Court's May 11, 2009, order that purported to hold Hammer in civil contempt for his participation in *Caligula* be vacated. Order 2, August 12, 2009, ECF No. 986. The Court went on to clarify that the order does not require Hammer to withdraw from representing Caligula Corporation. *Id.* Additionally, the Court ordered that the portion of its May 11, 2009, order that held Hammer liable for attorneys' fees of the National Gold Exchange movants in bringing a motion for an order to show cause be vacated. *Id.* Finally, the Court ordered that in the third and fifth paragraphs of its May 11, 2009, order, "Bilzerian's miscellaneous action against Ernest B. Haire, Case No. 08-mc-212 in the Bankruptcy Court for the Middle District of Florida" be replaced with: "Bilzerian's miscellaneous action against Ernest B. Haire, Case No. 08-mc-102 in the United States District Court for the Middle District of Florida." *Id.* The Court's May 11, 2009, order remains unmodified in all other respects. *Id.* at 3.

went on to say that Hammer had participated in "sandbagging, disrupting discovery, and walking down a road that would get him in a lot of trouble." In light of all this, she was "inclined to order him to attend peer review or some sort of remedial training." *Id.* at 9–12.

Then, on August 12, 2009, this Court granted Haire's [998, 999] and Todd Hodges' ("Hodges") [1001] Motions to Show Cause. Order to Show Cause 1, August 12, 2009, ECF No. 1055. The Court ordered Hammer, Bilzerian, and others to show cause, in a writing to be filed with the Court by September 11, 2009, as to why the Court should not hold them in civil contempt for violating its 2001 Order by pursuing the following additional lawsuits: *Bilzerian v. Hodges et al.*, Case No. 09-ap-93-ALP in the United States Bankruptcy Court for the Middle District of Florida; *Steffen v. Hodges et al.*, Case No. 09-ap-93-ALP in the United States Bankruptcy Court for the Middle District of Florida; *Bilzerian v. Haire*, Case No. 09-ap-93-ALP in the United States Bankruptcy Court for the Middle District of Florida; *Steffen v. Kline et al.*, Case No. 09-10864CA27 in the Eleventh Circuit Court in Dade County, Florida; and *Puma Foundation v. Hodges et al.*, Case No. 09-CA-02180 in the Circuit Court in and for Hillsborough County, Florida. *Id.* at 2–3. Hammer filed a response [1062] on September 11, 2009, but he merely reiterated arguments this Court had rejected before. Mem. Op. and Order [1092] at 8–11 (July 13, 2010).

On July 13, 2010, this Court held Hammer in civil contempt for the second time for violating its 2001 Order. Mem. Op. 1, July 13, 2010, ECF No. 1092 ("2010 order"). The Court once again ordered him to purge his contempt—this time by ceasing his representation of Terri L. Steffen ("Steffen") and the Puma Foundation ("Puma"). Order 3, July 13, 2010, ECF No. 1091. The Court further ordered Hammer to file a sworn statement on or before July 23, 2010, affirming that he had complied with those conditions. *Id.*

On July 15, 2010, nearly an entire year since entry of the August 12, 2009, Show Cause Order, Hammer let the Court know for the first time that he had withdrawn from the *Steffen* and *Puma* lawsuits. Decl. of Compliance 2 and Ex. A & Ex. B, July 15, 2010, ECF No. 1093. As it turns out, he had withdrawn from both lawsuits a few days before the Court entered its 2010 Order. In light of the timing of his withdrawals and other remedial actions he has taken since, Hammer's current motions urge the Court to vacate its Orders holding him in contempt.

## III. LEGAL STANDARD

Although the Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration, courts generally analyze them under the standards for a motion to alter or amend judgment under Rule 59(e) or a motion for relief from a judgment or order under Rule 60(b). *Ellipso, Inc. v. Mann*, 583 F. Supp. 2d 1, 3 (D.D.C. 2008) (Lamberth, C.J.) (quoting *Lightfoot v. District of Columbia*, 355 F. Supp. 2d 414, 420–21 (D.D.C. 2005)). If a person files a motion for reconsideration within twenty-eight days of the judgment or order of which he complains, courts consider it a Rule 59(e) motion; otherwise, they treat it as a Rule 60(b) motion. *See id.* (referring to the ten-day deadline that was in place prior to the 2009 amendments to the Federal Rules of Civil Procedure, which changed the deadline to twenty-eight days).

