UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

SECURITIES AND EXCHANGE
COMMISSION,

      Plaintiff,

v.                                                        Case No. 89-1854 (RCL)

PAUL A. BILZERIAN,

      Defendant.

---

KEVIN A. HORSTWOOD,
Haven House, Grand Mal,
St. George's Parish
Grenada, W.I.

      Movant.

v.

PAUL A. BILZERIAN, et. al.

      Defendants.

---

## PAUL A. BILZERIAN'S VERIFIED OPPOSITION TO KEVIN HORSTWOOD'S VERIFIED MOTION FOR POST JUDGMENT INTERVENTION [Dkt 1240]

    Paul A. Bilzerian ("Bilzerian") hereby submits his verified opposition to Kevin Horstwood's Verified Motion for Post Judgment Intervention [Dkt 1240] ("Motion to Intervene") and, in support declares on April 22, 2024, under penalty of perjury, that the following is true and correct.

    Horstwood's Motion to Intervene should be denied for a number of reasons explained below including, (i) lack of standing; (ii) even if he had standing, the motion is untimely; (iii) even if he had standing and the filing was timely, the filing of the cases he claims violates this court's

July 19, 2001 order were filed against him in 2011 and 2016, in a foreign country outside of this court's jurisdiction -- SKBHCV2011/0320 and SKBHCV2016/0311 in the Eastern Caribbean Supreme Court, St Christopher Circuit (collectively "Foreign Cases"); and (iv) Bilzerian has never been a party to the Foreign Cases and has no financial interest in either of them. The grounds for Horstwood's Motion to Intervene are not at all clear but it appears he is relying on Federal Rules of Civil Procedure 24(a) and 71, which shall be addressed below.

**Background**[1]

In 2010, Horstwood borrowed USD$385,000 from Adam Bilzerian, a citizen of St. Kitts. The loan was due in St. Kitts on January 17, 2011, but, when it came due, Horstwood stated he needed some additional time to repay it. After several extensions Horstwood acknowledged he was unable to repay the loan. A settlement was reached in which Horstwood received a release in exchange for the voluntary transfer to Adam Bilzerian of the stock in two companies that were pledged as security for the loan. After a few months, Horstwood repudiated the settlement agreement which caused Adam Bilzerian to file the Foreign Cases. Horstwood has managed to delay the resolution of the Foreign Cases for nearly thirteen years.[2] In 2023, Adam Bilzerian assigned his interest in the Foreign Cases to International Investments, Ltd., a St. Kitts company owned by Gregory Gilpin-Payne, which was substituted as the claimant in the Foreign Cases. (The order of substitution is presently on appeal.)

---

[1] The background section is based on the January 16, 2012 affidavit of Adam Bilzerian and the accompanying exhibits, which are attached hereto as Exhibits 1 and 2, which were filed in the Foreign Cases.

[2] Summary Judgment in SKBHCV2011/0320 was granted in favor of Adam Bilzerian on March 6, 2012, but was reversed on appeal in 2017 on the grounds that Adam Bilzerian could not provide sufficient proof of service of the Notice of Hearing on the summary judgment application.

**This Court's July 19, 2001 Contempt Order**

On July 19, 2001 this Court entered an order holding Bilzerian in contempt ("Contempt Order") for filing a motion to reopen his bankruptcy case in the Middle District of Florida [Dkt 416]. This court held that the filing of the motion to reopen, which was granted by the bankruptcy court, violated the order appointing Deborah Meshulam as Receiver [Dkt 185 as amended by Dkt 210]. The Contempt Order stated:

> ORDERED, that in order to purge himself of this finding of civil contempt, Defendant, Paul A. Bilzerian, shall, within two (2) business days of entry of this Order, withdraw with prejudice his motion filed in In Re: Paul A. Bilzerian, Debtor, Case No. 91-10466-8P7 (Bnkr. M.D. Fla., Tampa Div.) seeking to reopen that proceeding ("Motion to Reopen"); it is further
>
> ORDERED, that in the event that Defendant, Paul A. Bilzerian, fails to withdraw the Motion to Reopen as ordered by this Court, then, pursuant to Fed. R. Civ. Pro. 70, the Receiver or her representative is empowered and directed to withdraw said motion in place and stead of Defendant, Paul A. Bilzerian, and to take all other necessary steps, if any, to close the bankruptcy proceeding in the United States Bankruptcy Court for the Middle District of Florida; and it is further
>
> ORDERED, that should the Receiver be required to withdraw the Motion to Reopen, Defendant Paul A. Bilzerian, shall bear all costs and fees associated therewith; and it is further
>
> ORDERED that Defendant Paul A. Bilzerian, his agents, servants, employees, and attorneys, and those persons in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise, are prohibited from filing or causing the filing of any complaint, proceeding or motion in the United States Bankruptcy Court for the Middle District of Florida, or from otherwise commencing or causing the commencement of any proceedings in any court, other than in this Court or in appeals of this Court's Orders to the United States Court of Appeals for the District of Columbia, without prior application to and approval of this Court; and it is further
>
> ORDERED that if Defendant Paul A. Bilzerian has already filed a complaint in the United States Bankruptcy Court for the Middle District of Florida, he shall immediately file a notice of dismissal pursuant to Bankruptcy Rule 7041; and it is further

3

> *ORDERED that if Defendant Paul A. Bilzerian has already filed a complaint in the United States Bankruptcy Court and fails to immediately file a notice of dismissal pursuant to Bankruptcy Rule 7041, the Receiver is hereby authorized and directed to take such action on his behalf and to take all other necessary steps, if any, to dismiss such complaint in the United States Bankruptcy Court for the Middle District of Florida; and it is further*

> *ORDERED that the U.S. Marshals Service shall (i) accept a copy of this Order, (ii) shall deliver same to Defendant Paul A. Bilzerian forthwith, but in any event no later than one (1) business day after the date of its receipt, and (iii) certify to this Court that this Order was delivered to Defendant, Paul A. Bilzerian.*

The only beneficiary of the Contempt Order was the Receiver, Deborah Meshulam. The Receiver was discharged from her duties as receiver and from this case on January 28, 2016. [Dkt 1201].

## ARGUMENT

### 1. Rule 71 Does Not Apply.

Rule 71 states: "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party." However, it is well established that "Rule 71 . . . expressly requires that the order sought to be enforced by the nonparty be made in favor of that person." *United States v. Am. Soc. of Composers, Authors & Publishers*, 341 F.2d 1003, 1007–08 (2d Cir. 1965). Clearly, the Contempt Order did not grant any relief to Horstwood and therefore he does not have standing to enforce it. Horstwood did not provide any evidence nor did he make any argument to the contrary in his Motion to Intervene.

### 2. Horstwood Failed to Satisfy the Requirements of Rule 24(a).

Rule 24(a) states:

> *(a) Intervention of Right. On timely motion, the court must permit anyone to intervene who:*

> *(1) is given an unconditional right to intervene by a federal statute; or*

4

> *(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.*

## Horstwood's Motion to Intervene is Untimely

The Contempt Order was entered on July 19, 2001, ten years before the first of the Foreign Cases was filed and fifteen years before the second one was filed. Horstwood waited more than thirteen years to file his Motion to Intervene. The Motion to Intervene does not provide any reason for the thirteen year delay. On this ground alone the Motion to Intervene should be denied.

## The Motion to Intervene Does not Satisfy Rule 24(a)(1)

In addition to the Motion to Intervene being untimely, Horstwood failed to address let alone provide any evidence or argument that he has an unconditional right to intervene pursuant to a federal statute.

## The Motion to Intervene Does not Satisfy Rule 24(a)(2)

The Motion to Intervene failed to address let alone provide any evidence or argument that Horstwood can satisfy the requirements of Rule 24(a)(2).  The DC Circuit has held:

> We have drawn from the language of [Fed. R. Civ. P. 24(a)(2)] four distinct requirements that intervenors must demonstrate: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." *Karsner v. Lothian,* 532 F.3d 876, 885 (D.C.Cir.2008) (quoting *SEC v. Prudential Sec. Inc.,* 136 F.3d 153, 156 (D.C.Cir.1998)).

*Deutsche Bank Nat. Tr. Co. v. F.D.I.C.*, 717 F.3d 189, 192 (D.C. Cir. 2013).

The untimeliness of the Motion to Intervene has been addressed. Horstwood also failed to provide any evidence or argument to demonstrate he has a legally protected interest in this case. An assuming arguendo that Horstwood had some legally protected interest in this case, he has also failed to provide any evidence or argument to demonstrate how this case threatens to impair that imaginary legally protected interest. Finally, assuming arguendo that Horstwood had some legally protected interest in this case, and that this case somehow threatens to impair that imaginary legally protected interest, he has failed to even address why the Securities and Exchange Commission is not an adequate representative of his imaginary interests, whatever they might be.

### Conclusion

WHEREFORE, this Court should deny the Motion to Intervene because Horstwood lacks standing to intervene; the Motion to Intervene is untimely; and the Motion to Intervene fails to satisfy the requirements of either Rule 24(a)(1) or Rule 24(a)(2).

Respectfully submitted,

Paul A. Bilzerian, *pro se*
631 St. Christopher Club
Frigate Bay, St. Kitts
P.O. Box 2086
Basseterre, St. Kitts
pabilzeria@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of Paul A. Bilzerian's Verified Opposition to Kevin Horstwood's Verified Motion for Post Judgment Intervention [Dkt 1240] was filed with the Clerk of the United States District Court for the District of Columbia by using the CM/ECF system. Counsel for the Securities and Exchange Commission was served electronically by the CM/ECF system on this 22nd day of April 2024. In addition, a copy was also served by mail to Kevin Horstwood at Haven House, Grand Mal, St George, Grenada W.I. and by email at kevinhorstwood@yahoo.co.uk on this 22nd day of April 2024.

