## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

SECURITIES EXCHANGE COMMISSION    )
                                  )    1:89-cv-1854-RCL
      Plaintiff,                )
                                  )
v.                                )
                                  )
PAUL A. BILZERIAN,                )
                                  )
      Defendant.                )
                                  )

### INTERVENOR ADAM BILZERIAN'S 1) RESPONSE IN OPPOSITION TO KEVIN HORSTWOOD'S VERIFIED MOTION TO ENFORCE COURT ORDER AND FOR INITIATION OF CRIMINAL CONTEMPT PROCEEDINGS FOR NONCOMPLIANCE (DKT 1259), AND 2) REQUEST FOR RELIEF FROM COURT ORDER ENTERED ON 1/24/25 (DKT 1257)

Comes Now, Intervenor Adam Bilzerian, by and through his undersigned counsel David Z. Chesnoff, Esq., Richard A. Schonfeld, Esq., and G. Allen Dale, Esq., and hereby files his Response in Opposition to Kevin Horstwood's Verified Motion to Enforce Court Order and for Initiation of Criminal Contempt Proceedings for Noncompliance (Dkt 1259) and Adam Bilzerian's Request for Relief from Court Order Entered on 1/24/25 (Dkt 1257).

This pleading is made and based upon the papers and pleadings on file herein, the attached Memorandum of Points and Authorities, the Exhibits submitted herewith, and any

argument that is heard.

Dated this 25th day of February, 2025.

RESPECTFULLY SUBMITTED:

_____/s/ G. Allen Dale_____
G. Allen Dale (D.C. Bar No. 954337)
Law Offices of G. Allen Dale, PLLC
555 13th Street NW Suite 500 West
Washington, DC 20004
Telephone: 202-638-2900
Fax: 202-628-4177

CHESNOFF & SCHONFELD

_____/s/ Richard A. Schonfeld, Esq._
David Z. Chesnoff, Esq,
Appearing pro hac vice
Richard A. Schonfeld, Esq.
Appearing pro hac vice
520 S. 4th Street
Las Vegas, Nevada 89101
Telephone: 702-384-5563
Fax: 702-598-1425

Attorneys for Intervenor
Adam Bilzerian

## **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.      Relevant Procedural History . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B.      Improper Use of Settlement Communications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

C       Due Process and Procedural Flaws . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      I.      Proceedings for Civil Contempt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      II.     Proceedings for Criminal Contempt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      III.    Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

D.      Substantive Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      I.      Adam Bilzerian Has Neither the Legal Ability Nor the Right to Terminate the St. Kitts Lawsuits, as Ordered on Pain of Contempt . . . . . . . . . . . . . . . . . . . . . . . . . 9

E.      Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF AUTHORITIES

**CASES**

*Armstrong v. Exec. Off. of the President, Off. of Admin.*,
1 F.3d 1274, 1289 (D.C. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bessette v. W. B. Conkey Co.*,
194 U.S. 324, 328 (1904) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Bloom v. Illinois,*
391 U.S. 194, 201 (1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Blu-J, Inc. v. Kemper C.P.A Grp.*,
916 F.2d 637, 642 (11th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Cal. Artificial Stone Paving Co. v. Molitor,*
113 U.S. 609 (1885) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Combs v. Ryan's Coal Co.*,
785 F.2d 970, 983 (11th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Eash v. Riggins Trucking Inc.*,
757 F.2d 557, 571 (3rd Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Harris v. City of Philadelphia*, 47 F.3d 1311, 1322 (3d Cir.1995). . . . . . . . . . . . . . . . . . . 8

*In re Brown,*
454 F.2d 999, 1006 (D.C. Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Grand Jury Proceedings,*
795 F.2d 226, 234 (1st Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*In re Kwok,*
662 B.R. 421, 426 (Bankr. D. Conn. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Inova Health Care Servs. for Inova Fairfax Hosp. & Its Dep't, Life With Cancer v. Omni Shoreham Corp.*,
No. CV 20-784 (JDB), 2024 WL 5158796. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Int'l Union, United Mine Workers of Am. v. Bagwell,*
512 U.S. 821, 827 (1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ii

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*,
2009 WL 3190962, at *4 (S.D. Fla. Sept. 15, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*,
2009 WL 10697338 (S.D. Fla. Sept. 30, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Max's Seafood Café ex rel Lou–Ann, Inc., v. Quinteros*,
No. 90–CV2137, 1997 U.S. Dist. LEXIS 23597, at *30 n. 2 (D.N.J. Dec. 18, 1997) . . . . . . . . . 8

*National Labor Relations Board v. Triple A Fire Protection, Inc.*,
No. 00–MC–15–M, 2003 WL 23207692, * 10 (S.D.Ala. March 26, 2003). . . . . . . . . . . . . . . . . 11

*Nat. Res. Def. Council, Inc. v. Train*,
510 F.2d 692, 713 (D.C. Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Newton v. A.C. & S., Inc.*,
918 F.2d 1121, 1127 (3d Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*NLRB v. Blevins Popcorn Co.*,
659 F.2d 1173, 1184 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Potter v. D.C.*,
126 F.4th 720, 723 (D.C. Cir. 2025). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Roe v. Operation Rescue*,
920 F.2d 213, 217 (3d Cir.1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Sealed Case*,
77 F.4th 815, 834 (D.C. Cir. 2023). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*SEC v. Bankers Alliance Corp.*,
881 F.Supp. 673, 678 (D.D.C.1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*SEC v. Ormont Drug & Chem. Co.*,
739 F.2d 654, 656 (D.C.Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Shillitani v. United States*,
384 U.S. 364, 371, 86 S.Ct. 1531 (1966) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Taggart v. Lorenzen ex rel. Brown*,
139 S. Ct. 1795, 1801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Concord Mgmt. & Consulting LLC,*
No. 18-CR-32-2 (DLF), 2019 WL 7758635, at *5 (D.D.C. July 1, 2019) . . . . . . . . . . . . . . . . 6-7

*United States v. Microsoft Corp.,*
147 F.3d 935, 940 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Rizzo,*
539 F.2d 458, 465 (5th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Rylander,*
460 U.S. 752, 757 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*United States v. Wendy,*
575 F.2d 1025,1030 (2d Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-12

*Young v. United States ex rel. Vuitton et Fils S.A.,*
481 U.S. 787, 793–801 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## RULES / STATUTES

Fed. R. Crim. P. 42(a)(1)(A)–(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Crim. P. 42(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Federal Rules of Evidence (FRE) 408 Subsection (a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

## PUBLICATIONS

C. Wright, Federal Practice and Procedures 704, at 160 & n. 63 (1969) . . . . . . . . . . . . . . . . . . 11

E. Dangel *Contempt* § 178 (1939) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

### A.    Relevant Procedural History:

Adam Bilzerian ("Adam") filed a Motion to Intervene in this matter on May 4, 2001[1].

(Dkt 263).  That Motion was granted on May 17, 2001.  (Dkt 289).  The relief that Adam was

requesting was ultimately denied on May 4, 2001.  (Dkt 304).  On November 13, 2001, Adam's

counsel filed a Motion to Withdraw.  (Dkt 547).  That Motion was granted on August 23, 2002[2].

(Dkt 700).  Thereafter, Adam has had *no* further involvement in this litigation.

On July 26, 2023, Kevin Horstwood ("Horstwood") filed a Motion for Order to Show

Cause.  (Dkt 1248). On September 20, 2024, the Court entered an Order requiring Paul Bilzerian

("Paul") to Show Cause why he should not be held in contempt for violating the Court's Order

dated July 19, 2001. (Dkt 1251).

In entering that Order the Court noted:

The only fact that matters to the Court's determination of whether Mr. Bilzerian is
in contempt is whether he did or not do that which the Order forbids: instigating
litigation without leave of this Court. Mr. Bilzerian, therefore, only needs to
respond to Mr. Horstwood's detailed and facially plausible allegations that Mr.
Bilzerian commenced or caused the commencement of legal proceedings without
leave of this Court. This is hardly too heavy a burden[3].

---

[1]Adam had just turned 18 at the time of the filing.

[2]
This is significant, as Adam has had no involvement in this litigation since August of
2002, a time when he was only 19 years old.

[3]
We note that, on the one hand, the Court found that Paul was responsible for the St. Kitts
litigation and was not permitted to initiate that litigation without the Court's approval; on
the other hand, the Court has ordered non-party Adam to *take* action that, as shown
below, he cannot *legally* take.

1

On January 24, 2025, the Court entered a Memorandum Opinion related to Horstwood's

Motion for Order to Show Cause. (Dkt 1256). The Court noted the following related to Adam:

- Horstwood alleges that Bilzerian (Paul), operating under the guise of his son Adam and various corporate entities, has violated the injunction by instigating legal proceedings against Horstwood in the Eastern Caribbean Supreme Court, which has jurisdiction over St. Kitts & Nevis. (P. 1);

- Emails submitted by Horstwood, taken as a whole, corroborate Horstwood's claims that Paul, rather than his son Adam, played the leading role in the financial dealings at the core of the St. Kitts litigation. (Fn 2 at P. 5);

- Horstwood has shown by clear and convincing evidence that Bilzerian (Paul) has caused the commencement of legal proceedings. Horstwood's exhibits clearly demonstrate the existence of three separate legal proceedings in which Adam, Horstwood's companies, or both are the nominal claimants. However, Adam's footprint is virtually absent from all of these lawsuits. (P. 27);

- Though the many documents that Horstwood signed nominally show Adam as his counterparty, the voluminous body of email exchanges between Paul and Horstwood show that it was Paul who was truly behind these business machinations all along. (P. 28);

- It is clear that he (Paul) was in complete control of each lawsuit, formally or informally, from the very beginning. (P. 28);

- That Adam served mostly as a front for Paul, who remains the real party in interest up to the present day, is further demonstrated by a November 5, 2024 filing in the consolidated 2011 and 2016 suits requesting the substitution of Bilzerian's firm, IIL, for Adam as the claimant. *See* Notice of Filing Foreign Court Documents 3, ECF No. 1255. That document notes that Adam assigned his interests in the matter to IIL. Recall that the loan Horstwood received was *initially* from IIL, before Horstwood signed a set of replacement loan documents identifying Adam as the lender. *See* Loan Documents, Mot. for Order to Show Cause ex. KAH E-12, at 614. Thus, the loan at issue in the St. Kitts litigation originated with Bilzerian's company, was transferred to Adam, and has now been transferred back again. (Fn 19 P. 28);

- Adam himself evidently had *no say* in the matter (amending the 2017 lawsuit) because Paul was acting pursuant to his power of attorney. (Fn 20 P. 29).

The Court ultimately concluded:

> In summary, the Court finds by clear and convincing evidence that, both by causing the commencement of new legal actions on behalf of his son and his companies, and by pursuing appeals of adverse judgments arising from those suits, all without leave of this Court, Bilzerian violated the terms of the 2001 injunction.

*Id.* at 31.

Based on the foregoing, the Court ordered Paul, "as well as his attorneys and associates (to include Adam Bilzerian, IIL, IIG and any other firm that Bilzerian purports either to own or serve as director) to dismiss all pending lawsuits against Horstwood in St. Kitts and in any other domestic or foreign forum."

The Court further ordered Paul "to provide a copy of the accompanying order to Adam Bilzerian, Dan Bilzerian, and his associates and attorneys, so that they may be made aware that the 2001 injunction continues to have force outside the territorial limits of the United States." *Id.* at 32.

The Order (entered at Dkt 1257) found, that Paul was in civil contempt for violating the Court's July 19, 2001 Order.