But those Rules only apply to motions for reconsideration of final orders. Fed. R. Civ. P. 59(e) & 60(b); *U.S. v. BCCI Holdings (Luxembourg), S.A.*, 994 F. Supp. 18, 21 (D.D.C. 1998) (citing *Derrington-Bey v. District of Columbia Dep't of Corrs.*, 39 F.3d 1224, 1225–26 (D.C. Cir. 1994)). Generally speaking, civil contempt orders are interlocutory. *Doyle v. London Guar. & Accident Co.*, 204 U.S. 599, 603 (1907) ("[W]e deem it settled that an order punishing for contempt, made in the progress of the case, when not in the nature of an order in a criminal proceeding, is regarded as interlocutory, and to be reviewed only upon appeal from a final decree

in the case."); *see also Cobell v. Norton*, 334 F.3d 1128, 1140 (D.C. Cir. 2003) (citing *Byrd v. Reno*, 180 F.3d 298, 300 (D.C. Cir. 1999) (examining all of the relevant case law to conclude that "the traditional rule still applies: a civil contempt order against a party in a pending proceeding is not appealable as a final order under 28 U.S.C. § 1291")). Accordingly, courts usually analyze motions for reconsideration of civil contempt orders under Rule 54(b), which provides that a district court may revise its own interlocutory decisions "at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b).

Hammer's Motions, however, fall under an exception to that general rule. Court orders holding non-parties like Hammer in civil contempt are considered final and immediately appealable. *United States Catholic Conference v. Abortion Rights Mobilization, Inc.*, 487 U.S. 72, 76 (1988) ("The right of a nonparty to appeal an adjudication of contempt cannot be questioned. The order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action."); *OSRecovery, Inc. v. One Group Int'l, Inc.*, 462 F.3d 87, 89 (2d Cir. 2006); *U.S. ex rel. Pogue v. Diabetes Treatment Centers of Am., Inc.*, 444 F.3d 462, 474 n.7 (6th Cir. 2006); *United States v. Dowell*, 257 F.3d 694, 698 (7th Cir. 2001); *In re Woosley*, 855 F.2d 687, 688 (10th Cir. 1988); *United States v. Accetturo*, 842 F.2d 1408, 1412 (3d Cir. 1988); *In re Fish & Neave*, 519 F.2d 116 (8th Cir. 1975); *Estate of Domingo v. Republic of Philippines*, 808 F.2d 1349, 1350 (9th Cir. 1987); *Sanders v. Monsanto Co.*, 574 F.2d 198, 199 (5th Cir. 1979). This exception is necessary because non-parties would be unable to appeal from a final judgment on the merits. *David v. Hooker, Ltd.*, 560 F.2d 412, 415–16 (9th Cir. 1977); *see also* 11A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus, *Federal Practice and Procedure* § 2960 (2d ed. 1996).

Satisfied that Rules 59(e) and 60(b) apply to Hammer's Motions, the Court now turns to the relevant legal standards under each Rule.[2] At the outset, the Court notes that Rule 59(e) motions are disfavored and should only be granted in extraordinary circumstances. *Liberty Prop. Trust v. Republic Props. Corp.*, 570 F. Supp. 2d 95, 97 (D.D.C. 2008) (citing *Niedermeir v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001)). The standards that govern Rule 60(b) motions are even more restrictive. *United States v. Pollard*, 290 F. Supp. 2d 153, 156–58 (D.D.C. 2003). Thus, whichever standard applies, Hammer must prove that extraordinary circumstances require the use of these rarely resorted to remedies.

### A. Legal Standard Under Rule 59(e)

Rule 59(e) allows a district court to correct its own mistakes in the period immediately following the entry of a mistaken order. *White v. N.H. Dep't of Empl't Sec.*, 455 U.S. 445, 450 (1982). Though a court has considerable discretion in granting Rule 59(e) motions, it only needs to do so when it finds that there has been an intervening change of controlling law, that new evidence is available, or that granting the motion is necessary to correct a clear error or to prevent a manifest injustice. *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (per curiam). Moreover, "[a] Rule 59(e) motion to reconsider is [neither] . . . an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), nor a vehicle for presenting theories or arguments that could have been advanced earlier. *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C.1997).