_Paul A Bilzerian_
_____
Paul A. Bilzerian

EXHIBIT 1

*Adam Bilzerian:AB*
*1ˢᵗ: AB1, AB2, AB3, AB4, AB6, AB7,*
*AB8, AB9, AB10, AB11, AB12, AB13, AB14, AB15*
*16/1/12:16/1/12*

**IN THE EASTERN CARIBBEAN SUPREME COURT**

IN THE HIGH COURT OF JUSTICE

FEDERATION OF SAINT CHRISTOPHER AND NEVIS

SAINT CHRISTOPHER CIRCUIT

CIVIL

A. D. 201



Claim No. SKBHCV2011/ 0320

Between:-

ADAM BILZERIAN                                  Applicant/Claimant

and

KEVIN HORSTWOOD                          Respondent/Defendant

## AFFIDAVIT OF ADAM BILZERIAN (CLAIMANT) IN SUPPORT OF APPLICATION FOR SUMMARY JUDGMENT

I, ADAM BILZERIAN, of 631 St. Christopher Club, Frigate Bay, St. Kitts, being duly sworn make oath and say as follows:

1.    In November 2009, Kevin Horstwood ("Defendant") requested a loan commitment from me in the amount of USD$350,000 in order to facilitate his acquisition of certain property known as the Golden Lemon Hotel, Golden Lemon Villas and the Caines Estate ("Properties"). I informed the Defendant that a loan commitment fee of USD$35,000 would be required. Defendant agreed to the amount of the commitment fee but asked if he could pay it by issuing me a promissory note for USD$35,000. 00.

2.    On or about December 7, 2009, I provided the Defendant with drafts of a commitment letter, two promissory notes: one for USD$350,000.00 and another for

1

USD$35,000.00 together with stock pledge agreements. The commitment required as a condition of closing the loan that the Defendant provide me with a letter from his counsel/attorney opining whether or not the proposed loan, promissory notes and security agreements (stock pledge agreements) were lawful and fully enforceable under the Laws of St. Kitts and Nevis ("Opinion Letter").

3.  Defendant's efforts to acquire the Properties continued to January 18, 2010, at which time Defendant informed me that a closing was to occur. I had not yet received the Opinion Letter from the Defendant's counsel as required in paragraph 2 above, but I nonetheless provided Defendant with a Cashier's Check in the amount of USD$350,000, drawn on the St. Kitts-Nevis-Anguilla National Bank ("Cashier's Check"), with instructions that it should not be delivered to the Seller of the Properties until all of the conditions of the commitment letter were satisfied, including the delivery of the Opinion Letter.

4.  On or about January 18, 2010, Horstwood and Caribbean Building Systems (St. Kitts) Ltd. ("CBS") executed two promissory notes in my favor totaling three hundred eight-five thousand US dollars (USD$385,000), one for US$350,000 ("Note 1") signed by Horstwood and CBS (collectively "Borrowers"), and one for US$35,000 ("Note 2") signed by Borrowers. True and correct copies of the promissory notes for US$350,000 and US$35,000 are exhibited herewith and marked 'AB1" and 'AB2", respectively.

5.  Note 1 was secured by a Stock Pledge Agreement, approved by the Board of Directors of CBS and Horstwood, the sole shareholder of CBS, which pledged all of the shares of CBS to me as security for Note 1. A true and correct copy of the Stock Pledge Agreement is exhibited herewith as "AB3".

6.  Note 1 was also secured by a Stock Pledge Agreement, approved by the Board of Directors of Lemon Grove Company, Ltd. ("Lemon Grove") and CBS, the sole shareholder of Lemon Grove, which pledged all of the shares of Lemon Grove to me as security for Note 1. A true and correct copy of the Stock Pledge Agreement is exhibited herewith as "AB4".

7.  Note 1 and Note 2 (collectively "Notes") required payment with interest to me on or before January 17, 2011.

8.  On or about January 21, 2010, Defendant provided me with the following fully executed original documents: Opinion Letter; Note 1; Note 2; Signed Stock Pledge Agreements; Shareholder and Director Minutes of CBS authorizing and approving the loan transaction; and Shareholder and Director Minutes of Lemon Grove authorizing and approving the loan transaction.  Thereafter, I authorized the delivery of the Cashier's Check to the Seller of the Properties.  The Opinion Letter was signed and released by the law firm of Elliott MacClure and stated:

"I hereby confirm and opine as follows. The Documents are operative and enforceable to (i) convey all of Leaman's interest in the Lemon to CBS; (ii) to bind you

2

and CBS, jointly and severally, to pay Bilzerian the sum of $700,000 after one year; and (iii) to grant Bilzerian security interests in the Hotel, 100% of the stock of LGC, and 100% of the stock of CBS. These Documents, when executed on the lines set forth for signatures, will be duly authorized, executed, valid, binding, and enforceable. Bilzerian's security interests in the Hotel, LGC, and CBS, will be duly granted and perfected, upon the execution of the Documents. The US$350,000 loan from Bilzerian to you and CBS complies with the laws of Saint Christopher and Nevis, which do not set a limit on interest rates. CBS and LGC are entities in good standing; you are the only shareholder of CBS and following the closing, CBS will be the only shareholder of LGC. You have the appropriate alien stockholder's license, to hold your shares of CBS. No governmental authority needs to consent to the execution, delivery, or performance of any of the Documents. None of the Documents are in violation of any applicable laws."

A true and correct copy of the Opinion Letter is exhibited herewith as "AB14".

9. On January 18, 2011, the Defendant and the rest of the Borrowers acknowledged in writing that they were unable to pay the Notes but that they could pay the Notes before March 1, 2011. At that time Borrowers and I entered into a forbearance agreement that, amongst other things, extended the due date of the Notes to March 1, 2011. A true and correct copy of the forbearance agreement is exhibited herewith as "AB5".

10. Borrowers failed to make any payment on the Notes on March 1, 2011, and went into default again. On April 20, 2011, Borrowers and I entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to May 20, 2011. A true and correct copy of the forbearance agreement is exhibited herewith as "AB6".

11. Borrowers failed to make any payment on the Notes on May 20, 2011, and went into default again. On June 13, 2011, Borrowers and I entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to June 20, 2011. A true and correct copy of the forbearance agreement is exhibited herewith and marked as "AB7".

12. Borrowers failed to make any payment on the Notes on June 20, 2011, and went into default again. Borrowers assured me that they would make full payment on the Notes not later than June 30, 2011.

13. On June 30, 2011, I had my attorney deliver by hand to Borrowers a letter that demanded payment on the Notes be made not later than July 1, 2011. A true and correct copy of the demand letter is exhibited herewith and marked as "AB8".

14. Borrowers failed to make any payment on the Notes on July 1, 2011, and went into default again. On July 7, 2011, Borrowers and I entered into another forbearance agreement that extended the due date to July 20, 2011. A true and correct copy of the forbearance agreement is exhibited herewith and marked as "AB9".

3

15.   Borrowers failed to make any payment on the Notes on July 20, 2011, at which time I demanded payment in full.

16.   On August 22, 2011, Borrowers informed me that they could not satisfy any portion of the Notes. After Borrowers consulted with their attorneys at Calvert Solicitors, 77 Weston Street, London Bridge, London, SE1 3RS, they signed an agreement on August 22, 2010, on the condition that they had the right to rescind it the following day. On August 23, 2010, Borrowers informed me that, after consultation with counsel, they had decided to rescind the August 22, 2010 agreement.  I advised Borrowers that if an agreement could not be reached by August 24, 2010, I would be forced to file a claim against them.  A true and correct copy of the August 22, 2011 rescinded agreement is exhibited herewith as "AB15".

17.   On August 24, 2011, Borrowers and I entered into an agreement to avoid litigation and resolve the repayment of the Notes on the following terms:

A.   Borrowers acknowledged the Notes were in default and that my demand for repayment of the Notes was timely and proper.

B.   Borrowers acknowledged that there are no oral agreements between me and Borrowers and that any agreements concerning the Notes were expressed only in writing in the existing Loan Documents.

C.   Borrowers, in every capacity, including, but not limited to, as shareholders, partners, officers, directors, investors and/or creditors of borrowers and/or guarantors, or any one or more of them, waived, discharged and forever released me and my attorneys, affiliates and successors and assigns, from and of any and all claims, causes of action, defenses, counterclaims or offsets and/or allegations Borrowers may have or may have made or which were based on facts or circumstances arising at any time up through and including August 24, 2011, whether known or unknown, against any or all of me and my attorneys, affiliates and successors and assigns.

D.   Horstwood acknowledged that on August 22, 2011, pursuant to the Forbearance Agreement dated July 7, 2011, Lender assumed ownership of all the shares of CBS and Lemon Grove in exchange for a release from any further liability on the Notes.

E.   Horstwood resigned as Manager and Director of CBS, and as Manager and Director of Lemon Grove, effective August 22, 2011.

F.   Horstwood acknowledged that he was not authorized to take any action of any kind on behalf of CBS or Lemon Grove, including communicating with the attorneys for CBS and Lemon without disclosing that he no longer represents either of them.