Critically, we note that not only 1) was Adam not part of the proceedings related to Horstwood's Motion for an Order to Show Cause, but, further 2) that the Order to Show Cause was *not* issued against Adam. Accordingly, as discussed below, Horstwood's effort to now hold Adam in criminal contempt is procedurally (and, fatally) flawed. The bottom line, therefore, is that, given this unassailable chronology Adam should not be compelled to take action related to the St. Kitts litigation.

**B.      Improper Use of Settlement Communications:**

As it relates to Adam, Horstwood's Motion rests in large part upon settlement

communications, which are inadmissible under Federal Rules of Evidence (FRE) 408.

Subsection (a)(2) of that rule thus provides:

> Prohibited Uses. Evidence of the following is not admissible — on behalf of any
> party — either to prove or disprove the validity or amount of a disputed claim or to
> impeach by a prior inconsistent statement or a contradiction:
> (2) conduct or a statement made during compromise negotiations about the claim
> — except when offered in a criminal case and when the negotiations related to a
> claim by a public office in the exercise of its regulatory, investigative, or
> enforcement authority.

This Rule applies squarely to the instant case.  While Adam engaged in efforts to resolve

this claim, he maintained unambiguously that he would be subject to potential civil liability if he

were to discontinue the St. Kitts action.  Specifically, the proposed Release, which Horstwood

included as Exhibit KAH 5, stated:

> Adam Bilzerian is not a party to case number 1:89-01854-RCL and was not provided
> notice and an opportunity to be heard prior to the above stated Order being entered.
> Accordingly, Adam Bilzerian could seek relief from the above stated Court Order.
> Moreover, Adam Bilzerian could be subject to claims by people or entities other than
> Horstwood and his companies for discontinuing the St. Kitts lawsuits referenced in
> the above stated Court Order[4].

It is therefore clear that the claim was disputed and that the communications between

Adam's counsel and Horstwood fall within the parameters of FRE 408, which prohibits their use

---

[4]The proposed release that Adam considered, as presented to Horstwood, would have
placed Adam in breach of the Agreement with IIL, but would have provided Adam a release from
Horstwood.  It would have resulted in one potential lawsuit against Adam as opposed to two had
Adam terminated current St. Kitts counsel, appeared pro se, and breached the Agreement by
filing a discontinuance (which is what Horstwood is asserting Adam is required to do).

in Horstwood's effort to seek contempt sanctions[5].

This Court has recognized that one of the purposes of FRE 408 is to foster and encourage settlements and compromises. *See, e.g. Inova Health Care Servs. for Inova Fairfax Hosp. & Its Dep't, Life With Cancer v. Omni Shoreham Corp.*, No. CV 20-784 (JDB), 2024 WL 5158796, at *10 (D.D.C. Dec. 18, 2024). The *Inova* court further noted that the test for whether something falls within Rule 408 is "whether the statements ... were intended to be part of the negotiations toward compromise". *Id.* (citing, *Blu-J, Inc. v. Kemper C.P.A Grp.*, 916 F.2d 637, 642 (11th Cir. 1990) (applying the *Ramada* test to hold an independent evaluation was inadmissible under the rule because it was "intended to be part of negotiations toward compromise," even though one party contended there "was no offer on the table")).

**C.    Due Process and Procedural Flaws:**

**I.    Proceedings for Civil Contempt:**

Civil contempt serves "to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled." *Potter v. D.C.*, 126 F.4th 720, 723 (D.C. Cir. 2025) citing *Bessette v. W. B. Conkey Co.*, 194 U.S. 324, 328 (1904) and Edward Dangel, *Contempt* § 178 (1939) ("[T]he [civil] contemnor is not really in contempt of the court; he is in contempt of the party for whose benefit the court order was made."). When assessing a civil contempt motion, a court must ordinarily determine whether the moving party has met his burden of showing "by clear and convincing evidence" that the alleged contemnor has violated a "clear and unambiguous" order of the court. *Armstrong v. Exec. Off. of the President, Off. of Admin.*, 1

---

[5]Horstwood presents an email from his counsel as an exhibit. See, KAH 4. While double hearsay it reflects that Horstwood's counsel was involved in the settlement discussions.

F.3d 1274, 1289 (D.C. Cir. 1993). The party moving for civil contempt "faces a heavy burden."

*United States v. Microsoft Corp.*, 147 F.3d 935, 940 (D.C. Cir. 1998). Even when a party singled

out for contempt sanctions has violated an injunction, contempt may be avoided if a recognized

defense applies. For example, impossibility of performance is a recognized defense. *See Nat. Res.*

*Def. Council, Inc. v. Train*, 510 F.2d 692, 713 (D.C. Cir. 1975) ("It would be unreasonable and

unjust to hold in contempt a defendant who demonstrated that he was powerless to comply.").

Here, on July 19, 2001, on the day when the Injunction was entered (at Dkt 416), Adam

was less than four months past his 18th birthday.  Moreover, the Order was not even directed to

Adam. Despite these facts, and without having sought an Order to Show Cause regarding civil

contempt against Adam, where he would be afforded an opportunity to be heard as well as an

opportunity to purge any potential civil contempt, Horstwood has tried to bypass those

procedural safeguards and request criminal contempt against Adam.

A civil contempt proceeding requires: "(1) issuance of an order; (2) following

disobedience of that order, issuance of a conditional order finding the recalcitrant party in

contempt and threatening to impose a specified penalty unless the recalcitrant party purges itself

of contempt by complying with prescribed purgation conditions; and (3) exaction of the

threatened penalty if the purgation conditions are not fulfilled." *NLRB v. Blevins Popcorn Co.*,

659 F.2d 1173, 1184 (D.C. Cir. 1981).  *In re Sealed Case*, 77 F.4th 815, 834 (D.C. Cir. 2023).

Because none of those steps were provided to Adam, contempt proceedings cannot

equitably proceed.

## II.    Proceedings for Criminal Contempt:

"Criminal contempt is a crime in the ordinary sense[.]" *Bloom v. Illinois*, 391 U.S. 194,

201 (1968). Given that, the initiation of criminal contempt proceedings is a serious step that

should not be undertaken lightly. *See e.g.*, *United States v. Concord Mgmt. & Consulting LLC*,

No. 18-CR-32-2 (DLF), 2019 WL 7758635, at *5 (D.D.C. July 1, 2019).  Under Federal Rule of

Criminal Procedure 42(a), the court must provide the defendant faced with criminal contempt

with formal notice that "state[s] the time and place of the trial," "allow[s] the defendant a

reasonable time to prepare a defense," and "state[s] the essential facts constituting the charged

criminal contempt." Fed. R. Crim. P. 42(a)(1)(A)–(c). In addition, the court must appoint an

attorney to prosecute the contempt. *Id.* 42(a)(2). Ordinarily, courts refer contempt charges to the

Department of Justice for prosecution.   At the contempt proceedings themselves, a host of

constitutional rights and protections attach; thus, as in any criminal case, the defendant enjoys the

right to a jury trial (if the charge is sufficiently "serious"), the privilege against

self-incrimination, the right to proof beyond a reasonable doubt, the right to assistance of

counsel, the right to present a defense, and double jeopardy protection. *See, e.g.*

*Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

Given the significance of criminal contempt proceedings, they should be initiated only as

a last resort. "While a court has the authority to initiate a prosecution for criminal contempt, its

exercise of that authority must be restrained by the principle that only the least possible power

adequate to the end proposed should be used in contempt cases." *Young v. United States ex rel.*

*Vuitton et Fils S.A.*, 481 U.S. 787, 793–801 (1987) (alteration adopted and internal quotation

marks omitted); *see also In re Brown*, 454 F.2d 999, 1006 (D.C. Cir. 1971) (highlighting a "long

standing congressional will to restrict the federal courts to the least possible criminal contempt

power adequate to the end proposed" (alteration adopted and internal quotation marks omitted)).

### III.    Due Process:

"Due process requires that a potential contemnor be given notice and a hearing regardless of whether the contempt is civil or criminal in nature." *Newton v. A.C. & S., Inc.*, 918 F.2d 1121, 1127 (3d Cir.1990) (citing *In re Grand Jury Proceedings*, 795 F.2d 226, 234 (1st Cir.1986)); *Harris v. City of Philadelphia*, 47 F.3d 1311, 1322 (3d Cir.1995) (noting that before a district court may issue a finding of contempt for failure to obey a court order, "it is appropriate to give notice by an order to show cause and to hold a hearing"); *Roe v. Operation Rescue*, 920 F.2d 213, 217 (3d Cir.1990) (noting that due process requires, before imposition of a finding of civil contempt, "an opportunity granted at a meaningful time and in a meaningful manner for a hearing appropriate to the nature of the case."); *see also Max's Seafood Café ex rel Lou–Ann, Inc., v. Quinteros*, No. 90–CV2137, 1997 U.S. Dist. LEXIS 23597, at *30 n. 2 (D.N.J. Dec. 18, 1997) (refusing to issue finding of contempt against non-party because non-party only appeared as a witness and was not represented by counsel at the hearing), *rev'd* on other grounds, 176 F.3d 669. "These customary procedural safeguards ensure that the parties or their attorneys have an opportunity to explain the conduct deemed deficient before the fine is imposed and that a record will be available to facilitate appellate review." *Newton*, 918 F.2d at 1127 (citing *Eash v. Riggins Trucking Inc.*, 757 F.2d 557, 571 (3rd Cir.1985) (en banc)).

Here, as shown above, Adam has had no involvement in this litigation for over 20 years; indeed, he was not even represented by counsel in this litigation for that same time frame. Moreover, the Order to Show Cause issued in this case was directed to Paul, and *not* Adam. Incredulously, with Adam not having had the opportunity to be heard, Horstwood has rushed to initiate criminal contempt proceedings against him.

Adam is first entitled to due process and in the event that this Honorable Court finds that Adam is required to discontinue the St. Kitts litigation, which he is not legally able to do as a result of the details provided below, then Adam should be given an opportunity to do so (and face the legal consequences in another judicial forum)[6] prior to any contempt proceedings taking place.

**D.      Substantive Defense:**

**I.      Adam Bilzerian Has Neither the Legal Ability Nor the Right to Terminate the St. Kitts Lawsuits, as Ordered on Pain of Contempt:**

By way of a Purchase Agreement ("Agreement") between International Investments and Adam, dated March 26, 2023, Adam transferred all of his interest in the St. Kitts litigation to International Investments Ltd. ("IIL"). *See*, Exhibit A.  That Agreement was entered into *prior* to Horstwood seeking an Order to Show Cause in this case.  The language in the Agreement (at Article III) states: "On or immediately after the Closing, II agrees to substitute itself for AB in all pending litigation involving Horstwood, Lemon Grove, CBS, and the Condo, including, but not limited to, the Horstwood Claims..."

On November 14, 2024, prior to the Order to Show Cause being entered in this matter, a Notice of Application for Substitution of Parties was submitted in the St. Kitts litigation[7].  *See*,

---

[6]

As described below, if Adam files a request to discontinue the St. Kitts litigation he will not only be subject to potential civil liability, but he will also be acting without legal authority.

[7]

It should be noted that an Affidavit in Support of Application for Substitution of Parties was executed by Adam on May 18, 2023.  This was also prior to Mr. Horstwood seeking the Order to Show Cause.  Mr. Horstwood notes at fn2 in his Motion (Dkt 1259) that the original application to substitute parties was granted by the Court, but then reversed on appeal.  He further notes that the new application is set for hearing on February 27, 2025.

Exhibit B.

As a result of the foregoing, Adam cannot discontinue the St. Kitts litigation without being in breach of the Agreement.  But on the other hand, as a result of the Agreement, Adam does not have the legal authority to discontinue the action.  Adam is thus faced with a choice that is, in essence, impossible.