---

[2] Hammer also requests that the Court analyze his first motion to vacate under Rule 59(a), but that rule provides for new trials and, as such, is inapplicable here. Fed. R. Civ. P. 59(a).

### B. Legal Standard Under Rule 60(b)

In its discretion, a court may relieve a party from an otherwise final order for any one of the following six reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;
(2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
(4) the judgment is void;
(5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
(6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

Just as timing determines whether Rule 59(e) applies to a motion for reconsideration, it also affects the interplay and availability of the various subsections of Rule 60(b). Someone proceeding under one of the first three subsections of Rule 60(b) must file his motion within one year after entry of the judgment at issue. Fed. R. Civ. P. 60(c)(1). A person relying on one of the three remaining subsections may file his Rule 60(b) motion within a "reasonable time." *Id.* Furthermore, he cannot rely on the 60(b)(6) catchall provision to circumvent the 60(c)(1) limitations on 60(b)(1)–(3). As the D.C. Circuit stated in *Williamsburg War Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 249 (D.C. Cir. 1987):

> Rule 60(b)(6) permits a court to grant relief from a final judgment for "any *other* reason justifying relief . . . ." (Emphasis added.) The courts have universally interpreted "other" to mean other than the reasons specified in subsections 60(b)(1)–60(b)(5) . . . .

Any other interpretation of 60(b)(6) would render the limitations on motions under 60(b)(1)–(3) meaningless. *See id.* ("[I]t is generally accepted that cases falling under Rule 60(b)(1) cannot be brought within the more generous Rule 60(b)(6) in order to escape the former's one year time

8

limitation."). With these provisions and the legal rules that govern the interplay between them in mind, the Court now turns to the specific arguments in Hammer's Motions.

## IV. ANALYSIS

### A. Hammer's First Motion to Vacate

Hammer makes three arguments in favor of his Motion to vacate the 2010 Order holding him in contempt. First, he argues that the fact that he had withdrawn from the *Steffen* and *Puma* lawsuits prior to the Court's entry of its 2010 Order is newly available evidence justifying relief under Rule 59(e). Second, he argues that the Court's failure to consider that same evidence is a Rule 60(b)(1) mistake that requires vacation of the Court's 2010 Order. Finally Hammer contends that, under Rule 60(b)(5), it is no longer equitable for the 2010 Order to apply to him prospectively in light of the hardship it has caused him and the fact that he has distanced himself from Bilzerian and taken remedial measures to "bring Bilzerian to Justice." First Mot. to Vacate 1, August 9, 2010, ECF No. 1099. Each of these arguments is unpersuasive.

#### i. Hammer's 59(e) Newly Available Evidence Argument Fails.

Hammer says that the fact that he had withdrawn from *Steffen* and *Puma* lawsuits prior to the Court's entry of the 2010 Order is newly available evidence that justifies relief under Rule 59(e). First Mot. to Vacate 4–5, August 9, 2010, ECF No. 1099. As discussed above, Rule 59(e) allows a court to correct its own mistake in the period immediately after entry of an order. Newly available evidence can provide justification for such a correction. *Firestone*, 76 F.3d at 1208. Rule 59(e) does not, however, afford Hammer an opportunity to raise new arguments that he could have raised before the Court entered its 2010 Order, nor is it a chance for him to correct poor strategic choices. The evidence Hammer alludes to is not newly available; it is simply newly received. Hammer had actual notice of the 2001 Order; he was held in contempt for

9

violating it before; and he was ordered to show cause by September 11, 2009, as to why he should not be held in contempt for violating it again. Despite all of this, Hammer waited nearly a year from the date that he was ordered to show cause to withdraw from these lawsuits. Hammer has no excuse for participating in these lawsuits at all, much less for dragging his heels for nearly a year before withdrawing from them. Accordingly, he has only himself to blame—not this Court—for the fact that notice of his eventual withdrawals arrived two days after the Court entered its 2010 Order. This is not newly available evidence that justifies granting a Rule 59(e) motion.