4

18. A true and correct copy of the August 24, 2011 agreement is exhibited herewith and marked as "AB10".

19. On August 25, 2011, at a shareholders meeting of CBS, I was duly elected a Director, Manager and President of CBS and Horstwood was removed from all positions of CBS. A true and correct copy of the minutes of the meeting of shareholders of CBS is exhibited herewith and marked as "AB11".

20. On August 25, 2011, at a shareholders meeting of Lemon Grove, I was duly elected a Director, Manager and President of Lemon Grove and Horstwood was removed from all positions of Lemon Grove. A true and correct copy of the minutes of the meeting of shareholders of Lemon Grove is exhibited herewith and marked as "AB12".

21. On October 25, 2011, Horstwood sent me a letter on CBS stationary claiming to be Chief Executive Officer of CBS, and demanding that I "immediately cease and desist" from representing to any third party that I was the president of CBS or Lemon Grove. Horstwood further threatened that if I failed to do so, it might result in "substantial civil and/or criminal liability." A true and correct copy of the letter is exhibited herewith and marked as "AB13".

22. CBS has substantial liabilities in excess of six million US dollars (USD$6,000,000) that are past due including money owed for wages, electricity, water, telephone, property taxes, and to the Financial Services Regulatory Commission, First Caribbean International Bank, and several others who have entered into contracts and made deposits for the purchase of CBS assets.

23. Lemon Grove also has substantial liabilities in excess of six million US dollars (USD$6,000,000) that are past due including money owed for wages, electricity, water, telephone, property taxes, and to the Financial Services Regulatory Commission, First Caribbean International Bank, and several others who have entered into contracts to purchase Lemon Grove assets. Lemon Grove also owns and operated a hotel that employed a staff of people until Borrowers shut it down

24. Horstwood has refused to turn over the property he removed that belongs to CBS and Lemon Grove, including keys to the hotel and adjacent villas. The properties are in very poor states of disrepair and are in desperate need of repair, renovation, substantial capital investment, substantial operating capital and management.

25. I make this affidavit in support of my application for summary judgment knowing its contents to be true and correct to the best of my knowledge and belief.

26. All of the statements made by me in this affidavit are from my own knowledge and made in conformity with Rule 30.3 (2) (b) (i) of the CPR 2000.

5

SWORN at the Registrar's Office)

In the town of Basseterre in the  )

Island of St. Christopher this     )

16th day of January 2012      )          ADAM BILZERIAN

**BEFORE ME:-**

Vanessa Isles
COMMISSIONER FOR OATHS
ST CHRISTOPHER /NEVIS

6

EXHIBIT 2

## IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

FEDERATION OF SAINT CHRISTOPHER AND NEVIS

SAINT CHRISTOPHER CIRCUIT

CIVIL

A. D. 2012

Claim No. SKBHCV2011/ 0320

Between:-



ADAM BILZERIAN                    Applicant/Claimant

and

KEVIN HORSTWOOD                   Respondent/Defendant

### CERTIFICATE OF EXHIBIT

I, Vaneesa Toles Commissioner for Oaths HEREBY certify that the following are the document referred to in the Affidavit of ADAM BILZERIAN filedon the 16th day of January 2012.

| | |
|---|---|
| "AB1" | Secured Promissory Note |
| "AB2" | Secured Promissory Note |
| "AB3" | Stock Pledge Agreement |
| "AB4" | Stock Pledge Agreement |
| "AB5" | Forbearance Agreement |
| "AB6" | Forbearance Agreement |
| "AB7" | Forbearance Agreement |
| "AB8" | Demand Letter |
| "AB9" | Forbearance Agreement |
| "AB10" | Agreement Letter |
| "AB11" | Minutes of Meeting – Caribbean Building Systems |
| "AB12" | Minutes of Meeting – Lemon Grove Company |
| "AB13" | Letter from Horstwood on CBS stationary |
| "AB14" | Opinion Letter |
| "AB15" | Rescinded Agreement |

Dated this 16th day of January 2012

...............................................

Commissioner for Oaths

EXHIBIT 1

## SECURED PROMISSORY NOTE

Basseterre, St. Kitts                                              US$350,000.00
January 18, 2010

FOR VALUE RECEIVED, the undersigned jointly and severally, hereinafter referred to as the "Maker," whose address is at the Rawlins Plantation, Mount Pleasant, Saint Kitts, promises to pay to the order of Adam Bilzerian, a citizen of St. Kitts, his successors or assigns, hereinafter collectively referred to as the "Lender," the sum of Three Hundred Fifty Thousand United States Dollars (USD350,000.00) (the "Loan Amount"), for the purpose of acquiring 100% of the equity of redemption in the Golden Lemon Inn and Villas, as more specifically described in paragraph B.1., on the following terms and conditions:

### A. Interest Rate

1. The principal balance from time to time outstanding shall bear interest at a rate equal to one hundred percent (100%) per annum (the "Interest Rate"), compounded annually, for the Term of the Loan.  The parties agree that because the Lender is loaning 100% of the initial purchase price for the purpose of acquiring 100% of the equity interest in the Golden Lemon Inn and Villas, which is a loan that is simply unavailable from any alternative source, the Interest Rate is fair and reasonable under the circumstances.

2. All interest due hereunder shall be computed based upon a three hundred sixty (360) day year and be paid upon the actual number of days upon which the principal balance has been disbursed and remains outstanding from time to time.

3. The default interest rate shall be two hundred percent (200%) per annum (the "Default Rate"). The Default Rate shall apply to any amount not paid and outstanding after January 17, 2011. Any Judgment rendered on this Note shall bear interest from the date of Judgment at the Default Rate.

### B.  Collateral

1. Maker shall grant Lender a blanket security interest in all those parcels comprising the Rawlins Plantation, the legal description of which is attached as Exhibit A, including first charges against the two parcels described in Exhibit B.  Additionally, Maker shall grant Lender a blanket security interest in all those parcels comprising the Golden Lemon Inn and Villas and Caines Estate, the legal description of which is attached as Exhibit C.  Maker consents to Lender recording any or all of these security interests with the Registry of the Island of Saint Kitts.

### C. Payment Terms

1. Maker shall pay to Lender all principal and interest due on the Note on January 17, 2011.  The principal and interest due on January 17, 2011 will be Seven Hundred Thousand United States Dollars ($700,000).  Any payment more than five days late shall be subject to a late fee of 50%

1

of the amount not paid more than five days after the due date. The late fee shall not be subject to interest.

2. Maker may prepay the amount due to Lender at any time; however, in the event of prepayment, the amount of interest due to Lender shall be no less than one hundred thousand United States Dollars (US$100,000.00).

3. All payments shall be timely made by wire transfer to Lender's account at Valartis Bank pursuant to the wire instructions attached hereto or any other account designated by Lender in writing.

C. Default

1. Any Maker to this Note shall be in default hereunder upon: (a) the dissolution, termination of existence, or bankruptcy of Maker, appointment of a receiver for Maker; an assignment for the benefit of creditors by or the commencement of any proceedings in bankruptcy by or against Maker; the Maker shall be permitted a grace period of sixty (60) days to obtain a discharge from bankruptcy under the strict circumstances of a bankruptcy action being brought against Maker, and this provision shall not apply if the bankruptcy is initiated by Maker; this provision of a grace period to cure shall not delay, modify or toll any rights granted to Lender by law; (b) the entry of a judgment against any Maker which is not released, discharged or rendered unenforceable within thirty (30) days of notice of such judgment to Maker; (c) the taking of possession of any substantial part of the property of Maker at the instance of any governmental authority; and (d) the making of any representation or statement to Lender by or on behalf of Maker in connection with this Note which is known to Maker to be false at the time it was made, or which Maker learns is false and Maker fails to advise Lender of the falsity of that representation or statement within 72 hours of Maker learning such information.

2. The Maker hereby: (i) waives demand, presentment, notice of nonpayment or dishonor, protest, notice of protest and all other notice, filing of suit and diligence in collecting this Note; (ii) agrees that the Lender shall not be required first to institute any suit, or to exhaust its remedies against the Maker; and (iii) consents to any extension, rearrangement, renewal or postponement of time of payment of this Note and to any other indulgency with respect hereto without notice, consent or consideration to any of them.

3. If this Note is in default the interest rate shall immediately increase to the Default Rate as defined heretofore, commencing from the date of the initial default. Said Default Rate shall be applicable until such time as the default is cured or this Note and all other charges or interest are paid in full.

D. Notice

Any and all notices, elections, demands, requests and responses thereto so permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited with an overnight commercial delivery

service requiring proof of delivery, to the other party at the address as so provided herein or so designated in the future in writing by any party herein; provided however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party shall constitute receipt. Rejection or refusal to accept or inability to deliver because of change of address of which no notice has been received shall also constitute receipt. All notices shall be addressed to:

> Maker at:
> Kevin Horstwood
> Rawlins Plantation
> Mount Pleasant, Saint Kitts
> And by certified email to: kevin@rawlinsplantation.com

> Lender at:
> Adam Bilzerian
> 631 St. Christopher Club
> Frigate Bay, St. Kitts
> And by certified email to: adambilzerian@aol.com

## E. Expenses.

Maker shall pay Lender's legal costs with respect to the execution of this Note and shall pay all costs of recording the Security instruments described in Section B above.