This position is consistent with the Court's finding in the January 24, 2025, Memorandum Opinion acknowledging that there was:

> ...[A] November 5, 2024 filing in the consolidated 2011 and 2016 suits requesting the substitution of Bilzerian's firm, IIL, for Adam Bilzerian as the claimant. *See* Notice of Filing Foreign Court Documents 3, ECF No. 1255. The document notes that Adam Bilzerian assigned his interests in the matter to IIL.

In the event that the court in St. Kitts rejects the pending Application to Substitute, then this analysis can certainly be revisited.  At the present, however, with that Application pending and with a hearing scheduled for this week, it is respectfully submitted that Adam faces a legal inability to comply with the Court's January 24, 2025, Order.

In a civil contempt proceeding a present inability to comply with the order in question is a defense.  *See, e.g., United States v. Rylander*, 460 U.S. 752, 757 (1983);  *see also, SEC v. Ormont Drug & Chem. Co.*, 739 F.2d 654, 656 (D.C.Cir.1984); *SEC v. Bankers Alliance Corp.*, 881 F.Supp. 673, 678 (D.D.C.1995).  The *Rylander* Court's principles—which rest upon well settled principles of fundamental fairness—have been applied in situations similar to those faced by Adam: that is, where a potential contemnor faces a "Hobson's choice" between what is impossible (on the one had) and what is unlawful (on the other).  *See, e.g.*, *Combs v. Ryan's Coal Co.*, 785 F.2d 970, 983 (11th Cir. 1986) ("[I]t is improper to impose contempt sanctions *of any*

10

*sort* if the alleged contemnor is not able to satisfy the court's directives.") (citing *Rylander*, 460 U.S. at 757) (emphasis added); *see also Combs*, 785 F.2d at 984 (holding that potential contemnor's "burden is satisfied by making 'in good faith all *reasonable efforts* to comply.'") (quoting *United States v. Rizzo*, 539 F.2d 458, 465 (5th Cir. 1976) (emphasis added)); *Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.*, 2009 WL 3190962, at *4 (S.D. Fla. Sept. 15, 2009), *adopted sub nom. Liberty Mut. Ins. Co. v. Aventura Eng'g & Constr. Corp.*, 2009 WL 10697338 (S.D. Fla. Sept. 30, 2009) ("Mr. Lopez is not required to bankrupt himself in order to show that the he has made all reasonable efforts to comply with the Court Order. *See National Labor Relations Board v. Triple A Fire Protection, Inc.*, No. 00–MC–15–M, 2003 WL 23207692, * 10 (S.D.Ala. March 26, 2003) (company not in contempt for failure to comply with court order when compliance would result in insolvency)).

    These principles control the present case. Here, Adam could, technically, cause Derriann Charles (counsel in the St. Kitts case) to be terminated so that he (Adam) could then file a *pro se* request to discontinue the action; however, as shown above, such "compliance" would violate the Agreement, and almost certainly, result in Adam facing legal action as a result.

    This, then, is the Hobson choice that the Second Circuit expressly condemned as a basis for contempt in *United States v. Wendy*, 575 F.2d 1025 (2d Cir. 1978). In *Wendy*, a tax lawyer was held in contempt for refusing to proceed to trial in a criminal case when lead counsel was unavailable. The Second Circuit reversed the contempt noting:

> A long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order. See *Shillitani v. United States*, 384 U.S. 364, 371, 86 S.Ct. 1531 (1966); 3 C. Wright, Federal Practice and Procedures 704, at 160 & n. 63 (1969). Technically speaking, Wendy may have had the ability to comply with the court's order in that, as a member of the bar, he was legally

authorized to try cases. *But realistically, Wendy was incapable of compliance.* It is uncontroverted that at the time of the contempt citations, Wendy's expertise was in the area of tax and accounting. He had never before tried a case, civil or criminal, state or federal. He was hardly qualified, therefore, to try a felony tax carrying a potential five-year prison term. The client, whose liberty was at stake, certainly did not want Wendy to try the case. *To be ordered either to try a case which he was obviously unqualified to do or to be held in contempt was thus a Hobson's choice.*

*Id*. at 1030-31 (emphasis added); *see also In re Kwok, 662* B.R. 421, 426 (Bankr. D. Conn. 2023) ("'A long recognized defense to a civil contempt citation is the cited individual's inability to comply with the court's order.") *United States v. Wendy*, 575 F.2d 1025, 1030 (2d Cir. 1978). Contempt "'should not be resorted to where there is [a] fair ground of doubt as to the wrongfulness of the defendant's conduct.'" *Taggart v. Lorenzen ex rel. Brown*, 139 S. Ct. 1795, 1801 (full cite provided), citing *Cal. Artificial Stone Paving Co. v. Molitor*, 113 U.S. 609 (1885)).

These principles mandate the same result here. "Realistically" (to borrow the *Wendy* Court's adverb), Adam should not be faced with the choice of either: 1) contempt in this case, or 2) finding himself branded as a defendant in a new civil case in St. Kitts (or elsewhere), facing legal liability and damages as a result of breaching the Agreement.

In sum, Adam an 18 years old when he had his limited involvement in this case, should not be forced to suffer for the "sins of his father."

**E.**     **Conclusion:**

For the foregoing reasons, Adam should *not* be held in contempt and should be relieved

from *any* obligations under the January 24, 2025, Order related to the St. Kitts litigation.

Dated this 25th day of February, 2025.

RESPECTFULLY SUBMITTED:

_____/s/ G. Allen Dale_____
G. Allen Dale (D.C. Bar No. 954337)
Law Offices of G. Allen Dale, PLLC
555 13th Street NW Suite 500 West
Washington, DC 20004
Telephone: 202-638-2900
Fax: 202-628-4177

CHESNOFF & SCHONFELD

_____/s/ Richard A. Schonfeld, Esq._
David Z. Chesnoff, Esq,
Appearing pro hac vice
Richard A. Schonfeld, Esq.
Appearing pro hac vice
520 S. 4th Street
Las Vegas, Nevada 89101
Telephone: 702-384-5563
Fax: 702-598-1425

Attorneys for Intervenor
Adam Bilzerian

## DECLARATION OF RICHARD A. SCHONFELD

I, Richard A. Schonfeld, declare under penalty of perjury under the laws of the United

States of America that the following is true and correct:

1.    Exhibit A submitted herewith on information and belief is a true and correct copy of the
      Agreement entered into between Adam Bilzerian and International Investments, Ltd.;

2.    Exhibit B submitted herewith on information and belief is a true and correct copy of the
      filings lodged in the St. Kitts Court related to substitution of International Investments
      Limited in place of Adam Bilzerian.

Dated this 25th day of February, 2025.

Richard A. Schonfeld, Esq.

14

## CERTIFICATE OF SERVICE

The undersigned certifies that a true and correct copy of the foregoing was served on all those registered for service using the CM/ECF system on this 25th day of February, 2025.

In addition, a courtesy copy was sent by mail and email on this 25th day of February, 2025, as follows:

Paul A. Bilzerian
P.O. Box 2086
Basseterre, St. Kitts
pabilzeria@aol.com

Michael J. Roessner, Esq.,
Securities Exchange Commission
100 F. Street NE
Mail Stop 5631
Washington DC 20549
RoessnerM@sec.gov


Kevin Horstwood
Haven House
Grand Mal, St Georges, Grenada, W.I.
kevinhorstwood@yahoo.co.uk

Dated this 25th day of February, 2025.

_____/s/ Rosemary Reyes_____
Employee of the Law Offices of Chesnoff &
Schonfeld

# EXHIBIT
# A

## AGREEMENT

THIS AGREEMENT ("Agreement") is made and entered into as of March 26, 2023 ("Effective Date"), by and between **ADAM BILZERIAN**, a citizen of St. Kitts, (hereinafter "AB"), and **INTERNATIONAL INVESTMENTS, LTD**, a St. Kitts company (hereinafter "II"), with its registered office address at 858 Zenway Blvd., Frigate Bay, St. Kitts.

WHEREAS, AB is the sole owner of Lemon Grove Company, Ltd., ("Lemon Grove"), a company incorporated under the Companies Act 1996 (No. 22 of 1996) of the Federation of St. Christopher and Nevis; and

WHEREAS, AB is the sole owner of Caribbean Building Systems (St Kitts), Ltd., ("CBS"), a company incorporated under the Companies Act 1996 (No. 22 of 1996) of the Federation of St. Christopher and Nevis; and

WHEREAS, AB is the sole owner of the condominium known at 631 St. Christopher Club, Frigate Bay, St. Kitts ("Condo"); and

WHEREAS, II is the holder and beneficial owner of that certain Promissory Note ("Note"), dated June 17, 2016, from The Everett Corporation, a Minnesota company, in the principal amount of Eight Hundred Eighty Thousand Three Hundred Ten United States dollars ($880,310); and

WHEREAS, AB wishes to exchange his entire interest in Lemon Grove, CBS, and the Condo for II's entire interest in the Note on the terms and conditions set forth herein.

NOW, THEREFORE, the Parties agree as follows:

### ARTICLE I: THE ASSETS TO BE EXCHANGED

1.01. AB acquired 100% of the shares of Lemon Grove on August 24, 2011 from Kevin Horstwood ("Horstwood"). A copy of the agreement is attached hereto as Exhibit 1. AB's ownership of Lemon Grove has been subject to litigation since AB filed a claim against Horstwood in the High Court of Justice, in the Federation of St. Chrisopher and Nevis, St. Christopher Circuit, on November 2, 2011, a case styled *Adam Bilzerian vs Kevin Horstwood*, Claim number SKBHCV2011/0320 ("Horstwood Claim 1"). A second claim was filed by AB against Horstwood in the High Court of Justice, in the Federation of St. Chrisopher and Nevis, St. Christopher Circuit, on October 24, 2016, a case styled *Adam Bilzerian vs Kevin Horstwood*, Claim number SKBHCV2016/0311 ("Horstwood Claim 2" and collectively Horstwood Claim 1 and Horstwood Claim 2 are referred to as "The Horstwood Claims").

1.02. AB acquired 100% of the shares of CBS on August 24, 2011 from Horstwood. AB's ownership of CBS is subject to litigation in The Horstwood Claims.

1.03. AB purchased the Condo on April 24, 2006, and obtained title to the Condo on March 21, 2007, a copy of which is attached hereto as Exhibit 2. Litigation over

whether a mortgage should be recorded against the Condo has been ongoing since April 20, 2012, in a case filed in the High Court of Justice, in the Federation of St. Chrisopher and Nevis, St. Christopher Circuit, styled *Gerald Lou Weiner and Kathleen Ann Weiner vs Adam J Bilzerian*, Claim number SKBHCV2012/0154 ("Weiner Claim").

1.04. II is the holder and beneficial owner of that certain Promissory Note ("Note"), dated June 17, 2016, from The Everett Corporation, a Minnesota company, in the principal amount of Eight Hundred Eighty Thousand Three Hundred Ten United States dollars ($880,310).

## ARTICLE II: THE EXCHANGE OF ASSETS

2.01. AB agrees to transfer all of his interest in Lemon Grove, CBS and the Condo to II. AB agrees to execute whatever documents are necessary to effectuate the transfers.

2.02. II agrees to transfer all of its interest in The Note to AB. II agrees to execute whatever documents are necessary to effectuate the transfer.

## ARTICLE III: EXISTING LITIGATION

3.01 II agrees to substitute itself for AB in all pending litigation involving Horstwood, Lemon Grove, CBS, and the Condo, including, but not limited to, the Horstwood Claims; the Weiner Claim; *Adam Bilzerian vs. Lemon Grove Company*, SKBHCV2012/0258; *CBS, Lemon Grove & Adam Bilzerian v FCIB*, SKBHCV2016/0348; and *Adam Bilzerian vs. Getz, SCC HOA*, SKBHCV2013/176.

3.02   II agrees to indemnify and hold AB harmless for any costs or fees related to any all the litigation listed in Section 3.01 as of the date of this Agreement.