Moreover, even if Hammer had withdrawn from these lawsuits within a reasonable time, this Court still would have held him in contempt for violating the 2001 Order. This Court's 2010 Order had multiple objectives. Among them were to hold Hammer in contempt for violating the Court's 2001 Order, to order Hammer to purge his contempt by ceasing any representation of Steffen or Puma, and to order Hammer to file a sworn statement with this Court that he had complied with those conditions on or before July 23, 2010. To his credit, Hammer's July 15, 2010, Declaration of Compliance does indeed show that he had complied with the last two objectives of the 2010 Order even before this Court issued it, but those withdrawals do not—and they could not—bring him into compliance with the Court's 2001 Order. It makes absolutely no difference when Hammer withdrew from the cases; *by pursuing them at all without seeking this Court's permission*, he violated the 2001 Order and was rightly held in contempt for it.

Hammer makes an additional argument that requires the Court's attention. He points out that in its May 11, 2009, Memorandum Opinion, this Court stated the following:

> Movant Ernest Haire has also alleged that Jack Rabbit Limo Service, Inc., is in contempt of this Court's order. Indeed, it appears that Jack Rabbit Limo Service was in contempt of this Court's order. However, the Honorable Judge Martha J. Cook, in the Thirteenth Circuit, Hillsborough County, Florida, dismissed the *Jack Rabbit* suit . . . . Accordingly,

10

> because civil contempt is designed to compel compliance with a Court order or compensate a complainant for losses sustained, the civil contempt proceeding is now moot as to Jack Rabbit.

Mem. Op. 11–12, May 11, 2009, ECF No. 987. With regard to Robert Bleakley, this Court went on to state that:

> Even if Bleakley was in contempt of this Court's order, the request for an order holding him in contempt is now moot. Bleakley represented Puma, Bicoastal, and OHLP in the Puma Case for 13 months. (Bleakley's Response [933] at 2.) However, Bleakley no longer represents any family member of Bilzerian or any entity controlled by a family member of Bilzerian as he withdrew from the Puma case in June 2008.

*Id.* at 16–17. Hammer argues that "[j]ust as Jack Rabbit limo Service, Inc. and Robert Bleakley were no longer in violation of this Court's orders on May 11, 2009, Hammer was no longer in violation of this Court's orders on July 13, 2010. Therefore, the Contempt Order and Contempt Memorandum Opinion should be vacated with respect to Hammer." First Mot. to Vacate 5, August 9, 2010, ECF No. 1099. This argument fails for several reasons.

First, the reasoning this Court applied in its refusal to hold Robert Bleakley in contempt does not apply to Hammer. For a court's injunction to bind a person, that person must have actual notice of the order. Fed. R. Civ. P. 65(d)(2). Moreover, this Court's 2001 Order independently states that it only binds those who have actual notice of it. Order 2, July 19, 2001, ECF No. 416. As this Court pointed out in its May 11, 2009, Memorandum Opinion, Bleakley did not have actual notice of the Court's 2001 Order at the time of his involvement in violative litigation. Mem. Op. 16–17, May 11, 2009, ECF No. 987. By the time he did receive notice of the Order on July 3, 2008, he had already withdrawn from the violative litigation. *Id.* Unlike Bleakley, Hammer clearly had actual notice of the 2001 Order. The fact that this Court has held Hammer in contempt for violating the same Order before is proof enough of that. *Id.* at 9–11.

11

Because Hammer had notice of the Court's 2001 order and Bleakley did not, the Court's reasoning regarding Bleakley does not apply to Hammer.

The Court now turns to Hammer's argument regarding Jack Rabbit Limo Services, Inc. ("Jack Rabbit"). Although Jack Rabbit had actual notice of the 2001 Order, the Court is still not persuaded that its reasoning there applies to Hammer. As will be explained below, while holding Jack Rabbit in contempt could serve no coercive purpose, holding Hammer in contempt here serves a coercive purpose of primary importance.

Jack Rabbit was nothing more than a disguise Bilzerian and Hammer assumed in their ongoing mission to disrupt the judicial process. In a written opinion disposing of the *Jack Rabbit* litigation, Judge Cook stated that Jack Rabbit was Bilzerian's company and that Hammer represented him in litigation. *See* Docket 9, ECF No. 951. This Court had already held Bilzerian and Hammer—apart from their Jack Rabbit facade—in contempt in the same Order. Order 1–2, May 11, 2009, ECF No. 986. Thus, holding Jack Rabbit in contempt when it was really just a thinly veiled front for Bilzerian and Hammer, could serve no further coercive purpose.