In the event this Note is not paid when due, or should it be necessary for Lender to enforce any other of its rights under this Note, Maker will pay to Lender, in addition, to principal, interest and other charges due hereunder, all costs of collection or enforcement, including reasonable attorneys' fees, paralegals' fees, legal assistants' fees, costs and expenses, whether incurred with respect to collection, litigation, bankruptcy proceedings, interpretation, dispute, negotiation, trial, appeal, defense of actions instituted by a third party against Lender arising out of or related to the Loan, enforcement of any judgment based on this Note, or otherwise, whether or not a suit to collect such amounts or to enforce such rights is brought or, if brought, is prosecuted to judgment and such amounts not paid shall be defined additional principal due and owing hereunder.

## F. Applicable Law.

This Note shall be governed by and construed in accordance with the laws of Saint Kitts and Nevis.

## G. Severability.

In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal, or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operates or would prospectively operate to invalidate

3

this Note, then and in any of those events, only such provision or provisions shall be deemed null and void and shall not affect any other provision of this Note. The remaining provisions of this Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced, or disturbed thereby.

MAKER/ Kevin Horstwood

_____
Kevin Horstwood

MAKER/ CARIBBEAN BUILDING SYSTEMS LTD.

_____
Kevin Horstwood, Manager

EXHIBIT 2

## SECURED PROMISSORY NOTE

Basseterre, St. Kitts                                                    US$35,000.00
January 18, 2010

FOR VALUE RECEIVED, the undersigned jointly and severally, hereinafter referred to as the "Makers," whose address is at the Rawlins Plantation, Mount Pleasant, Saint Kitts, promises to pay to the order of Adam Bilzerian, a citizen of St. Kitts, his successors or assigns, hereinafter collectively referred to as the "Lender," the sum of Thirty-Five Thousand United States Dollars (USD35,000.00) (the "Loan Amount"), for the purpose of paying the Commitment Fee due on the Commitment Letter executed on January 18, 2010 by and between Adam Bilzerian and the Makers, on the following terms and conditions:

A. Interest Rate

1. The principal balance from time to time outstanding shall bear interest at a rate equal to one hundred percent (100%) per annum (the "Interest Rate"), compounded annually, for the Term of the Loan. The parties agree that the Interest Rate is fair and reasonable under the circumstances.

2. All interest due hereunder shall be computed based upon a three hundred sixty (360) day year and be paid upon the actual number of days upon which the principal balance has been disbursed and remains outstanding from time to time.

3. The default interest rate shall be one hundred fifty percent (150%) per annum (the "Default Rate"). Any Judgment rendered on this Note shall also bear interest from the time of judgment at the Default Rate.

B. Payment Terms

1. Makers shall pay to Lender all principal and interest due on the Note on January 17, 2011. The principal and interest due on January 17, 2011 will be Seventy Thousand United States Dollars ($70,000).

2. Makers may prepay the amount due to Lender at any time.

3. All payments shall be timely made by wire transfer to Lender's account at Valartis Bank pursuant to the wire instructions attached hereto or any other account designated by Lender in writing.

C. Default

1. Any Maker to this Note shall be in default hereunder upon: (a) the dissolution, termination of existence, or bankruptcy of Maker, appointment of a receiver for Maker; an assignment for the benefit of creditors by or the commencement of any proceedings in bankruptcy by or against Maker; the Maker shall be permitted a grace period of sixty (60) days to obtain a discharge from bankruptcy under the strict circumstances of a bankruptcy action being brought against Maker,

1

and this provision shall not apply if the bankruptcy is initiated by Maker; this provision of a grace period to cure shall not delay, modify or toll any rights granted to Lender by law; (b) the entry of a judgment against any Maker which is not released, discharged or rendered unenforceable within thirty (30) days of notice of such judgment to Maker; (c) the taking of possession of any substantial part of the property of Maker at the instance of any governmental authority; and (d) the making of any representation or statement to Lender by or on behalf of Maker in connection with this Note which is known to Maker to be false at the time it was made, or which Maker learns is false and Maker fails to advise Lender of the falsity of that representation or statement within 72 hours of Maker learning such information.

2. The Makers hereby: (i) waive demand, presentment, notice of nonpayment or dishonor, protest, notice of protest and all other notice, filing of suit and diligence in collecting this Note; (ii) agree that the Lender shall not be required first to institute any suit, or to exhaust its remedies against the Maker; and (iii) consent to any extension, rearrangement, renewal or postponement of time of payment of this Note and to any other indulgency with respect hereto without notice, consent or consideration to any of them.

3. If this Note is in default the interest rate shall immediately increase to the Default Rate as defined heretofore, commencing from the date of the initial default. Said Default Rate shall be applicable until such time as the default is cured or this Note and all other charges or interest are paid in full.

D. Notice

Any and all notices, elections, demands, requests and responses thereto so permitted or required to be given under this Note shall be in writing, signed by or on behalf of the party giving the same, and shall be deemed to have been properly given and shall be effective upon being personally delivered, or upon being deposited with an overnight commercial delivery service requiring proof of delivery, to the other party at the address as so provided herein or so designated in the future in writing by any party herein; provided however, that the time period in which a response to any such notice, election, demand or request must be given shall commence on the date of receipt thereof. Personal delivery to a party or to any officer, partner, agent or employee of such party shall constitute receipt. Rejection or refusal to accept or inability to deliver because of change of address of which no notice has been received shall also constitute receipt. All notices shall be addressed to:

Makers at:
Kevin Horstwood
Rawlins Plantation
Mount Pleasant, Saint Kitts
And by certified email to: kevin@rawlinsplantation.com

Lender at:
Adam Bilzerian
631 St. Christopher Club
Frigate Bay, St. Kitts

2

And by certified email to: adambilzerian@aol.com

E. Expenses.

Makers shall pay Lender's legal costs with respect to the execution of this Note and shall pay all costs of recording the Security instruments described in Section B above.

In the event this Note is not paid when due, or should it be necessary for Lender to enforce any other of its rights under this Note, Makers will pay to Lender, in addition, to principal, interest and other charges due hereunder, all costs of collection or enforcement, including reasonable attorneys' fees, paralegals' fees, legal assistants' fees, costs and expenses, whether incurred with respect to collection, litigation, bankruptcy proceedings, interpretation, dispute, negotiation, trial, appeal, defense of actions instituted by a third party against Lender arising out of or related to the Loan, enforcement of any judgment based on this Note, or otherwise, whether or not a suit to collect such amounts or to enforce such rights is brought or, if brought, is prosecuted to judgment and such amounts not paid shall be defined additional principal due and owing hereunder.

F. Applicable Law.

This Note shall be governed by and construed in accordance with the laws of Saint Kitts and Nevis.

G. Severability.

In the event any one or more of the provisions of this Note shall for any reason be held to be invalid, illegal, or unenforceable, in whole or in part or in any respect, or in the event that any one or more of the provisions of this Note operates or would prospectively operate to invalidate this Note, then and in any of those events, only such provision or provisions shall be deemed null and void and shall not affect any other provision of this Note. The remaining provisions of this Note shall remain operative and in full force and effect and shall in no way be affected, prejudiced, or disturbed thereby.

MAKER: Kevin Horstwood

Kevin Horstwood

MAKER: CARIBBEAN BUILDING SYSTEMS LTD.

Kevin Horstwood, Manager

3

EXHIBIT 3

## CARIBBEAN BUILDING SYSTEMS LTD

Rawlins Plantation
Mount Pleasant
St Kitts WI

### Stock Pledges and Promissory Undertaking

At an Extraordinary General Meeting of the company held on the 20th December 2009, after due notice specifying the intention to propose the following resolution as a Special Resolution, the same was duly passed and was duly confirmed at a further Extraordinary General Meeting of the Company held on the 4th day of January, 2010.

Be it resolved that the 100% shareholder Kevin Andrew Horstwood undertakes to grant to Adam Bilzerian a first security interest in all of his shares, stock, and equity in Caribbean Building Systems Ltd.

Be it resolved that the 100% shareholder Kevin Andrew Horstwood undertakes and promises not to encumber the shares of Caribbean Building Systems in any further way from this date hence until any liabilities to Adam Bilzerian have been discharged.

Dated 22nd day of January 2010.

Signed: ......................................................
Kevin Andrew Horstwood
100% Shareholder

## PLEDGE OF SHARES OF STOCK

BE IT KNOWN, for value received, the undersigned Kevin Horstwood (Pledgor) residing in St. Kitts hereby deposits, delivers to and pledges with Adam Bilzerian (Pledgee) of St. Kitts, as collateral security to secure the payment of a Promissory Note, dated January 18, 2010, in the principal amount of US$350,000 ("Debt"), the following:

1 share of stock of Caribbean Building Systems, Ltd. represented as Stock Certificate No 2, which represents 100% of the outstanding stock of Caribbean Building Systems, Ltd. ("Pledged Shares").

It is further agreed:

1. Pledgee may assign or transfer Debt and the Pledged Shares to any third party.

2. In the event a stock dividend or further issue of stock in Caribbean Building Systems, Ltd. is issued to the Pledgor, the Pledgor shall pledge said shares as additional collateral for the Debt.

3. That during the term of this pledge agreement, and so long as it is not in default, the Pledgor shall have full rights to vote said shares, except that stock dividends shall also be pledged.

4. That during the pendency of this agreement, the Pledgor shall not issue any proxy or assignment of rights to the Pledged Shares.

5. The Pledgor warrants and represents it has good title to the Pledged Shares, they are free from liens and encumbrances or any prior pledge, and the Pledgor has full authority to transfer said shares as collateral security.

6. Upon default of payment of the Debt, or breach of this pledge agreement, the Pledgee or holder shall have full rights to foreclose on the Pledged Shares and exercise its rights as a secured party; and said rights being cumulative with any other rights the Pledgee or holder may have against the Pledgor.