## ARTICLE IV: MISCELLANEOUS PROVISIONS

4.01. Validity. In the event that any provision of this Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Agreement.

4.02. Headings. The headings, titles and subtitles used in this Agreement are for ease of reference only and shall not control or affect the meaning or construction of any provision hereof.

4.03. Notices. Except as may be otherwise specifically provided in this Agreement, all notices required or permitted hereunder shall be in writing and shall be addressed to the parties at their respective addresses set forth in this Agreement or at such other addresses as may be subsequently specified by written notice.

4.04. <u>Recitals.</u> The Recitals herein are true and are material representations of the facts stated therein which do hereby form part of this Agreement, and upon which the Party to which the representation is made does hereby rely.

4.05. <u>Law and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of St. Kitts and Nevis. The courts in St. Kitts shall have exclusive jurisdiction over any legal claim brought with respect to this Agreement.

4.06. <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement, but all the counterparts shall together constitute the same Agreement. No counterpart shall be effective until each party has executed at least one counterpart.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**International Investments, Ltd**

By: Greg Gilpin-Payne, President

Adam Bilzerian

3

EXHIBIT 1

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

August 24, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan Documents"). All amounts due from Borrowers to Lender, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the "Liabilities."

This letter agreement shall confirm that the Borrowers were in default of the Notes on January 18, 2011. At that time the Lender entered into a forbearance agreement that, amongst other things, extended the due date of the Notes to March 1, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on March 1, 2011, and went into default again. On April 20, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to May 20, 2011.

AJB

AJB

1

This letter shall further confirm that the Borrowers did not make any payment on the Notes on May 20, 2011, and went into default again. On June 13, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to June 20, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on June 20, 2011, and went into default again.

This letter shall further confirm that on July 7, 2011, Borrowers requested and Lender granted one final forbearance agreement that extended the due date to July 20, 2011. This letter shall further confirm that the Borrowers did not make any payment on the Notes on July 20, 2011, and have been in default since then. Borrowers acknowledge and agree that the total amount due on the Notes as of August 22, 2011 is as follows:

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$1,170,821 | $350,000 | $1,870,821 |
| Note 2 | US$ 35,000 | US$ 87,643 | | $ 122,643 |
| Total | | | | $1,993,464 |

In addition, it is agreed that costs and counsel fees that are due in the terms of the Notes is equal to $6,536 making the total amount of the Liabilities, as of August 22, 2011, equal to Two Million Dollars ($2,000,000).

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy any portion of the Liabilities. Therefore the Borrowers and the Lender have agreed to avoid litigation and resolve the repayment of the Liabilities as follows:

1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS

2

AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS LETTER AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

4. Kevin Horstwood ("Horstwood") acknowledges that on August 22, 2011, pursuant to the Forbearance Agreement dated July 11, 2011, Lender assumed ownership of the collateral pledged to secure payment on the Liabilities, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd.

5. Kevin Horstwood ("Horstwood") agrees to resign as Manager of Caribbean Building Systems, Ltd. ("CBS"), and as Manager of Lemon Grove Company, Ltd. ("Lemon Grove"), effective August 22, 2011. Horstwood further agrees to resign as Director of CBS and as Director of Lemon Grove, effective August 22, 2011.

6. Horstwood acknowledges that he is to be removed as a signatory on the CBS and Lemon Grove bank accounts effective immediately and that he is not authorized to take any action of any kind on behalf of CBS or Lemon Grove, including communicating with the attorneys for CBS and Lemon without disclosing that he no longer represents either of them.

7. Lender agrees to release Horstwood from any further liability on the Notes. Lender also informs Horstwood that, in the event Lender decides to proceed with the development of the Caines Plantation property, and he and his affiliates are satisfied that there is sufficient equity to satisfy all the debts of Lemon Grove, including the Liabilities, and that Lender has not been required to invest any money in CBS or satisfy any liabilities of CBS, he intends to transfer CBS's interest in the Rawlins property and, possibly, the Golden Lemon Hotel to Horstwood.

8. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

Very truly yours,

_____
Adam Bilzerian

AGREED TO KEVIN HORSTWOOD

_____          24/8/11
Kevin Horstwood                  Date

3

EXHIBIT 2

Issued this 21st day of March 2021 at 9:19 o'clock, a m.

## FEDERATION OF SAINT CHRISTOPHER AND NEVIS

Title by Registration under CAP 27%

CONDOMINIUM ACT 1976

# CERTIFICATE OF TITLE

Land Titles : Saint Christopher

Register Book 8 fol 25

KNOW ALL MEN TO WHOM THESE PRESENTS SHALL COME, That ANN MARY DILLEMUTH of

14131 Dillemuth, St Arthur, Texas, Florida, in the United States of America

is Registered Proprietor of Unit 431 A & B being a portion of that part of Frigate Bay described in Certificate of Title registered in Book P-1 Folio 311 at the Register of Titles for the Island of Saint Christopher and contained in the Declaration and Description of SAINT CHRISTOPHER CLUB CORPORATION registered as No. 8 in the Condominium Index on the 15th day of April, 1989 together with an individual interest in the Common elements appurtenant thereto.

All as known are delineated and set forth on the Plan thereof by

Licensed Surveyor annexed hereto SUBJECT NEVERTHELESS to the Mortgages and Incumbrances which are noted on the Margin hereof or endorsed hereon – IN FAITH AND TESTIMONY whereof I have hereunto subscribed my name and affixed the Seal of my Office this ___ day of March Two Thousand and Seven

PARTIAL TRANSFER NOW the Point Chustdler Club Limited

VIDE PRESENTED BOOK 5 FOLIO 355

INSTRUMENT FILED

MEMO OF TRANSFER

DATED

Registrar of Titles

**MORTGAGES AND INCUMBRANCES**

CHARGE in favour of the Government for Land Tax now due or hereafter becoming due.

Vide Cap. 279 (Section 28(3) of the Revised Edition of the Laws of the Federation.

Noted this 21st day of March, 2007 @ 9:19 am

*[signature]*
Registrar of Titles

AND the Corporation hereby GRANTS unto the Purchaser:-

1. Full right and liberty to and for the Purchaser and the Purchaser's successors in title for all purposes connected with the use and occupation of the property conveyed (in common with the Corporation and others now or hereafter entitled to the like right) to go pass and repass with or without horses or other animals carriage and motor vehicles over and along the road of the Frigate Bay Development.

2. The right so far as is necessary for use in connection with the property conveyed (and in common with all others now or hereafter entitled to the like right) to connect to and use water electricity and other services provided for the purpose of serving the property conveyed in and through the drains, channels, watercourses, cables, pipes and other apparatus (as may be appropriate) now constructed or to be constructed within twenty-one years for the date of these presents in through over or under the adjoining or neighbouring land roads and verges and by means of which drainage and communication is designed to be had.

PROVIDED ALWAYS THAT this transfer is subject to the following exceptions and reservations in favour of the Corporation.

1. All mines and minerals of every description under the said property are excepted out of this sale and are by Chapter 183 vested in the Crown and the Corporation shall have full power to win work and carry away the same provided that it shall pay to the Purchaser full compensation for any damage or injury that may be occasioned to the surface of the said lands or any buildings thereof by reason of any underground workings such compensation to be settled in case of difference by arbitration.

2. The Corporation and its successors in office the owner or owners or occupiers for the time being of the adjoining or neighbouring land and (within twenty-one years of the date of these presents) all persons hereafter authorised by the Corporation shall have full right to enter upon the property hereby transferred for the purpose of laying installing erecting in through over or under the said property and of inspecting maintaining repairing or replacing pipes, cables for the passage of relaying of materials or substances or forms of energy making good damage done in the exercise of such right.

3. The Purchaser and his successors in title shall not by virtue of this Transfer acquire any right of light or air which would prejudice the free use and enjoyment of any adjoining land of the Corporation for building or for any other purpose and that any enjoyment of light or air had by the Purchaser or his successors in title from or over and any adjoining land of the Corporation shall be deemed to be had by the consent hereby given of the Corporation.

AND the Purchaser hereby covenants with the Corporation with interest and so as to bind (so far as is practicable) the property hereby transferred into whomsoever's hands the same may come and to benefit and protect the estate and property of the Corporation situate at Frigate Bay as aforesaid or any part thereof but not so as to render himself personally liable for any breach of covenant committed he shall have parted with all interest in the property in respect of which such breach shall occur that the Purchaser and his successors in title will at all times hereafter observe and perform the restrictions following in relation to the property hereby transferred namely:-

(a) not at any time prior to the date upon which compliance shall be made without the previous consent in writing of the Corporation to sub-divide or dispose of by sale or otherwise of any part or parts of the property conveyed as distinct from the disposal by sale or otherwise of the entirety thereof in one lot;

(b) not to do on the property conveyed any act or thing which may be or become or cause an annoyance nuisance damage disturbance injury or danger to the owners or occupiers of any adjoining or neighbouring land now or formerly vested in the Corporation;

(c) not to remove soil or otherwise dispose of any earth clay stone gravel or sand from the property conveyed or make any excavation therein except such as may be necessary for the erection of approved buildings;

(d) not to form any refuse rubbish or scrap dump on any part of the property conveyed which may be open and unbuilt upon and generally to keep such parts of the property conveyed as shall for the time being be open and unbuilt upon clean and tidy and in good order;

(e) to comply with any directions or restrictions in respect of the property conveyed which the Corporation shall prescribe as conditions for the granting of any approval required under the foregoing restrictions or stipulations of this transfer or any of them

(f) to pay the reasonable survey fees and other charges and expenses (if any) incurred by the Corporation resulting from all applications for any approval or consent required under the foregoing restrictions and stipulations of this transfer or any of them including fees actually incurred where any application is withdrawn;

(g) to comply with any rules and regulations made by the government of the Federation for the benefit of all other land forming part of the piece or parcel of land described in the first recital to these presents;

(h) not to erect on the land transferred any building which shall not be of a design and in accordance with plans, specifications, descriptions and elevations which shall have been approved in writing by the Corporation, so however that such plans shall be submitted and such building shall be erected within the time stipulated by the Corporation

*[signature]*
Registrar of Titles

ASB *[doodle]*

**EXHIBIT
B**

Filed on behalf of:    Claimant
Deponent:    GREGORY GILPIN-PAYNE
Exhibits:    4 [G.G.P.1 to G.G.P.4]
Sworn:    November, 5th 2024.

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2024

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
<u>CONSOLIDATED</u>

BETWEEN:

ADAM BILZERIAN

*Applicant/Claimant*

AND

KEVIN HORSTWOOD

*Respondent/Defendant*

<u>AFFIDAVIT IN SUPPORT OF APPLICATION FOR SUBSTITUTION</u>
<u>OF PARTIES</u>

I, **GREGORY GILPIN-PAYNE** of Earl Mornes, Bird Rock, St. Kitts make oath and say as follows:-

1. I am the president of International Investments Limited (IIL), a company duly incorporated under the laws of the Federation of St. Christopher and Nevis with its registered office situate at Frigate Bay, in the island of Saint Christopher. A copy of IIL's most recent annual return is herewith shown to me and annexed and marked "G.G.P.1".

1

2. I am duly authorized to swear this affidavit on behalf of IIL. This affidavit is sworn to and filed in support of the Claimant's application to substitute IIL in place and instead of himself as Claimant in the instant action.

3. By Purchase Agreement between International Investments and the Claimant, Adam Bilzerian, dated 26th March, 2023, all of the Claimant's interests and liabilities in the matter were transferred to International Investments. Article III of the said agreement, entitled *"Existing Litigation"*, specifically states:

    *"On or immediately after the Closing, II agrees to substitute itself for AB in all pending litigation involving Horstwood, Lemon Grove, CBS, and the Condo, including, but not limited to, the Horstwood Claims…"*

4. A copy of this agreement is herewith shown to me and annexed and marked "**G.G.P.2**".

5. International Investments has consented to the proposed substitution and has signed a written Notice evidencing its consent. A copy of this Notice is herewith shown to me and annexed and marked "**G.G.P.3**".