Holding Hammer in civil contempt here, on the other hand, serves a coercive purpose of primary importance. The Court's 2001 Order was not aimed at stopping any single lawsuit. Rather, it was meant to put an end to Bilzerian, Hammer, and others' persistent and determined efforts to gum up the judicial works in this case by filing one frivolous lawsuit after another designed to thwart the receivership's progress. Their relative success in that endeavor explains—in large part—why this litigation has plodded along at a snail's pace for more than two decades. If this Court were to vacate its Contempt Order against Hammer now, its 2001 Order would become a dead letter. Hammer's actions here would become the blueprint for continued foot-dragging. Hammer, Bilzerian, and their cohorts would file the same frivolous lawsuits again and

again and wait for a show cause order. If one never comes, they have succeeded. If, on the other hand, they do receive a show cause order, they simply withdraw from the lawsuit in question before the Court is able to draft a contempt order. In this way, they thread the needle; they continue to stall the judicial process in this litigation by violating the 2001 order, but they avoid the contempt their actions merit. Such shell games will not defeat this Court's clear and unambiguous orders. This Court ordered Hammer not to pursue any lawsuits without its permission. Its Order was clear and unambiguous. Hammer had actual notice of the Order—he was even held in contempt of it once before. He blatantly violated it again. And he was rightly held in contempt for that violation.[3]

Finally, beyond all of this is the extraordinary nature of Rule 59(e)—a rarely used and disfavored remedy. Hammer's newly available evidence argument, even if accepted despite all of the problems explained above, simply does not present an extraordinary circumstance worthy of a Rule 59(e) order.

### ii. Hammer's and 60(b)(1) Mistake Argument Also Fails.

Hammer makes essentially the same argument under Rule 60(b)(1), except instead of contending that his withdrawals from the *Puma* and *Steffen* litigation are newly available evidence, he contends that the Court's failure to consider those withdrawals was a 60(b)(1) mistake. This argument also falls short. First, it is unclear whether Hammer contends that the

---

[3] Hammer presents variations of this argument intermittently and in multiple forms in his First Motion to Vacate. At one point, he cites a D.C. Circuit opinion for the proposition that "[w]here, as here, a court's ruling has discretionary elements based on circumstances which are subject to alteration, the law recognizes the power and responsibility of the court to reconsider its ruling if a material change in circumstances has in fact occurred." *See* First Mot. to Vacate 6, August 9, 2010, ECF No. 1099 (citing *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 125 (D.C. Cir. 1972)). The problem is that there has been no such material change in circumstances here. The Court based its Contempt Orders on Hammer's blatant violation of its 2001 Order. As discussed above, although Hammer was right to withdraw from the *Steffen* and *Puma* lawsuits—as the 2010 Order required him to—that action does not and cannot bring him into compliance with the 2001 Order. The moment he began pursuing the lawsuits he was in out-and-out violation of the 2001 Order, and contempt was appropriate. No circumstances have since changed that merit vacation of the Court's Contempt Order.

60(b)(1) mistake of which he complains is the Court's or his own. Mindful of Rule 59(e)'s "clear and narrow aim," to "mak[e] clear that the district court possesses power to correct its own mistakes," this Court already decided above that it did not need to reconsider the 2010 Order in light of Hammer's alleged newly available evidence due to some mistake on its own part. As such, and because Rule 60(b) is slightly more restrictive than Rule 59(e), the Court will not readdress that argument now under Rule 60(b)(1). Thus, the only question before the Court under 60(b)(1) is whether reconsideration of the 2010 Order is necessary in light of Hammer's mistake of not submitting the evidence of his withdrawals from the *Steffeen* and *Puma* litigation sooner. It is not.