7. The Pledgor understands that upon foreclosure, the Pledged Shares may be sold at public auction or public sale. The Pledgor shall be provided reasonable notice of any said intended sale and the Pledgor shall have full rights to redeem said shares at any time prior to said sale upon payment of the Debt, and accrued costs of collection. In the event the Pledged Shares shall be sold for less than the amount then owing, the Pledgor shall be liable for any deficiency. Alternatively, Pledgee has the right to retain the Pledged Shares as partial satisfaction for the debt but, in that instance, Pledgor shall not be liable for any deficiency; Pledgee shall only have the right to all other collateral securing the Debt.

8. Upon timely payment of the obligation for which the shares are pledged, the Pledged Shares shall be returned to the Pledgor and this pledge agreement shall be terminated.

9.  This pledge agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns and personal representatives.

10.  Upon default the Pledgor shall pay all reasonable attorneys' fees and cost of collection.

Signed this 22nd day of January 2010.

Kevin Horstwood

## STOCK POWER

I, the undersigned, do hereby irrevocably constitute and appoint **Adam Jacob Bilzerian** attorney to transfer the stock of Caribbean Building Systems (St. Kitts) Ltd., on the books of said Company, with full power of substitution in the premises, during the term of the note issued by me in favor of Adam Jacob Bilzerian in the amount of US$350,000.

Dated: February 9, 2010.

Kevin Andrew Horstwood

(The Companies Act, 1996-22-St.Christopher)

## CARIBBEAN BUILDING SYSTEMS (ST.KITTS) LIMITED

Certificate Number

Number of Shares      2      Class of Shares

1

Nos.1 .

Common

Name of member recorded in the register of members of the Company as being the holder of the share(s) contained in this certificate: **Kevin A. Horstwood**

Date recorded in the register of members of the company as date of issue of share certificate: June 15th, 2004

The Member whose name appears above is the Registered Proprietor of the shares comprised in this Certificate and described above being fully paid up shares in the above-named Company, subject to the Memorandum and Articles of Association of the said Company. The shares contained in this Certificate are transferable on the books of the Company by the holder thereof in person or by Attorney upon surrender of this Certificate together with a written statement of transfer.

_____
Director

_____
Secretary



EXHIBIT 4

# LEMON GROVE COMPANY LTD

Golden Lemon Great House
Dieppe Bay
St Kitts WI

## Stock Pledges and Promissory Undertaking

At an Extraordinary General Meeting of the company held on the 25th January 2010, after due notice specifying the intention to propose the following resolution as a Special Resolution, the same was duly passed and was duly confirmed at a further Extraordinary General Meeting of the Company held on the 25th day of January, 2010.

Be it resolved that the 100% shareholder Caribbean Building Systems, Ltd. undertakes to grant to Adam Bilzerian a first security interest in all of its shares, stock, and equity in Lemon Grove Company Ltd.

Be it resolved that the 100% shareholder Caribbean Building Systems undertakes and promises not to encumber the shares of Caribbean Building Systems in any further way from this date hence until any liabilities to Adam Bilzerian have been discharged.

Dated 25th day of January 2010.

Signed: - .................................................................

Caribbean Building Systems, Ltd.
By: Kevin Andrew Horswood
100% Shareholder

## PLEDGE OF SHARES OF STOCK

BE IT KNOWN, for value received, the undersigned Caribbean Building Systems, Ltd. (Pledgor) of St. Kitts hereby deposits, delivers to and pledges with Adam Bilzerian (Pledgee) of St. Kitts, as collateral security to secure the payment of a Promissory Note, dated January 18, 2010, in the principal amount of US$350,000 ("Debt"), the following:

8,000 shares of stock of Lemon Grove Company, Ltd ("Lemon Grove") represented as Stock Certificate No 1, which represents 100% of the outstanding stock of Lemon Grove ("Pledged Shares").

It is further agreed:

1. Pledgee may assign or transfer Debt and the Pledged Shares to any third party.

2. In the event a stock dividend or further issue of stock in Lemon Grove is issued to the Pledgor, the Pledgor shall pledge said shares as additional collateral for the Debt.

3. That during the term of this pledge agreement, and so long as it is not in default, the Pledgor shall have full rights to vote said shares, except that stock dividends shall also be pledged.

4. That during the pendency of this agreement, the Pledgor shall not issue any proxy or assignment of rights to the Pledged Shares.

5. The Pledgor warrants and represents it has good title to the Pledged Shares, they are free from liens and encumbrances or any prior pledge, and the Pledgor has full authority to transfer said shares as collateral security.

6. Upon default of payment of the Debt, or breach of this pledge agreement, the Pledgee or holder shall have full rights to foreclose on the Pledged Shares and exercise its rights as a secured party; and said rights being cumulative with any other rights the Pledgee or holder may have against the Pledgor.

7. The Pledgor understands that upon foreclosure, the Pledged Shares may be sold at public auction or public sale. The Pledgor shall be provided reasonable notice of any said intended sale and the Pledgor shall have full rights to redeem said shares at any time prior to said sale upon payment of the Debt, and accrued costs of collection. In the event the Pledged Shares shall be sold for less than the amount then owing, the Pledgor shall be liable for any deficiency. Alternatively, Pledgee has the right to retain the Pledged Shares as partial satisfaction for the debt but, in that instance, Pledgor shall not be liable for any deficiency; Pledgee shall only have the right to all other collateral securing the Debt.

8. Upon timely payment of the obligation for which the shares are pledged, the Pledged Shares shall be returned to the Pledgor and this pledge agreement shall be terminated.

9.  This pledge agreement shall be binding upon and inure to the benefit of the parties, their successors, assigns and personal representatives.

10.  Upon default the Pledgor shall pay all reasonable attorneys' fees and cost of collection.

Signed this 22nd day of January 2010.

Caribbean Building Systems, Ltd.
By: Kevin Horstwood, Manager

2

## STOCK POWER

I, the undersigned, do hereby irrevocably constitute and appoint **Adam Jacob Bilzerian**
attorney to transfer the stock of Lemon Grove Company Ltd., on the books of said Company,
with full power of substitution in the premises, during the term of the note issued by me in favor
of Adam Jacob Bilzerian in the amount of US$350,000.

Dated: February 9, 2010.

_____
Caribbean Building Systems (St. Kitts) Ltd.
By Kevin Andrew Horstwood, Director

Certificate

No. 1

For 8,000 Shares

Issued to

Caribbean Building Systems (St. Kitts) Ltd.

_____

_____

Dated 9 February 2010

From whom transferred

_____

Dated _____

| No. Original Certificate | No. Original Shares | No. Shares Transferred |
|---|---|---|
| | | |

Received Certificate No. _____

For _____ Shares

this _____ day of _____

_____

_____



No. 1                                                    8,000 Common Shares

(The Companies Act, 1996-22-St. Christopher)

# Lemon Grove Company Ltd.

This Certifies that _____ Caribbean Building Systems (St. Kitts) Limited _____ is the Registered Proprietor of eight thousand (8,000) fully paid common Shares of the Capital Stock, subject to the Memorandum and Articles of Association of the said Company, transferable only on the books of the Corporation by the holder hereof in person or by Attorney upon surrender of this Certificate properly endorsed.

In Witness Whereof, the said Corporation has caused this Certificate to be signed by its duly authorized officers and its Corporate Seal is to be hereunto affixed this 9th day of February, A.D. 2010.

_____        _____        David Hammur
Director                                                                              Secretary

EXHIBIT 5

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

January 17, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re:  Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan Documents").  All amounts due from Borrowers to Lender, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the "Liabilities."

As of January 17, 2011 the Liabilities include, but are not limited to, the following:

| Loan | Principal | Interest |
|------|-----------|----------|
| Note 1 | US$350,000 | US$350,000 |
| Note 2 | US$ 35,000 | US$ 35,000 |

The amounts referenced above are exclusive of interest accruing after January 17, 2011, any costs and expenses (including, but not limited to, inside and outside counsel fees), or any late fees.

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy the Liabilities. Subject to timely, written acceptance by Borrowers of the following conditions, Lender is willing to forbear until March 1, 2011, subject to earlier termination as provided below, from further action to collect the Liabilities:

    1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

    2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

    3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

    4. In the event any other lender to Borrowers, including but not limited to First Caribbean International Bank ("FCIB"), declares a default against Borrowers or their affiliates, including but not limited to Lemon Grove Company, Ltd., Lender shall have the right to immediately terminate this Forbearance Agreement, and take ownership of all the collateral pledged to secure the Notes, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd., without further notice to Borrowers. Borrowers specifically waive any right to notice of default, further demand and notice of the disposition of the collateral.

    5. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

2

A ﾟ B

6.  No failure on the part of Lender to exercise, and no delay in exercising any rights under the Agreement or the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Agreement or the Loan Documents preclude any further exercise thereof, or the exercise or any other right. Each and every right or remedy granted under the Agreement or the Loan Documents or under any document delivered thereunder or in connection therewith or allowed by Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

Very truly yours,


_____
Adam Bilzerian


AGREED TO: KEVIN HORSTWOOD


_____
Kevin Horstwood


AGREED TO: CARIBBEAN BUILDING SYSTEMS LTD.


_____
Kevin Horstwood, Manager


AGREED TO: LEMON GROVE COMPANY, LTD.


_____
Kevin Horstwood, Manager


3

EXHIBIT 6

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

CORRECTED

April 20, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan Documents"). All amounts due from Borrowers to Lender, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the "Liabilities."