6. In the premises, IIL has assumed all of the interests and liabilities in the subject matter and I hereby request, on behalf of IIL, that the application for substitution be granted in terms of the draft order attached.

7.  I am advised by our Attorneys-at-Law, Charles and Associates that in or around the 18th May 2023, an Affidavit in Support was prepared and issued to the Applicant together with a draft written Notice evidencing his consent to the substitution. I am further advised that the Applicant/Claimant executed the Affidavit in the presence of a Notary Public, as well as the consent. True copies of the filed Affidavit of the Applicant/Claimant and the signed Consent are shown to me, annexed, bundled and marked "G.G.P.4".

8.  In the above circumstances, I humbly pray that this Honourable Court will grant the Claimant/Applicant the reliefs being sought in the application filed simultaneously herein.

And I make this Affidavit honestly and conscientiously knowing and believing the contents to be true and correct.

SWORN TO/AFFIRMED by the within ]
named GREGORY GILPIN-PAYNE at ] .........................................
                                 ]GREGORY GILPIN PAYNE
This 5th day of November 2024   ]

Before me:

.........................................
[Signature & Seal].

3

IN THE EASTERN CARIBBEAN SUPREME COURT

IN THE HIGH COURT OF JUSTICE

FEDERATION OF ST. CHRISTOPHER AND NEVIS

ST. CHRISTOPHER CIRCUIT

(CIVIL)

A.D. 2024

Claim No. SKBHCV2011/0320

Claim No. SKBHCV2016/0311

<u>CONSOLIDATED</u>

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SUBSTITUTION OF PARTIES**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Derriann Charles

**CHARLES & ASSOCIATES**

Attorneys-at-Law for the Applicant

Unit C 20, The Sands Complex, Bay Road,

Basseterre, St. Kitts

Telephone: (869) 466-7162

Office Mobile: (869) 667-7162

Email: derriann@charlesandassociateslaw.com

DETAILS OF SERVICE

PRINT NAME: *TANYA BYRON*

SIGNATURE: *Tanya Byron*

COMPANY: *Byron & Byron*

COMPANY STAMP:

DATE: *21/11/2024*

TIME OF SERVICE: *12:43 PM*

**CHARLES AND ASSOCIATES**

4

016

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2024

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
<u>CONSOLIDATED</u>

BETWEEN:

**ADAM BILZERIAN**

*Applicant/Claimant*

**AND**

**KEVIN HORSTWOOD**

*Respondent/Defendant*

<u>**NOTICE OF APPLICATION FOR SUBSTITUTION OF PARTIES**</u>

The Applicant, **Adam Bilzerian,** the Claimant herein applies to this Honourable Court pursuant to Part 19 of the **Civil Procedure Rules 2000, as amended ('CPR')** and or the inherent jurisdiction of the Court for the following Order, namely:

(a) An Order pursuant to **CPR 19.3** substituting International Investments Limited, a limited liability company duly incorporated under the laws of the Federation of St. Christopher and Nevis as the Claimant in this matter in place and instead of the Claimant, Adam Bilzerian;

(b) An Order pursuant to **CPR 19.2 (5) (b)** all his interests and liability in this claim has been passed to the substituted Claimant, International Investments Limited.

(c) That there be no order as to costs;

1

(d) Such other orders which the Court thinks fits.

The Grounds of the Application are:-

1.  Pursuant to **CPR 19.2 (5)** the Court may order a new party to be substituted for an existing party if (a) the Court can resolve the matters in dispute more effectively by substituting the new party for the existing party; or (b) the existing party's interests or liability has passed to the new party.

2.  Pursuant to CPR 19.3(4) the written consent of the substituted claimant must be filed with the court office.

3.  The Claimant in this matter has assigned all of his interests and liabilities in the matter to International Investments Limited.

4.  International Investments Limited's written consent to be substituted as claimant, required under CPR 19.3(4), is annexed to the affidavit in support of this application.

An Affidavit in Support accompanies this Application.

Dated this 1st day of November 2024

*Derriann Charles,*
*Charles & Associates,*
*Legal Practitioners for the Applicant/ Claimant*

2

*NOTICE*

This application will be heard by the Judge in Chambers on          the day of          , 2024 at          am/pm at the S.W. Tapley Seaton Court Annex, Independence Square Street (E), Basseterre, St. Christopher (St. Kitts) or virtually on the          day of          , 2024 at          am/pm

**If you do not attend this hearing an order may be made in your absence.**

**N.B.** – This notice of application must be served as quickly as possible of the respondents to the application.

The Applicant's address of service is: **Charles & Associates**, Unit 102 (Office B), St. Kitts Castle, Frigate Bay, St. Kitts. Telephone No. (869) 466-7162    Mobile    (869)    667-7162;    email: derriann@charlesandassociateslaw.com

**The Court Office is at S.W. Tapley Seaton Court Annex, Independence Square Street (E), Basseterre, St. Christopher (St. Kitts), Telephone No. 465-2195, Fax 465-2482. The Office is open between 8:30 a.m. and 3:30 p.m. Mondays to Fridays except Public Holidays.**

3

IN THE EASTERN CARIBBEAN
SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF ST
CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2024


CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
<u>CONSOLIDATED</u>


BETWEEN:


ADAM BILZERIAN
*Applicant/Claimant*

and

KEVIN HORSTWOOD
*Respondent/Defendant*


\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**NOTICE OF APPLICATION FOR**

**SUBSTITUTION OF PARTIES**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Derriann Charles | Christiane Prowell
**CHARLES & ASSOCIATES**
Attorneys-at-Law for the Claimant
Unit C20, The Sands Complex,
Basseterre, St. Kitts
Telephone: (869) 466-7162
Office Mobile: (869) 667-7162
Email:derriann@charlesandassociateslaw.com

DETAILS OF SERVICE

PRINT NAME: *Tanya Byron*

SIGNATURE: *Tanya Byron*

COMPANY: *Byron & Byron*

COMPANY STAMP:

DATE: *01/11/2024*

TIME OF SERVICE: *12.43 p.m*

**CHARLES AND ASSOCIATES**

4



IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2024

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
**CONSOLIDATED**

BETWEEN:

        **ADAM BILZERIAN**

                                     *Applicant/Claimant*

                    **AND**

        **KEVIN HORSTWOOD**

                                  *Respondent/Defendant*

---

### CERTIFICATE OF EXHIBITS
*[to the Affidavit of Gregory Gilpin Payne]*

I, VERNON VEIRA    NOTARY PUBLIC **HEREBY CERTIFY** that the following are the exhibits referred to in the Affidavit sworn before me by **GREGORY GILPIN-PAYNE** on the 5th    day of November 2024.

G.G.P.1   -    International Investments most recent annual return
G.G.P.2   -    Agreement between the Claimant, Adam Bilzerian and International Investments dated the 26th March 2023
G.G.P.3   -    Written Notice evidencing consent by International Investments
G.G.P.4   -    Filed Affidavit and Consent of Adam Bilzerian dated the 19th May 2023.

Dated the 5th day of November 2024

_____

NOTARY PUBLIC

[Stamp and Seal]

Exhibit "C.G.P.1"
Referred to in Affidavit
Of Gregory Gilpin Payne

# SAINT CHRISTOPHER AND NEVIS

## MINISTRY OF FINANCE
### *Financial Services Regulatory Commission*

### THE COMPANIES ACT, 1996 (Revised Cap 21.03)

### ANNUAL RETURN

*[stamp: ST. CHRISTOPHER AND NEVIS — MAY 30 2024 — OFFICE OF THE REGISTRAR]*

**How to Complete and Submit an Annual Return**

1. Use the appropriate forms as indicated below:
   (1) For all companies:
      (a) Particulars of Company.
      (b) Statement for Classes. *(please use one form per class of members)*
      (c) Appendix. *(if required)*
   (2) For public, private ordinary or external companies only, in addition to the above listed forms:
      (a) Particulars of Directors. *(please use one form per director)*
      (b) Particulars of Members. *(please use one form per member)*
2. If your company has more than 5 members you may substitute the form mentioned in 1(2)(b) by a printed listing in a format acceptable to us.
3. Call the Financial Services Regulatory Commission at +1 (869) 466-5048 if you need additional forms or if you should have any question.
4. When filling-in the forms -
   (1) print or type;
   (2) use black ink only;
   (3) use only one character per box; and
   (4) insert the company number on every form in the space provided for that purpose.
5. Once all forms have been completed, please attach them to this introductory page and ensure that the form mentioned in paragraph 1(1)(a) above is dated, sealed and signed by the person or persons authorised to sign instruments to which the seal of the company is affixed.
6. Deliver to the Registrar of Companies before the relevant due date -
   (1) this introductory page with its attachments as indicated in 5 above; and
   (2) a cheque in the amount of the appropriate filing fee made payable to the Financial Services Regulatory Commission.

| For Internal Use Only | | | | | | |
|---|---|---|---|---|---|---|
| Documents and Number of Pages Received: | | Company Type: | PRO PUO / PRE PUL / PRE PUE | | Company Number: | |
| Particulars of Company: | Appendix: | Date Received: | | | Incorporation Date: | |
| Statement for Classes: | Pages: | Date Received: | | | Due Date: | |
| Particulars of Members: | Pages: | Date Received: | | | Filing Fee: | |
| Particulars of Directors: | Pages: | Date Received: | | | Voucher No.: | |

CAR98K01                    PLEASE FOLLOW THE INSTRUCTIONS GIVEN ABOVE                    Instruction Page

FINANCIAL SERVICES REGULATORY COMMISSION          *Annual Return for Companies*

PARTICULARS OF THE COMPANY NAMED IN THIS FORM
(For all companies registered under the Companies Act, 1996-Revised Cap 21.03)

Company Number

| 0 | 0 | 4 | 8 | 2 | 6 |
|---|---|---|---|---|---|

Name of Company

1   **INTERNATIONAL INVESTMENTS LTD**

Address of Registered Office (Post office box number not allowed)

2   858 Zenway Boulevard

House Name (if no house number, otherwise optional)

3   | | | | |

House Number     Street Name

4   Frigate Bay                                         ☑ Saint Christopher    ☐ Nevis
City Name                                               Location (Please tick appropriate box above)

Type of Company (Please tick appropriate box below)

5   ☑ Private        ☐ Public        ☐ External

Fiscal Status (Please tick appropriate box below)

6   ☐ Ordinary      ☑ International

Nature of Business Carried Out (Please tick appropriate box below)
The description of the nature of the business carried out by the company as given in the statement delivered at the time of the registration of its memorandum of association or in its annual return delivered to the Register of Companies for the year immediately preceding the year in respect of which this annual return is being delivered -

7   ☑ accurately describes the nature of the business carried out by the company; or

8   ☐ no longer accurately describes the nature of the business carried out by the company and a description of the nature of that business is given in the Appendix to this annual return.

THE COMPANY NAMED IN THIS FORM:
A.   CERTIFIES THAT THE INFORMATION CONTAINED IN THIS ANNUAL RETURN IS CURRENT AS AT THE ANNIVERSARY DATE OF ITS INCORPORATION IN THE YEAR IN RESPECT OF WHICH THIS ANNUAL RETURN IS BEING DELIVERED TO THE REGISTRAR; AND,
B.   IF IT IS AN EXEMPT COMPANY, UNDERTAKES THAT ITS DIRECTORS WILL FORTHWITH NOTIFY THE MINISTER BY NOTICE IN WRITING IF IT SHOULD NO LONGER QUALIFY AS AN EXEMPT COMPANY UNDER SECTION 206 OF THE COMPANIES ACT (NO. 22 OF 1996)(REVISED CAP 21.03).