To succeed under Rule 60(b)(1), Hammer must show that he was justified in failing to avoid his mistake or inadvertence. 11 C. Wright, A. Miller & M. K. Kane, *Federal Practice & Procedure* § 2858 (2d ed. 1995 & 2010 Update). Hammer offers no explanation for failing to bring this evidence to the Court's attention, and sheer carelessness on his part will not justify relief under 60(b)(1). *See Good Luck Nursing Home, Inc. v. Harris*, 636 F.2d 572, 577 (D.C. Cir. 1980) ("Rule 60(b) cannot, therefore, be employed simply to rescue a litigant from strategic choices that later turn out to be improvident."); *see also Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356–57 ("A court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law."); *Kagan v. Caterpillar Tractor Co.*, 795 F.2d 601, 607 (7th Cir. 1986) ("Neither ignorance nor carelessness on the part of the litigant or his attorney provide grounds for relief under Rule 60(b)(1)."). Therefore, Hammer's mistake argument is unavailing.

Moreover, even if Hammer had a decent justification for failing to avoid his mistake, the Court does not find this to be the sort of extraordinary circumstance that warrants using the disfavored and rarely used 60(b)(1) remedy. As discussed above, the Court's decision would be the same with or without that evidence.

### iii. Hammer's 60(b)(5) Hardship Argument Also Fails.

Hammer also argues, this time under Rule 60(b)(5), that it is no longer equitable for the 2010 Contempt Order to apply to him prospectively in light of the hardship it has caused him and the fact that he has distanced himself from Bilzerian and taken remedial measures to "bring Bilzerian to Justice." First Mot. to Vacate 1, August 9, 2010, ECF No. 1099.  Rule 60(b)(5) allows a court to relieve a person from a final order if "applying it prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). The Court does not doubt that its Contempt Order has made Hammer's life more difficult, but that is not enough to merit vacation. Courts should only grant Rule 60(b) motions in extraordinary circumstances. If hardship incidental to being held in civil contempt qualified as an extraordinary circumstance, it is hard to imagine how a court could coerce compliance with its own orders—especially against someone as steadfastly unwilling to comply as Hammer.  In fact, the only extraordinary aspect of this circumstance is Hammer's consistent disregard of this Court's orders, not the entirely natural and foreseeable hardship he now endures as a result.

The fact that Hammer has distanced himself from Bilzerian and helped to "bring[] Bilzerian to justice" does not change the Court's decision. Hammer could have taken these actions long ago. Instead, he waited until this Court held him in contempt twice for violating the same Order before he finally decided to undertake them. This is not the sort of extraordinary circumstance that requires granting a Rule 60(b) motion.

15

### B. Hammer's Motion to Vacate the Court's May 11, 2009, Order

The Court need not consider either of the arguments Hammer raises in his Second Motion to Vacate because one of them is time barred and the other has already been considered at length above and rejected.

Hammer's argument that his behavior since the Court's May 11, 2009, Order is newly discovered evidence that justifies relief under Rule 60(b)(2) is time-barred. Rule 60(c)(1) requires that motions seeking relief under 60(b)(1)–(3) be made no more than a year after the entry of the order of which they complain. Fed. R. Civ. P. 60(c)(1). Hammer filed his second motion to vacate more than a year after the entry of this Court's May 11, 2009, Order. Accordingly, his 60(b)(2) argument is time-barred under 60(c)(1). Even if it were not, though, the Court considered and rejected the same argument under the more lenient 59(e) standard above. For an even more convincing reason, then, Hammer's argument fails to justify relief under 60(b)(2).

The Court already considered and rejected Hammer's argument that Rule 60(b)(5) requires vacation of its 2010 Order. Its reasoning there applies with equal force to his request that the Court vacate its May 11, 2009, Order. Accordingly, the court rejects Hammer's argument that 60(b)(5) requires vacation of its May 11, 2009, Order.

The Court notes that the Florida Bar has suspended Hammer. It is true that Hammer, dispossessed of his Bar license, is a much less serious threat to this Court's 2001 Order. Still, the Court is convinced that its 2010 Order must remain in place despite Hammer's suspension. It is possible that Hammer could be licensed by another Bar or re-admitted to the Florida Bar, in which case, he would again pose an immediate threat to the Court's 2001 order.

## V. CONCLUSION

For the reasons set forth above, the Court will DENY Hammer's motions [1099, 1100] to vacate. A separate Order will issue this date.


Signed by Royce C. Lamberth, Chief Judge, on November 1, 2010.