This letter agreement shall confirm that the Borrowers were in default of the Notes on January 18, 2011. At that time the Lender entered into a forbearance agreement that, amongst other things, extended the due date of the Notes to March 1, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on March 1, 2011, and have been in default since. The Borrowers have asked for one final

A.J.0

extension of the due date which the Lender has agreed to provide on the conditions set forth in this letter agreement.

The Borrowers acknowledge and agree that as of April 18, 2011, the Liabilities include, but are not limited to, the following:

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$695,205 | $350,000 | $1,395,205 |
| Note 2 | US$ 35,000 | US$ 60,890 | | $ 95,890 |
| Total | | | | $1,491,095 |

The amounts referenced above are exclusive of interest accruing after April 18, 2011, any costs and expenses (including, but not limited to, inside and outside counsel fees). Interest on Note 1 shall accrue at $3,835.62 per day. Interest on Note 2 shall accrue at $287.67 per day. Assuming you make no payments until May 20, 2011, the total amount due on both Notes will be $1,618,917.

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy the Liabilities. Subject to written agreement and acceptance by Borrowers of the factual recitations, terms and conditions contained in this letter agreement, not later than April 21, 2011, Lender is willing to forbear until May 20, 2011, subject to earlier termination as provided below, from further action to collect the Liabilities:

1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

2



A.J.B

4. In the event any other lender to Borrowers, including but not limited to First Caribbean International Bank ("FCIB"), declares a default against Borrowers or their affiliates, including but not limited to Lemon Grove Company, Ltd., Lender shall have the right to immediately terminate this Forbearance Agreement, and take ownership of all the collateral pledged to secure the Notes, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd., without further notice to Borrowers. Borrowers specifically waive any right to notice of default, further demand and notice of the disposition of the collateral.

5. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

6. No failure on the part of Lender to exercise, and no delay in exercising any rights under the Agreement or the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Agreement or the Loan Documents preclude any further exercise thereof, or the exercise or any other right. Each and every right or remedy granted under the Agreement or the Loan Documents or under any document delivered thereunder or in connection therewith or allowed by Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

Very truly yours,


_____
Adam Bilzerian


AGREED TO: KEVIN HORSTWOOD


_____                    _____
Kevin Horstwood                            Date   21/4/11


AGREED TO: CARIBBEAN BUILDING SYSTEMS LTD.


_____                    _____
Kevin Horstwood, Manager                   Date   21/4/11

3

AGREED TO:  LEMON GROVE COMPANY, LTD.

_____     _____
Kevin Horstwood, Manager                Date

## NOTARY ACKNOWLEDGEMENT OF THE SIGNATURES OF KEVIN HORSTWOOD, INDIVIDUALLY, AND AS MANAGER OF CARIBBEAN BUILDING SYSTEMS LTD. AND LEMON GROVE COMPANY, LTD.

I hereby certify that, on the _____ day of April, 2011, Kevin Horstwood appeared before me and signed his name to this document individually and as Manager of CARIBBEAN BUILDING SYSTEMS LTD. and LEMON GROVE COMPANY, LTD., and stated under oath that he was in agreement with the factual recitations, terms and conditions contained in this Letter Agreement.


_____
Notary Public



4

A.D. 0

EXHIBIT 7

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

June 13, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan Documents"). All amounts due from Borrowers to Lender, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the "Liabilities."

This letter agreement shall confirm that the Borrowers were in default of the Notes on January 18, 2011. At that time the Lender entered into a forbearance agreement that, amongst other things, extended the due date of the Notes to March 1, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on March 1, 2011, and have been in default since. On April 20, 2011, at the request of the Borrowers, the Lender entered into a final forbearance agreement that, amongst other things, extended the due date of the Notes to May 20, 2011. The Borrowers further acknowledge and agree that as of May 20, 2011, the Liabilities include, but are not limited to, the following:

A.J. B.

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$814,109 | $350,000 | $1,514,109 |
| Note 2 | US$ 35,000 | US$ 69,808 | | $ 104,808 |
| Total | | | | $1,618,917 |

On May 20, 2011, Lender demanded payment in full of all of the Liabilities from Borrowers and Borrowers informed Lender that they cannot satisfy the Liabilities. Borrowers acknowledge and agree that interest on Note 1 will accrue at $3,835.62 per day and interest on Note 2 shall accrue at $287.67 per day.

Assuming Borrowers make no payments until June 20, 2011, the Borrowers acknowledge and agree that the total amount due on the Notes will be as follows:

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$933,013 | $350,000 | $1,633,013 |
| Note 2 | US$ 35,000 | US$ 69,808 | | $ 104,808 |
| Total | | | | $1,737,821 |

The amounts referenced above are exclusive of interest accruing after June 20, 2011, and any costs and expenses including, but not limited to, counsel fees.

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy the Liabilities. Subject to written agreement and acceptance by Borrowers of the factual recitations, terms and conditions contained in this letter agreement, not later than June 13, 2011, Lender is willing to forbear until June 20, 2011, subject to earlier termination as provided below, from further action to collect the Liabilities:

1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS

2

A.J.B.

ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

4. In the event any other lender to Borrowers, including but not limited to First Caribbean International Bank ("FCIB"), declares a default against Borrowers or their affiliates, including but not limited to Lemon Grove Company, Ltd., Lender shall have the right to immediately terminate this Forbearance Agreement, and take ownership of all the collateral pledged to secure the Notes, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd., without further notice to Borrowers. Borrowers specifically waive any right to notice of default, further demand and notice of the disposition of the collateral.

5. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

6. No failure on the part of Lender to exercise, and no delay in exercising any rights under the Agreement or the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Agreement or the Loan Documents preclude any further exercise thereof, or the exercise or any other right. Each and every right or remedy granted under the Agreement or the Loan Documents or under any document delivered thereunder or in connection therewith or allowed by Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

Very truly yours,

_____
**Adam Bilzerian**

**AGREED TO: KEVIN HORSTWOOD**

_____
**Kevin Horstwood**

_____15_/_6_/_1_____
**Date**

3

AGREED TO: CARIBBEAN BUILDING SYSTEMS LTD.

_____          _15_/_6_/_11_
Kevin Horstwood, Manager                  Date

AGREED TO: LEMON GROVE COMPANY, LTD.

_____          _15_/_6_/_11_
Kevin Horstwood, Manager                  Date

### NOTARY ACKNOWLEDGEMENT OF THE SIGNATURES OF KEVIN HORSTWOOD, INDIVIDUALLY, AND AS MANAGER OF CARIBBEAN BUILDING SYSTEMS LTD. AND LEMON GROVE COMPANY, LTD.

I hereby certify that, on the _15th_ day of June, 2011, Kevin Horstwood appeared before me and signed his name to this document individually and as Manager of CARIBBEAN BUILDING SYSTEMS LTD. and LEMON GROVE COMPANY, LTD., and stated under oath that he was in agreement with the factual recitations, terms and conditions contained in this Letter Agreement.

_____
Notary Public



4

EXHIBIT 8

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

<u>Sent by email and Hand Delivery</u>

June 30, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan Documents"). The Notes were due on January 18, 2011. Borrowers failed to pay any or all of the Notes when they came due. At that time the Lender entered into a forbearance agreement that, amongst other things, extended the due date of the Notes to March 1, 2011. The Borrowers did not make any payment on the Notes on March 1, 2011. On April 20, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to May 20, 2011. The Borrowers did not make any payment on the Notes on May 20, 2011. On June 13, 2011, at the request of the Borrowers, the Lender entered into a final forbearance agreement that, amongst other things, extended the due date of the Notes to June 20, 2011. On June 20, 2011, the Borrowers failed to make any payment on the Notes.

This letter shall serve as demand for payment. Please deliver a cashier's check to Glenford Hamilton, "Miriam House", Five Lozack Road, Basseterre, St. Kitts not later than 11:00 AM on July 1, 2011 in the amount of One Million Seven Hundred Seventy-Nine Thousand Fifty Three

US Dollars and Ninety Cents (USD$1,779,053.90).  Your failure to make payment will result in Lender exercising his rights in accordance with the Loan Documents and the laws of St. Kitts.

PLEASE GOVERN YOURSELF ACCORDINGLY

Very truly yours,

Adam Bilzerian

EXHIBIT 9

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

July 7, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood
and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian
("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin
Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam
Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with
Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan
Documents"). All amounts due from Borrowers to Lender, whether now or in the future,
contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest,
inside and outside counsel fees, audit fees, costs, expenses and any and all other charges
provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the
"Liabilities."

This letter agreement shall confirm that the Borrowers were in default of the Notes on January
18, 2011. At that time the Lender entered into a forbearance agreement that, amongst other
things, extended the due date of the Notes to March 1, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on
March 1, 2011, and went into default again. On April 20, 2011, at the request of the Borrowers,
the Lender entered into another forbearance agreement that, amongst other things, extended the
due date of the Notes to May 20, 2011.

A3B

This letter shall further confirm that the Borrowers did not make any payment on the Notes on May 20, 2011, and went into default again. On June 13, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to June 20, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on June 20, 2011, and went into default again.