IN WITNESS WHEREOF:
The COMMON SEAL, if any, of the company named in this form was affixed hereunto on

| 3 | 0 |   | 0 | 5 |   | 2 | 0 | 2 | 4 |
|---|---|---|---|---|---|---|---|---|---|

    Day        Month          Year      in the presence of:

_____          _____
Authorised Signatory.            Second Authorised Signatory, if any.

Gregory Gilpin-Payne
_____          _____
Full Name                        Full Name

CAR98K01                                         Particulars of Company

**FINANCIAL SERVICES REGULATORY COMMISSION**    *Annual Return for Companies*

## STATEMENT FOR THE CLASS IDENTIFIED IN THIS FORM

(For all companies registered under the Companies Act, 1996)

Company Number

| 0 | 0 | 4 | 8 | 2 | 6 |
|---|---|---|---|---|---|

### In the Case of a Company Limited by Shares

Class of Shares

A1)  **Ordinary**

Designation of Class of Shares

A2) |   |   |   | 1 |

Total Number of Shareholders in Class

Shares Issued in Class Evidenced by REGISTERED SHARE CERTIFICATES

A3) |   |   | 1 | 0 | 0 | 0 | 0 | 0 |

Total Number of Shares Issued

Aggregate Amount Paid Up on Shares Issued

A4) |   |   |   |   |   |   |   |   |   |   |   |    **EC$1,000,000**

Amount                                    Currency

Shares Issued in Class NOT EVIDENCED by any Share Certificate

A5) |   |   |   |   |   |   |   |   | 0 |

Total Number of Shares Issued

Aggregate Amount Paid Up on Shares Issued

A6) |   |   |   |   |   |   |   |   | 0 |

Amount                                    Currency

### In the Case of a Company Limited by Guarantee

Class of Members

B1)  **N/A**

Designation of Class of Members

B2) |   |   |   |   |

Total Number of Members in Class

Aggregate Amount of Guarantee for Class

B3) |   |   |   |   |   |   |   |   |   |

Amount                                    Currency

ST. CHRISTOPHER AND NEVIS
OFFICE OF THE REGISTRAR

CAR98K01                        **PLEASE USE ONE FORM PER CLASS**                        Statement for Classes

**FINANCIAL SERVICES REGULATORY COMMISSION**          *Annual Return for Companies*

## PARTICULARS OF DIRECTOR NAMED IN THIS FORM

(For public companies and for private ordinary companies only)

Company Number

| 0 | 0 | 4 | 8 | 2 | 6 |

Names of Director

1  Gregory

Present Forenames

2  Gilpin-Payne

Present Surname

4

Former Forenames (if any)

5

Former Surname (if any)

Business or Usual Residential Address of Director (P.O. Box number is not accepted)

6  Wetherills Estate

House Name (if no house number, otherwise optional)

7

House Number    Street Name

8  St.John's                              State    Postal/Zip Code

City Name

9  Antigua

Country Name

10

Telephone Number (optional)                Facsimile Number (optional)

Other Particulars of Director

11  Antiguan

Nationality

12  Company President

Business occupation (if any)

| | Date of Birth | | | Date person became a Director | | | Date person ceased to be a Director | | |
|---|---|---|---|---|---|---|---|---|---|
| 13 | 2 0 | 0 8 | 1 9 6 6 | 2 2 | 0 9 | 2 0 1 2 | | | |
| | Day | Month | Year | Day | Month | Year | Day | Month | Year |

*ST. CHRISTOPHER AND NEVIS*
*OFFICE OF THE REGISTRAR*

CAR98K01                    PLEASE USE ONE FORM PER DIRECTOR              Particulars of Director

**FINANCIAL SERVICES REGULATORY COMMISSION**          *Annual Return for Companies*

## PARTICULARS OF MEMBER NAMED IN THIS FORM

(For public companies and for private ordinary companies only)

Company Number

| 0 | 0 | 4 | 8 | 2 | 6 |

### In the Case of a Member who is an Individual

Names of Member

A1 _____

Present Forenames

A2 _____

Present Surname

A3 _____

Former Forenames (if any)

A4 _____

Former Surname (if any)

Business or Usual Residential Address (Post office box number not allowed)

A5 _____

House Name (if no house number, otherwise optional)

A6 [ ][ ][ ][ ][ ]

House Number     Street

A7 _____     State [ ][ ]   Postal/Zip Code [ ][ ][ ][ ][ ][ ][ ][ ]

City

A8 _____

Country

A9 [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]     Type of Shares [ ][ ][ ][ ][ ][ ][ ][ ][ ]

Number of Shares Issued to Member     Type of Shares(common/ordinary, preferred or other)

### In the Case of a Member which is a Body Corporate

Name of Member

B1 _____

Full Name of Body Corporate

B2 **Another Dimension Ltd**

Place of Incorporation (Country, state, province or county, as appropriate)

Address of Registered or Principal Office (Post office box number not allowed)

B3 **858 Zenway Boulevard**

House Name (if no house number, otherwise optional)

B4 [ ][ ][ ][ ][ ]

House Number     Street Name

B5 **Frigate Bay**     State [ ][ ]   Postal/Zip Code

City Name

B6 **St.Kitts**

Country Name

B7 [ ][ ][ ][ ][ ][1][0][0][0][0][0]     Ordinary [O][r][d][i][n][a][r][y][ ][ ][ ]

Number of Shares Issued to Member     Type of Shares(common/ordinary, preferred or other)

CAR98K01                                    Particulars of Member

**FINANCIAL SERVICES REGULATORY COMMISSION**          *Annual Return for Companies*

## PARTICULARS OF SECRETARY NAMED IN THIS FORM

(For all companies)

Company Number  
| 0 | 0 | 4 | 8 | 2 | 6 |

### In the Case of a Secretary who is an Individual

Names of Secretary

A1  **Terri**

Present Forenames

A2  **Steffen**

Present Surname

A3

Former Forenames (if any)

A4

Former Surname (if any)

Business or Usual Residential Address (Post office box number not allowed)

A5

House Name (if no house number, otherwise optional)

A6  | | | 8 | 5 | 8 |   **Zenway Blvd**

House Number          Street

A7  **Frigate Bay**                          | | |   | | | | | | | | | |

City                                          State   Postal/Zip Code

A8  **St.Kitts**

Country

### In the Case of a Secretary which is a Body Corporate

Name of Secretary

B1

Full Name of Body Corporate

B2

Place of Incorporation (Country, state, province or county, as appropriate)

Address of Registered or Principal Office (Post office box number not allowed)

B3

House Name (if no house number, otherwise optional)

B4  | | | | |

House Number          Street Name

B5  **Frigate Bay**                          | | |   | | | | | | | | | |

City Name                                     State   Postal/Zip Code

B6

Country Name

CAR98K01                                              Particulars of Member

FINANCIAL SERVICES REGULATORY COMMISSION                    *Annual Return for Companies*

**APPENDIX**

(Change in the nature of the business carried out by the company)

Company Number

| 0 | 0 | 4 | 8 | 2 | 6 |

If the description of the nature of the business carried out by the company as given in the statement delivered at the time of the registration of its memorandum of association or in its annual return delivered to the Registrar of Companies for the year immediately preceding the year in respect of which this annual return is being delivered no longer accurately describes the business carried out by the company, then please give a description of the nature of the business carried out by the company below.

CAR98K01                                                        Appendix

Exhibit "C.G.P.2"
Referred to in Affidavit
Of _Gregory Gilpin Payne_

## AGREEMENT

THIS AGREEMENT ("Agreement") is made and entered into as of March 26, 2023 ("Effective Date"), by and between **ADAM BILZERIAN**, a citizen of St. Kitts, (hereinafter "AB"), and **INTERNATIONAL INVESTMENTS, LTD**, a St. Kitts company (hereinafter "II"), with its registered office address at 858 Zenway Blvd., Frigate Bay, St. Kitts.

WHEREAS, AB is the sole owner of Lemon Grove Company, Ltd., ("Lemon Grove"), a company incorporated under the Companies Act 1996 (No. 22 of 1996) of the Federation of St. Christopher and Nevis; and

WHEREAS, AB is the sole owner of Caribbean Building Systems (St Kitts), Ltd., ("CBS"), a company incorporated under the Companies Act 1996 (No. 22 of 1996) of the Federation of St. Christopher and Nevis; and

WHEREAS, AB is the sole owner of the condominium known at 631 St. Christopher Club, Frigate Bay, St. Kitts ("Condo"); and

WHEREAS, II is the holder and beneficial owner of that certain Promissory Note ("Note"), dated June 17, 2016, from The Everett Corporation, a Minnesota company, in the principal amount of Eight Hundred Eighty Thousand Three Hundred Ten United States dollars ($880,310); and

WHEREAS, AB wishes to exchange his entire interest in Lemon Grove, CBS, and the Condo for II's entire interest in the Note on the terms and conditions set forth herein.

NOW, THEREFORE, the Parties agree as follows:

### ARTICLE I: THE ASSETS TO BE EXCHANGED

1.01. AB acquired 100% of the shares of Lemon Grove on August 24, 2011 from Kevin Horstwood ("Horstwood"). A copy of the agreement is attached hereto as Exhibit 1. AB's ownership of Lemon Grove has been subject to litigation since AB filed a claim against Horstwood in the High Court of Justice, in the Federation of St. Christopher and Nevis, St. Christopher Circuit, on November 2, 2011, a case styled *Adam Bilzerian vs Kevin Horstwood*, Claim number SKBHCV2011/0320 ("Horstwood Claim 1"). A second claim was filed by AB against Horstwood in the High Court of Justice, in the Federation of St. Christopher and Nevis, St. Christopher Circuit, on October 24, 2016, a case styled *Adam Bilzerian vs Kevin Horstwood*, Claim number SKBHCV2016/0311 ("Horstwood Claim 2" and collectively Horstwood Claim 1 and Horstwood Claim 2 are referred to as "The Horstwood Claims").

1.02.  AB acquired 100% of the shares of CBS on August 24, 2011 from Horstwood. AB's ownership of CBS is subject to litigation in The Horstwood Claims.

1.03.  AB purchased the Condo on April 24, 2006, and obtained title to the Condo on March 21, 2007, a copy of which is attached hereto as Exhibit 2.  Litigation over

whether a mortgage should be recorded against the Condo has been ongoing since April 20, 2012, in a case filed in the High Court of Justice, in the Federation of St. Chrisopher and Nevis, St. Christopher Circuit, styled *Gerald Lou Weiner and Kathleen Ann Weiner vs Adam J Bilzerian*, Claim number SKBHCV2012/0154 ("Weiner Claim").

1.04. II is the holder and beneficial owner of that certain Promissory Note ("Note"), dated June 17, 2016, from The Everett Corporation, a Minnesota company, in the principal amount of Eight Hundred Eighty Thousand Three Hundred Ten United States dollars ($880,310).

## ARTICLE II: THE EXCHANGE OF ASSETS

2.01. AB agrees to transfer all of his interest in Lemon Grove, CBS and the Condo to II. AB agrees to execute whatever documents are necessary to effectuate the transfers.

2.02. II agrees to transfer all of its interest in The Note to AB. II agrees to execute whatever documents are necessary to effectuate the transfer.

## ARTICLE III: EXISTING LITIGATION

3.01 II agrees to substitute itself for AB in all pending litigation involving Horstwood, Lemon Grove, CBS, and the Condo, including, but not limited to, the Horstwood Claims; the Weiner Claim; *Adam Bilzerian vs. Lemon Grove Company*, SKBHCV2012/0258; *CBS, Lemon Grove & Adam Bilzerian v FCIB*, SKBHCV2016/0348; and *Adam Bilzerian vs. Getz, SCC HOA*, SKBHCV2013/176.