Borrowers have requested one final forbearance agreement that would extend the due date to July 20, 2011. Borrowers acknowledge and agree that the total amount due on the Notes on July 20, 2011 will be as follows:

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$1,048,082 | $350,000 | $1,748,082 |
| Note 2 | US$ 35,000 | US$ 78,438 | | $ 113,438 |
| Total | | | | $1,861,520 |

The amounts referenced above are exclusive of interest accruing after July 20, 2011, and any costs and expenses including, but not limited to, counsel fees. In the event, the Notes are repaid on July 20, 2011, the total legal fees due would be US$5,000. A cashier's check in the amount of One Million Eight Hundred Sixty-Six Thousand Five Hundred Twenty US Dollars (US$1,866,520), payable to Adam Bilzerian, must be delivered to Glenford Hamilton, Miriam House, Five Lozack Road, Basseterre, St. Kitts not later than 2:00 PM on July 20, 2011.

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy the Liabilities. Subject to written agreement and acceptance by Borrowers of the factual recitations, terms and conditions contained in this letter agreement, not later than July 8, 2011, Lender is willing to forbear until July 20, 2011, subject to earlier termination as provided below, from further action to collect the Liabilities:

1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS

2

A30

ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

4. In the event any other lender to Borrowers, including but not limited to First Caribbean International Bank ("FCIB"), declares a default against Borrowers or their affiliates, including but not limited to Lemon Grove Company, Ltd., Lender shall have the right to immediately terminate this Forbearance Agreement, and take ownership of all the collateral pledged to secure the Notes, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd., without further notice to Borrowers. Borrowers specifically waive any right to notice of default, further demand and notice of the disposition of the collateral.

5. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

6. No failure on the part of Lender to exercise, and no delay in exercising any rights under the Agreement or the Loan Documents shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right under the Agreement or the Loan Documents preclude any further exercise thereof, or the exercise or any other right. Each and every right or remedy granted under the Agreement or the Loan Documents or under any document delivered thereunder or in connection therewith or allowed by Lender in law or equity shall be deemed cumulative and may be exercised from time to time.

Very truly yours,

Adam Bilzerian

AGREED TO: KEVIN HORSTWOOD

Kevin Horstwood

Date  11/7/11

3

AGREED TO: CARIBBEAN BUILDING SYSTEMS LTD.

_____     _____
Kevin Horstwood, Manager           Date

AGREED TO: LEMON GROVE COMPANY, LTD.

_____     _____
Kevin Horstwood, Manager           Date

## NOTARY ACKNOWLEDGEMENT OF THE SIGNATURES OF KEVIN HORSTWOOD, INDIVIDUALLY, AND AS MANAGER OF CARIBBEAN BUILDING SYSTEMS LTD. AND LEMON GROVE COMPANY, LTD.

I hereby certify that, on the _11_ day of July, 2011, Kevin Horstwood appeared before me and signed his name to this document individually and as Manager of CARIBBEAN BUILDING SYSTEMS LTD. and LEMON GROVE COMPANY, LTD., and stated under oath that he was in agreement with the factual recitations, terms and conditions contained in this Letter Agreement.

_____
Notary Public

4



EXHIBIT 10

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

August 24, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan Documents"). All amounts due from Borrowers to Lender, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the "Liabilities."

This letter agreement shall confirm that the Borrowers were in default of the Notes on January 18, 2011. At that time the Lender entered into a forbearance agreement that, amongst other things, extended the due date of the Notes to March 1, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on March 1, 2011, and went into default again. On April 20, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to May 20, 2011.

1

This letter shall further confirm that the Borrowers did not make any payment on the Notes on May 20, 2011, and went into default again. On June 13, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to June 20, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on June 20, 2011, and went into default again.

This letter shall further confirm that on July 7, 2011, Borrowers requested and Lender granted one final forbearance agreement that extended the due date to July 20, 2011. This letter shall further confirm that the Borrowers did not make any payment on the Notes on July 20, 2011, and have been in default since then. Borrowers acknowledge and agree that the total amount due on the Notes as of August 22, 2011 is as follows:

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$1,170,821 | $350,000 | $1,870,821 |
| Note 2 | US$ 35,000 | US$ 87,643 | | $ 122,643 |
| Total | | | | $1,993,464 |

In addition, it is agreed that costs and counsel fees that are due in the terms of the Notes is equal to $6,536 making the total amount of the Liabilities, as of August 22, 2011, equal to Two Million Dollars ($2,000,000).

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy any portion of the Liabilities. Therefore the Borrowers and the Lender have agreed to avoid litigation and resolve the repayment of the Liabilities as follows:

1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS

2

AJB

AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS LETTER AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

4. Kevin Horstwood ("Horstwood") acknowledges that on August 22, 2011, pursuant to the Forbearance Agreement dated July 11, 2011, Lender assumed ownership of the collateral pledged to secure payment on the Liabilities, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd.

5. Kevin Horstwood ("Horstwood") agrees to resign as Manager of Caribbean Building Systems, Ltd. ("CBS"), and as Manager of Lemon Grove Company, Ltd. ("Lemon Grove"), effective August 22, 2011. Horstwood further agrees to resign as Director of CBS and as Director of Lemon Grove, effective August 22, 2011.

6. Horstwood acknowledges that he is to be removed as a signatory on the CBS and Lemon Grove bank accounts effective immediately and that he is not authorized to take any action of any kind on behalf of CBS or Lemon Grove, including communicating with the attorneys for CBS and Lemon without disclosing that he no longer represents either of them.

7. Lender agrees to release Horstwood from any further liability on the Notes. Lender also informs Horstwood that, in the event Lender decides to proceed with the development of the Caines Plantation property, and he and his affiliates are satisfied that there is sufficient equity to satisfy all the debts of Lemon Grove, including the Liabilities, and that Lender has not been required to invest any money in CBS or satisfy any liabilities of CBS, he intends to transfer CBS's interest in the Rawlins property and, possibly, the Golden Lemon Hotel to Horstwood.

8. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

Very truly yours,

Adam Bilzerian

AGREED TO KEVIN HORSTWOOD

Kevin Horstwood

Date  24/8/11

3

EXHIBIT 11

## MINUTES OF MEETING
## OF SHAREHOLDER OF
## CARIBBEAN BUILDING SYSTEMS LTD.

A meeting of the Shareholder of Caribbean Building Systems Ltd. (the "Company") was held on August 25, 2011.

There was present at the meeting Adam Bilzerian, being the sole shareholder, and Terri Steffen, Director and Secretary of the Company.

The meeting was called to order by Adam Bilzerian. It was moved, seconded and unanimously carried that Adam Bilzerian act as Chairman of the meeting and Terri Steffen act as Secretary.

Adam Bilzerian proposed that Kevin Horstwood be removed as Director and as Manager and in any other capacity. Adam Bilzerian voted in favor, so it is

RESOLVED that Kevin Horstwood is removed as Director, Manager and any other office or position he might hold for or in the Company.

Adam Bilzerian nominated Adam Bilzerian to serve as a Director, as Manager and as President of the Company. Adam Bilzerian voted in favor, so it is RESOLVED that Adam Bilzerian serve as a Director, as Manager and as President of the Company.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

Dated: August 25, 2011

Terri Steffen, Secretary of the Company

1

EXHIBIT 12

### MINUTES OF MEETING
### OF SHAREHOLDER OF
### LEMON GROVE COMPANY LTD.

A meeting of the Shareholder of Lemon Grove Company, Ltd. (the "Company") was held on August 25, 2011.

There was present at the meeting Adam Bilzerian, being the sole shareholder, and Terri Steffen, Director and Secretary of the Company.

The meeting was called to order by Adam Bilzerian. It was moved, seconded and unanimously carried that Adam Bilzerian act as Chairman of the meeting and Terri Steffen act as Secretary.

Adam Bilzerian proposed that Kevin Horstwood be removed as Director and as Manager and in any other capacity. Adam Bilzerian, as the sole shareholder, voted in favor, so it is

RESOLVED that Kevin Horstwood is removed as Director, Manager and any other office or position he might hold for or in the Company.

Adam Bilzerian nominated Adam Bilzerian to serve as a Director, as Manager and as President of the Company. Adam Bilzerian, as the sole shareholder, voted in favor, so it is RESOLVED that Adam Bilzerian serve as a Director, as Manager and as President of the Company.

There being no further business to come before the meeting, upon motion duly made, seconded and unanimously carried, the meeting was adjourned.

Dated: August 25, 2011

Terri Steffen, Secretary of the Company

1

EXHIBIT 13

# CARIBBEAN BUILDING SYSTEMS LTD

Rawlins Plantation, Mount Pleasant, St.Kitts, West Indies

Tel: 869-465-6221    Fax: 869-465-4954

F.A.O: Adam Bilzerian

Dear Mr. Bilzerian:

I am in receipt of a copy of your letter to Nigel Calvert, in which you assert that you are the President of Caribbean Building Systems Ltd., and Lemon Grove Company Ltd. (the "Companies"). Please let this letter confirm that your assertions are false, and that your further assertions in this regard to third parties may cause irreparable damage to the Companies. I hereby direct you to immediately cease and desist in your false and fraudulent representations in this regard, and to send a copy of this letter to each person to whom you have represented that you are the President of one or both of the Companies. Failure to do so may result in substantial civil and/or criminal liability. Please govern yourself accordingly.

Very truly yours,

Kevin Horstwood. C.E.O

EXHIBIT 14

# ELLIOTT MACCLURE

**Barristers-at-Law & Solicitors**
Notaries Public

Lydia V Elliott LL.B, LL.M
De Lara MacClure Taylor B.A., LL.B, M.B.A.