3.02   II agrees to indemnify and hold AB harmless for any costs or fees related to any all the litigation listed in Section 3.01 as of the date of this Agreement.

## ARTICLE IV: MISCELLANEOUS PROVISIONS

4.01. Validity. In the event that any provision of this Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Agreement.

4.02. Headings. The headings, titles and subtitles used in this Agreement are for ease of reference only and shall not control or affect the meaning or construction of any provision hereof.

4.03. Notices. Except as may be otherwise specifically provided in this Agreement, all notices required or permitted hereunder shall be in writing and shall be addressed to the parties at their respective addresses set forth in this Agreement or at such other addresses as may be subsequently specified by written notice.

2

4.04. <u>Recitals.</u> The Recitals herein are true and are material representations of the facts stated therein which do hereby form part of this Agreement, and upon which the Party to which the representation is made does hereby rely.

4.05. <u>Law and Jurisdiction</u>. This Agreement shall be governed by and construed in accordance with the laws of St. Kitts and Nevis.  The courts in St. Kitts shall have exclusive jurisdiction over any legal claim brought with respect to this Agreement.

4.06. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which when executed and delivered shall constitute an original of this Agreement, but all the counterparts shall together constitute the same Agreement. No counterpart shall be effective until each party has executed at least one counterpart.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the Effective Date.

**International Investments, Ltd**

By: Greg Gilpin-Payne, President

Adam Bilzerian

3

EXHIBIT I

**ADAM BILZERIAN**
631 St. Christopher Club
Frigate Bay, St. Kitts
(869) 465-2795

August 24, 2011

Kevin Horstwood
Rawlins Plantation
Mount Pleasant, St. Kitts

Caribbean Building Systems, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Lemon Grove Company, Ltd.
Kevin Horstwood, Manager
c/o Rawlins Plantation
Mount Pleasant, St. Kitts

Re: Promissory Note for US$350,000 ("Note 1"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender"); Promissory Note for US$35,000 ("Note 2"), dated January 18, 2010, by Kevin Horstwood and Caribbean Building Systems, Ltd. (collectively Borrowers), in favor of Adam Bilzerian ("Lender").

Dear Mr. Horstwood:

Please refer to any and all documents, instruments and agreements executed in connection with Loan 1 and Loan 2 (collectively the "Notes") from Lender to Borrowers (collectively, the "Loan Documents"). All amounts due from Borrowers to Lender, whether now or in the future, contingent, fixed, primary and/or secondary, including, but not limited to, principal, interest, inside and outside counsel fees, audit fees, costs, expenses and any and all other charges provided for in the Loan Documents or this Agreement shall be known, in the aggregate, as the "Liabilities."

This letter agreement shall confirm that the Borrowers were in default of the Notes on January 18, 2011. At that time the Lender entered into a forbearance agreement that, amongst other things, extended the due date of the Notes to March 1, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on March 1, 2011, and went into default again. On April 20, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to May 20, 2011.

1

This letter shall further confirm that the Borrowers did not make any payment on the Notes on May 20, 2011, and went into default again. On June 13, 2011, at the request of the Borrowers, the Lender entered into another forbearance agreement that, amongst other things, extended the due date of the Notes to June 20, 2011.

This letter shall further confirm that the Borrowers did not make any payment on the Notes on June 20, 2011, and went into default again.

This letter shall further confirm that on July 7, 2011, Borrowers requested and Lender granted one final forbearance agreement that extended the due date to July 20, 2011. This letter shall further confirm that the Borrowers did not make any payment on the Notes on July 20, 2011, and have been in default since then. Borrowers acknowledge and agree that the total amount due on the Notes as of August 22, 2011 is as follows:

| Loan | Principal | Interest | Penalty | Total Due |
|------|-----------|----------|---------|-----------|
| Note 1 | US$350,000 | US$1,170,821 | $350,000 | $1,870,821 |
| Note 2 | US$ 35,000 | US$ 87,643 | | $  122,643 |
| Total | | | | $1,993,464 |

In addition, it is agreed that costs and counsel fees that are due in the terms of the Notes is equal to $6,536 making the total amount of the Liabilities, as of August 22, 2011, equal to Two Million Dollars ($2,000,000).

Lender has demanded payment in full of all of the Liabilities from Borrowers and Borrowers have informed Lender that they cannot satisfy any portion of the Liabilities. Therefore the Borrowers and the Lender have agreed to avoid litigation and resolve the repayment of the Liabilities as follows:

    1. Borrowers acknowledge the Liabilities as set out in the Loan Documents, the amount of the Liabilities as stated above and the existence of the default. Borrowers acknowledge and agree that Lender's demand for repayment of the Liabilities is timely and proper.

    2. There are no oral agreements between Lender and Borrowers; any agreements concerning the Liabilities are expressed only in the existing Loan Documents. The duties and obligations of Borrowers and Lender shall be only as set forth in the Loan Documents and this Agreement, when executed by all parties.

    3. BORROWERS, IN EVERY CAPACITY, INCLUDING, BUT NOT LIMITED TO, AS SHAREHOLDERS, PARTNERS, OFFICERS, DIRECTORS, INVESTORS AND/OR CREDITORS OF BORROWERS AND/OR GUARANTORS, OR ANY ONE OR MORE OF THEM, HEREBY WAIVE, DISCHARGE AND FOREVER RELEASE LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS, FROM AND OF ANY AND ALL CLAIMS, CAUSES OF ACTION, DEFENSES, COUNTERCLAIMS OR OFFSETS

2

AND/OR ALLEGATIONS BORROWERS MAY HAVE OR MAY HAVE MADE OR WHICH ARE BASED ON FACTS OR CIRCUMSTANCES ARISING AT ANY TIME UP THROUGH AND INCLUDING THE DATE OF THIS LETTER AGREEMENT, WHETHER KNOWN OR UNKNOWN, AGAINST ANY OR ALL OF LENDER AND HIS ATTORNEYS, AFFILIATES AND SUCCESSORS AND ASSIGNS.

4. Kevin Horstwood ("Horstwood") acknowledges that on August 22, 2011, pursuant to the Forbearance Agreement dated July 11, 2011, Lender assumed ownership of the collateral pledged to secure payment on the Liabilities, including all the shares of Caribbean Building Systems, Ltd. and Lemon Grove Company, Ltd.

5. Kevin Horstwood ("Horstwood") agrees to resign as Manager of Caribbean Building Systems, Ltd. ("CBS"), and as Manager of Lemon Grove Company, Ltd. ("Lemon Grove"), effective August 22, 2011. Horstwood further agrees to resign as Director of CBS and as Director of Lemon Grove, effective August 22, 2011.

6. Horstwood acknowledges that he is to be removed as a signatory on the CBS and Lemon Grove bank accounts effective immediately and that he is not authorized to take any action of any kind on behalf of CBS or Lemon Grove, including communicating with the attorneys for CBS and Lemon without disclosing that he no longer represents either of them.

7. Lender agrees to release Horstwood from any further liability on the Notes. Lender also informs Horstwood that, in the event Lender decides to proceed with the development of the Caines Plantation property, and he and his affiliates are satisfied that there is sufficient equity to satisfy all the debts of Lemon Grove, including the Liabilities, and that Lender has not been required to invest any money in CBS or satisfy any liabilities of CBS, he intends to transfer CBS's interest in the Rawlins property and, possibly, the Golden Lemon Hotel to Horstwood.

8. This Agreement will be governed by and construed in accordance with the laws of St. Kitts, without regard to the principles of conflicts of laws thereof. This Agreement may be executed in counterparts which, taken together, shall constitute one original. This Agreement is for the benefit of the Borrowers only and may not be assigned without the permission of the Lender. No party other than the Borrowers may rely upon the terms and conditions of this Agreement.

Very truly yours,

_____
Adam Bilzerian

AGREED TO KEVIN HORSTWOOD

_____          Date 24/8/11
Kevin Horstwood

3

**EXHIBIT 2**

Issued this 31st day of March _____ 2021 at 9.19 o'clock  a. m

**FEDERATION OF SAINT CHRISTOPHER AND NEVIS**

Title (Registration) Act Cap 10.31
Condominium Act 1976

# CERTIFICATE OF TITLE

Land Titles ____ St. Christopher.

Register Book ..9 ... fol. 25

Know all Men to whom these Presents shall come. That .................................. of ..............

.................., Marblehead, in Suffolk County, Greater in the United States of America, ..........

...B............ Registered Proprietor of Unit A & B being a portion of that part of Frigate Bay in, ..........

Certificate of title registered in Book 8-2 Folio 30) of the Register of Titles for the island of Saint .................. 

and established in the Declaration & Constitution of Frigate Bay Estate also known .......................................

the Condominium filed on the 25th day of April, 1989 together with all subsequent Interests in the common property

apportioned thereto.

All such estate or interest and all rights and death and/or title thereof by .........................................................

Mortgages, charges or annexations thereto Subject Nevertheless to the Mortgages and Incumbrances

which are noted on the Margin hereof or endorsed hereon. In faith and Testimony whereof I

have hereunto subscribed my name and affixed the Seal of my Office this ....31st....................................... day of

....March............................... Two Thousand and ....Twenty .........................................................................

                                                              _____
                                                              Registrar of Titles

MORTGAGES AND ENCUMBRANCES

CHARGE in favour of the Government for Land Tax now due or hereafter becoming due

Vide Cap. 270 (Section 58-D of the Revised Edition of the Laws of the Federation)

Dated this 31st day of March, 2007 at 9.19 a.m.

*[signature]*
Registrar of Titles

AND the Corporation hereby GRANTS unto the Purchaser

1. Full right and liberty to and for the Purchaser and the Purchaser's successors in title for all purposes connected with the use and occupation of the property conveyed (in common with the Corporation and others now or hereafter entitled to the like right) to go pass and repass with or without horses or other animals carriages and motor vehicles over and along the road of the Frigate Bay Development

2. The right so far as is necessary for use in connection with the property conveyed (and in common with all others now or hereafter entitled to the like right) to connect to and use water electricity and other services provided for the purpose of serving the property conveyed in and through the drains, channels, watercourses, cables, pipes and other apparatus (as may be appropriate) now constructed or to be constructed within twenty-one years for the date of these presents in through over or under the adjoining or neighbouring land roads and verges and by means of which drainage and communication is designed to be had.

PROVIDED ALWAYS THAT this transfer is subject to the following exceptions and reservations in favour of the Corporation

1. All mines and minerals of every description under the said property are excepted out of this sale and are by Chapter 183 vested in the Crown and the Corporation shall have full power to win work and carry away the same provided that it shall pay to the Purchaser full compensation for any damage or injury that may be occasioned to the surface of the said lands or any buildings thereof by reason of any underground workings such compensation to be settled in case of difference by arbitration

2. The Corporation and its successors in office the owner or owners or occupiers for the time being of the adjoining or neighbouring land and (within twenty-one years of the date of these presents) all persons hereafter authorised by the Corporation shall have full right to enter upon the property hereby transferred for the purpose of laying installing erecting in through over or under the said property and of inspecting maintaining repairing or replacing pipes, cables for the passage of relaying of materials or substances or forms of energy making good damage done in the exercise of such right

3. The Purchaser and his successors in title shall not by virtue of this Transfer acquire any right of light or air which would prejudice the free use and enjoyment of any adjoining land of the Corporation for building or for any other purpose and that any enjoyment of light or air had by the Purchaser or his successors in title from or over and any adjoining land of the Corporation shall be deemed to be had by the consent hereby given of the Corporation.