Your Ref:

Our Ref:

**Chambers:**
#3 Princes Street
P.O. Box 1736
Basseterre
St. Kitts
1 (869) 465-9715
1 (869) 662-4552
delarataylor@candw.lc

21 January 2010

Kevin Horstwood
Caribbean Building Systems Ltd.
Rawlins Plantation
Mount Pleasant, St. Kitts

Dear Mr. Horstwood

I understand you are contemplating borrowing the sum of US$350,000 from Adam Bilzerian, a citizen of Saint Kitts ("Bilzerian"), for the purpose of purchasing the equity in the Golden Lemon Inn & Villas (the "Lemon") from Arthur Leaman ("Leaman"). The loan is to be repaid in one year, at 100% interest, and is to be secured by the equity interest in the Lemon which you are purchasing, as well as the equity interest in the land (the "Rawlins Land") at Rawlins Plantation owned by Caribbean Building Systems, Ltd. ("CBS"). The Lemon exists in three parcels; the smallest parcel, which contains the hotel (the "Hotel"), is owned by Leaman individually. The two larger parcels are owned by an entity known as Lemon Grove Company Ltd. ("LGC"). LGC was founded by Leaman and the late Frederick Kelsick, who were 80% and 20% shareholders, respectively. I am in receipt of confirmation from Marguerite Foreman, of the solicitor firm Seaton & Foreman in St. Kitts, that the estate of the late Frederick Kelsick has conveyed its 20% shareholding in LGC to Leaman, and that Leaman is currently the 100% owner of LGC, and am fully relying upon the same.

All three parcels of the Lemon are encumbered by two mortgages (the "Lemon Mortgages") in favor of First Caribbean International Bank ("FCIB"), registered in the land registry of Saint Kitts. Those mortgages are currently in default, and a Notice to Pay Off has been served upon Leaman. In addition, one of the two parent titles for the Rawlins Land is encumbered by a bridge mortgage (the "Rawlins Mortgage") in favor of FCIB, the proceeds of which were used to pay a part of the deposit on the Lemon, which is also currently in default because it has expired, and both a Notice to Pay Off and a Seizure Notice have been served upon you. You are obligated to respond to the notices within 30 days.

-2-

21 January 2010

I am aware that Leaman has asserted various defenses to the Lemon Mortgages, because of the unsavory manner in which he alleges that the Lemon Mortgages were procured. To wit, Leaman has agreed to execute at closing an affidavit reflecting the events that he alleges surrounded that transaction, which I have reviewed. Martin Kreiner, another witness, has agreed to execute an additional supporting affidavit. While I can offer no absolute assurance regarding the ultimate result if these defenses are litigated, I assure you that the defenses which are supported by Leaman's affidavit are recognized under the laws of Saint Kitts, and relief may be granted upon those defenses under the laws of Saint Kitts. I am not aware of any defenses to the Rawlins Mortgage; nevertheless, based upon the current status of that action, CBS remains the legal owner of the Rawlins Land as of the date of this letter. I understand that you intend to leverage the defenses against the Lemon Mortgage following this acquisition, to obtain a reasonable settlement of all monies owed to FCIB.

To effectuate this transaction, you have proposed the following form. Leaman will assign the equity of redemption in the Hotel to CBS. Leaman will transfer 100% of the 8000 outstanding shares in LGC to CBS. CBS will pay Leaman the sum of US$350,000, and execute a note in favor of Leaman with two payments conditional on future events. You and CBS will jointly execute a note in favor of Bilzerian for the US$350,000, secured by the following collateral. You will grant Bilzerian a lien against all of your shares in CBS and all of the shares that CBS will acquire in LGC. CBS and Leaman will grant Bilzerian a second mortgage against the Hotel.

In order to execute the foregoing, you have given me drafts of the following documents (the "Documents"): (1) a deed of assignment of the equity of redemption in the Hotel from Arthur to CBS; (2) a bill of sale reflecting the transfer of the 8000 outstanding shares in LGC to CBS; (3) a promissory note from CBS to Leaman with two payments conditional on future events; (4) a promissory note issued jointly and severally by you and CBS, in favor of Bilzerian; (5) a stock pledge agreement granting a lien in favor of Bilzerian in the 100% interest that you own in CBS; (6) a stock pledge agreement granting a lien in favor of Bilzerian in the 100% interest that CBS will own in LGC; (7) a resolution of the shareholders of CBS agreeing to grant the lien in their interest in the CBS shares; (8) a resolution of the board of directors of CBS resolving to approve a shareholders' resolution for LGC to grant a lien in its newly acquired interest in LGC; (9) a mortgage granted by Leaman and CBS in favor of Bilzerian against the hotel; (10) the affidavits of Arthur Leaman and Martin Kreiner; and (11) the representation by Marguerite Foreman that Leaman now owns 100% of LGC.

-3-

21 January 2010

I hereby confirm and opine as follows.  The Documents are operative and enforceable to (i) convey all of Leaman's interest in the Lemon to CBS; (ii) to bind you and CBS, jointly and severally, to pay Bilzerian the sum of $700,000 after one year; and (iii) to grant Bilzerian security interests in the Hotel, 100% of the stock of LGC, and 100% of the stock of CBS.  These Documents, when executed on the lines set forth for signatures, will be duly authorized, executed, valid, binding, and enforceable.  Bilzerian's security interests in the Hotel, LGC, and CBS, will be duly granted and perfected, upon the execution of the Documents.  The US$350,000 loan from Bilzerian to you and CBS complies with the laws of Saint Christopher and Nevis, which do not set a limit on interest rates.  CBS and LGC are entities in good standing; you are the only shareholder of CBS and following the closing, CBS will be the only shareholder of LGC.  You have the appropriate alien stockholder's license, to hold your shares of CBS.  No governmental authority needs to consent to the execution, delivery, or performance of any of the Documents.  None of the Documents are in violation of any applicable laws.

Finally, I undertake that the change in shareholders for LGC and all corporate resolutions for CBS and LGC will be appropriately lodged with the Companies Registry in Saint Kitts, and that the Deed of Assignment of Equity of Redemption will be registered with the Registrar of Titles in Saint Kitts.

Very truly yours
ELLIOTT MACCLURE

DeLara MacClure Taylor
Solicitor

EXHIBIT 15

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

August 22, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood
and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian
("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin
Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam
Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with
Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan
Documents"). All amounts due from Borrowers to Lender, whether now or in the future,
contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest,
inside and outside counsel fees, audit fees, costs, expenses and any and all other charges
provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the
"Liabilities."

This letter agreement shall confirm that the Borrowers were in default of the Notes on January
18, 2011. At that time the Lender entered into a forbearance agreement that, amongst other
things, extended the due date of the Notes to March 1, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on
March 1, 2011, and went into default again. On April 20, 2011, at the request of the Borrowers,
the Lender entered into another forbearance agreement that, amongst other things, extended the
due date of the Notes to May 20, 2011.

1

This letter shall further confirm that the Borrowers did not make any payment on the Notes on May 20, 2011, and went into default again. On June 13, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to June 20, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on June 20, 2011, and went into default again.

This letter shall further confirm that on July 7, 2011, Borrowers requested and Lender granted one final forbearance agreement that extended the due date to July 20, 2011. This letter shall further confirm that the Borrowers did not make any payment on the Notes on July 20, 2011, and have been in default since then. Borrowers acknowledge and agree that the total amount due on the Notes as of August 22, 2011 is as follows:

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$1,170,821 | $350,000 | $1,870,821 |
| Note 2 | US$ 35,000 | US$ 87,643 | | $ 122,643 |
| Total | | | | $1,993,464 |

In addition, it is agreed that costs and counsel fees that are due in the terms of the Notes is equal to $6,536 making the total amount of the Liabilities, as of August 22, 2011, equal to Two Million Dollars ($2,000,000).

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy any portion of the Liabilities. Therefore the Borrowers and the Lender have agreed to avoid litigation and resolve the repayment of the Liabilities as follows:

1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS

2

AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

4. Borrowers acknowledge and agree that, immediately following the execution of this Letter Agreement, Lender will take ownership of the collateral pledged to secure the Notes, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd. Borrowers acknowledge that they have specifically waived any right to notice of default, further demand and notice of the disposition of the collateral and any other rights that they might have with respect to the collateral.

5. Lender agrees to retain Kevin Horstwood ("Horstwood") as one of two Managers of Caribbean Building Systems, Ltd. ("CBS"), and one of two Managers of Lemon Grove Company, Ltd. ("Lemon Grove"), on a day to day basis, without compensation, in order to help him maintain his reputation in the St. Kitts community and to help him maintain the business and value of the Rawlins Hotel which he owns individually. Horstwood agrees that he can be terminated as Manager of CBS and Lemon Grove without prior notice. Horstwood further agrees that he will take no action that will create any contractual, financial or legal obligation for either CBS or Lemon Grove without the express written permission of Adam Bilzerian who will serve as a Manager and Director of CBS and Lemon Grove in addition to being sole shareholder of CBS and Lemon Grove. Horstwood further agrees to resign as Director of CBS and as a Director of Lemon Grove, effective immediately.

6. Lender agrees to allow Horstwood to remain as a signatory on the CBS and Lemon Grove bank accounts on a day to day basis. However, Lender intends to add other signatories to the bank accounts and has the right to remove Horstwood as a signatory at any time.

3

7. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

Very truly yours,

_____
Adam Bilzerian

AGREED TO: KEVIN HORSTWOOD

Kevin Horstwood

Date  21/8/11

AGREED TO: CARIBBEAN BUILDING SYSTEMS LTD.

Kevin Horstwood, Manager

Date  21/8/11

AGREED TO: LEMON GROVE COMPANY, LTD.

Kevin Horstwood, Manager

Date  21/8/11

4