AND the Purchaser hereby covenants with the Corporation with intent and so as to bind (so far as is practicable) the property hereby transferred into whomsoever's hands the same may come and to benefit and protect the estate and property of the Corporation situate at Frigate Bay as aforesaid or any part thereof but not so as to render himself personally liable for any breach of covenant committed he shall have parted with all interest in the property in respect of which such breach shall occur that the Purchaser and his successors in title will at all times hereafter observe and perform the restrictions following in relation to the property hereby transferred namely:-

(a) not at any time prior to the date upon which compliance shall be made without the previous consent in writing of the Corporation to sub-divide or dispose of by sale or otherwise of any part or parts of the property conveyed as distinct from the disposal by sale or otherwise of the entirety thereof on one lot,

(b) not to do on the property conveyed any act or thing which may be or become or cause an annoyance nuisance damage disturbance injury or danger to the owners or occupiers of any adjoining or neighbouring land now or formerly vested in the Corporation,

(c) not to remove sell or otherwise dispose of any earth clay stone gravel or sand from the property conveyed or make any excavation therein except such as may be necessary for the erection of approved buildings,

(d) not to form any refuse rubbish or scrap dump on any part of the property conveyed which may be open and unbuilt upon and generally to keep such parts of the property conveyed as shall for the time being be open and unbuilt upon clean and tidy and in good order.

(e) to comply with any directions or restrictions in respect of the property conveyed which the Corporation shall prescribe as conditions for the granting of any approval required under the foregoing restrictions or stipulations of this transfer or any of them

(f) to pay the reasonable survey fees and other charges and expenses (if any) incurred by the Corporation resulting from all applications for any approval or consent required under the foregoing restrictions and stipulations of this transfer and any of them including fees actually incurred where any application is withdrawn

(g) to comply with any rules and regulations made by the government of the Federation for the benefit of all other land forming part of the piece or parcel of land described in the first recital to these presents,

(h) not to erect on the land transferred any building which shall not be of a design and in accordance with plans, specifications, descriptions and elevations which shall have been approved in writing by the Corporation, so however that such plans shall be submitted and such building shall be erected within the time stipulated by the Corporation

*[signature]*
Registrar of Titles

ASB

Exhibit "G.G.P.3"
Referred to in Affidavit
Of *Gregory Gilpin Payne*

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
FEDERATION OF ST. CHRISTOPHER AND NEVIS
ST. CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2024

Claim No. SKBHCV2011/0320
Claim No. SKBHCV2016/0311
**CONSOLIDATED**

BETWEEN:

Adam Bilzerian                                          Applicant

AND

Mr. Kevin Horstwood                                    Defendant

## <u>NOTICE OF CONSENT</u>

**TAKE NOTICE** that, pursuant to Purchase Agreement dated 26th March, 2023 and entered into between Adam Bilzerian and International Investments Limited, the said International Investments Limited, a limited liability company duly incorporated under the laws of the Federation of St. Christopher and Nevis, Adam Bilzerian, hereby consents to be substituted in place and instead of Adam Bilzerian as the claimant herein.

This Notice is filed pursuant to Part 19.4 of the Civil Procedure Rules, 2000 (as amended).

Dated this 5-6 day of *November* 2024.

..................................
GREGORY GILPIN-PAYNE,
PRESIDENT,
INTERNATIONAL INVESTMENTS LIMITED.

TO:        THE REGISTRAR OF THE HIGH COURT

AND TO:    MICHELLE SLACK-CLARKE
           COUNSEL FOR THE DEFENDANT/RESPONSENT

Exhibit "G.G.P.4"
Referred to in Affidavit
Of _Gregory Gilpin Payne_

Filed on behalf of:    Claimant
Deponent:             ADAM BILZERIAN
Sworn:               May 1%, 2023.

**IN THE EASTERN CARIBBEAN SUPREME COURT**
**IN THE HIGH COURT OF JUSTICE**
**IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS**
**SAINT CHRISTOPHER CIRCUIT**
**(CIVIL)**
**A.D. 2023**

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
**CONSOLIDATED**

BETWEEN:

                    **ADAM BILZERIAN**

                                        *Applicant/Claimant*

                    **AND**

                    **KEVIN HORSTWOOD**

                                        *Respondent/Defendant*

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SUBSTITUTION OF**
**PARTIES**

I, **ADAM BILZERIAN** of No. 631 St. Christopher's Club, Frigate Bay, St. Kitts
make oath and say as follows:-

1. I am the Claimant herein.

2. I make this Affidavit in support of my application to substitute International
   Investments Limited in place and instead of myself as Claimant in the
   instant action.

3. By Purchase Agreement between myself and International Investments
   dated 26th March, 2023, all of my interests and liabilities in the matter were

1

transferred to International Investments.

4.  International Investments has consented to the proposed substitution and has signed a written Notice evidencing its consent. A copy of this Notice is herewith shown to me and annexed and marked "A.B.1".

5.  In the premises, I no longer have any interests or liabilities in the subject matter and I hereby request that my application for substitution be granted in terms of the draft order attached.

And I make this Affidavit honestly and conscientiously knowing and believing the contents to be true and correct.

**SWORN/AFFIRMED** in Nevada                    ]

Pursuant to its Laws, this                    ] ...................................

18ᵗʰ Day of May, 2023                    ]  **ADAM BILZERIAN**

Before me:

...................................
[Signature & Seal].

BENJAMIN JAMES TOLLEY
NOTARY PUBLIC
STATE OF NEVADA
APPT No. 22-6952-01
MY APPT. EXPIRES OCT. 1, 2026

2

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2023

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
CONSOLIDATED

BETWEEN:

ADAM BILZERIAN

*Applicant/Claimant*

AND

KEVIN HORSTWOOD

*Respondent/Defendant*

## CERTIFICATE OF EXHIBITS

I, *Vernon S. Veira*, HEREBY CERTIFY that the following are the exhibits referred to in the Affidavit sworn before me by ADAM BILZERIAN on the 19th day of May, 2023.

A.B.1        Notice evidencing consent between the parties.

Dated the        day of May, 2023

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2023

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
CONSOLIDATED

BETWEEN:

ADAM BILZERIAN

*Applicant/Claimant*

AND

KEVIN HORSTWOOD

*Respondent/Defendant*

## NOTICE OF CONSENT

TAKE NOTICE that International Investments Limited, a limited liability company duly incorporated under the laws of the Federation of St. Christopher and Nevis, Adam Bilzerian, hereby consents to be substituted in place and instead of Adam Bilzerian as the claimant herein.

This Notice is filed pursuant to Part 19.4 of the Civil Procedure Rules, 2000 (as amended).

Dated this  18th  day of  MAY  2023.

.................................................
FOR: INTERNATIONAL INVESTMENTS LIMITED.

TO:        THE REGISTRAR OF THE HIGH COURT

AND TO:    EMILY CROOKS-SHIELDS
           COUNSEL FOR THE RESPONDENT/DEFENDANT

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF ST CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2023


CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
<u>CONSOLIDATED</u>


BETWEEN:

ADAM BILZERIAN                          Applicant/Claimant

                and

KEVIN HORSTWOOD
                                  Respondent/Defendant



**********************************
NOTICE OF CONSENT
**********************************

Derriann Charles | Christiane Prowell

**CHARLES & ASSOCIATES**

Attorneys-at-Law for the Claimant

Unit 102 (Office B), St. Kitts Castle,

Frigate Bay, St. Kitts

Telephone: (869) 466-7162

Office Mobile: (869) 667-7162

Email: derriann@charlesandassociateslaw.com

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2023

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
**CONSOLIDATED**

BETWEEN:

            **ADAM BILZERIAN**

                             *Applicant/Claimant*

                    **AND**

            **KEVIN HORSTWOOD**

                             *Respondent/Defendant*

## NOTICE OF CONSENT

    **TAKE NOTICE** that the Claimant herein, Adam Bilzerian, hereby consents to the substitution of International Investments Limited, a limited liability company duly incorporated under the laws of the Federation of St. Christopher and Nevis, as the Claimant herein, in pace and instead of him.

This Notice is filed pursuant to Part 19.4 of the Civil Procedure Rules, 2000 (as amended).

Dated this *18th* day of *May* 2023.

                                  ............................................................
                                        **ADAM BILZERIAN.**

TO:      THE REGISTRAR OF THE HIGH COURT

AND TO:      EMILY CROOKS-SHIELDS
                COUNSEL FOR THE RESPONDENT/DEFENDANT

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF ST CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2023

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
<u>CONSOLIDATED</u>

BETWEEN:

ADAM BILZERIAN                                  Applicant/Claimant

                         and

KEVIN HORSTWOOD
                                               Respondent/Defendant

********************************
NOTICE OF CONSENT
********************************

Derriann Charles | Christiane Prowell
**CHARLES & ASSOCIATES**
Attorneys-at-Law for the Claimant
Unit 102 (Office B), St. Kitts Castle,
Frigate Bay, St. Kitts
Telephone: (869) 466-7162
Office Mobile: (869) 667-7162
Email: derriann@charlesandassociateslaw.com

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2023

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
<u>CONSOLIDATED</u>

BETWEEN:

        ADAM BILZERIAN

                                    *Applicant/Claimant*

                    AND

        KEVIN HORSTWOOD

                                  *Respondent/Defendant*

---

### CERTIFICATE OF EXHIBITS

---

E-Filed by:

Derriann Charles | Christiane Prowell

**CHARLES & ASSOCIATES**

Attorneys-at-Law for the Claimant

Unit 102 (Office B), St. Kitts Castle,

Frigate Bay, St. Kitts

Telephone: (869) 466-7162

Office Mobile: (869) 667-7162

Email: derriann@charlesandassociateslaw.com

IN THE EASTERN CARIBBEAN SUPREME
COURT
IN THE HIGH COURT OF JUSTICE
FEDERATION OF ST. CHRISTOPHER AND
NEVIS
ST. CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2023

Claim No. SKBHCV2011/0320
Claim No. SKBHCV2016/0311
**CONSOLIDATED**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**AFFIDAVIT IN SUPPORT OF APPLICATION FOR
SUBSTITUTION OF PARTIES**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Derriann Charles | Christiane Prowell

**CHARLES & ASSOCIATES**

Attorneys-at-Law for the Claimant

Unit 102 (Office B), St. Kitts Castle,

Frigate Bay, St. Kitts

Telephone: (869) 466-7162

Office Mobile: (869) 667-7162

Email: derriann@charlesandassociateslaw.com

3

IN THE EASTERN CARIBBEAN SUPREME COURT
IN THE HIGH COURT OF JUSTICE
IN THE FEDERATION OF SAINT CHRISTOPHER AND NEVIS
SAINT CHRISTOPHER CIRCUIT
(CIVIL)
A.D. 2024

CLAIM NO: SKBHCV2011/0320
CLAIM NO: SKBHCV2016/0311
**CONSOLIDATED**

BETWEEN:

ADAM BILZERIAN

*Applicant/Claimant*

AND

KEVIN HORSTWOOD

*Respondent/Defendant*

---

**CERTIFICATE OF EXHIBITS**
*[to the Affidavit of Gregory Gilpin Payne]*

---

E-Filed by:

Derriann Charles

**CHARLES & ASSOCIATES**

Attorneys-at-Law for the Applicant/Claimant

Unit C20, The Sands Complex

Bay Road, Basseterre, St. Kitts

Telephone: (869) 466-7162

Office Mobile: (869) 667-7162

Email: derriann@charlesandassociateslaw.com

DETAILS OF SERVICE
PRINT NAME: *Tanya Byron*
SIGNATURE: *Tanya Byron*
COMPANY: *Byron & Byron*
COMPANY STAMP:
DATE: 21/11/2024
TIME OF SERVICE: 12:43PM

**CHARLES AND ASSOCIATES**