**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**SECURITIES AND EXCHANGE COMMISSION,**

**Plaintiff,**

v.

**Case No 89-1854 (RCL)**

**PAUL A. BILZERIAN,et al,**

**Defendants**

_____ /

**KEVIN A. HORSTWOOD**
Haven House, Grand Mal,
St Georges Parish,
Grenada W.I.

**Movant.**

v.

**PAUL BILZERIAN**, et al.,

**Defendants.**

---

## NOTICE OF FILING FOREIGN COURT TRANSCRIPT

KEVIN A. HORSTWOOD ("**Horstwood**"), *pro se*, hereby files the attached

transcript from the High Court of Justice of the Federation of Saint Christopher and



RECEIVED
Mail Room

APR 29 2025

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

Nevis.

Dated April 26, 2025.

KEVIN A. HORSTWOOD
Haven House, Grand Mal, St George,
Grenada W.I.
Tel; +1 473 534 0087
E-mail kevinhorstwood@yahoo.co.uk

## CERTIFICATE OF SERVICE

I Kevin Andrew Horstwood hereby certify that I served a copy of the foregoing by regular or electronic mail on Paul A. Bilzerian P.O. Box 2086, Basseterre, St. Kitts, Michael J. Roessner, Esq., and Securities and Exchange Commission, Division, Division of Enforcement, 100 F Street NE, Mail Stop 5631, Washington, DC 20549 on this 26th day of April, 2025.

KEVIN A. HORSTWOOD

EASTERN CARIBBEAN SUPREME COURT

*Saint Christopher and Nevis*

*In the High Court of Justice*
*Nevis Circuit*

[CRIMINAL]

**Claim No.:  SKBHCV2011/0320**

BETWEEN:

ADAM BILZERIAN

*Claimant*

V

KEVIN HORSTWOOD

*Defendant*

_____

## TRANSCRIPT OF PROCEEDINGS

## 27th FEBRUARY 2025

BEFORE:

HIS LORDSHIP, HONOURABLE JUSTICE YURI SAUNDERS, Judge



2

## INDEX

APPEARANCES......................................................................................................................................3
COURT CONVENED ............................................................................................................................4
CERTIFICATE........................................................................................................................................31


TRANSCRIPT

APPEARANCES

Ms. Derriann Charles for the Claimant

Present:
        Mr. Paul Bilzerian [by Power of Attorney]


Ms. Michelle Slack  for the Defendant

Present:
        Mr. Kevin Horstwood



**PROCEEDINGS**

[Court convened]

THE CLERK: SKBHCV2011/0320. SKBHCV2016/0311. Adam Bilzerian versus Kevin Horstwood. May I please have the appearances?

MS. CHARLES: Should it please you, Master, Dariann Charles, and I appear on behalf of the claimant in this matter. And for the court's record, Mr. Paul Bilzerian by way of power of attorney, is in fact present. Thank you.

SAUNDERS J: Thank you.

MS. SLACK: My Lord, my Lord, Michelle Slack, I appear on behalf of Mr. Kevin Horstwood, defendant and respondent to the application before the court, as well as the applicant in our request for an extension of time or adjournment. Mr. Horstwood is present.

SAUNDERS J: Thank you. Thank you, counsel. I've looked at the documents. Can you tell me, I saw it on the last occasion. I wasn't able to find it on this occasion, but the Court of Appeal gave some kind of judgment in relation to this matter previously. Is it in the bundle somewhere?

MS. CHARLES: My Lord, specifically.

SAUNDERS J: The judgment on the substitution application. I understand Justice Gill gave a decision, then it went to the Court of Appeal, and they remitted it on somewhat of a technicality, from what I recall. Well, my Lord, I'm checking the index to see if it was included in the bundle. The judgment of the Court of Appeal was in relation to the fact that Justice Gill had not exercised her discretion judiciously, because she did not properly consider whether or not the party



to be substituted would assist in resolving the issues in dispute.

MS. SLACK:                                    Sorry, Master, I know you asked a specific question. I'm not sure it was answered. I'm not sure that my friend is at liberty to see what the orders said when the Court is asking whether it was attached, and I think the response to your inquiry is, Master, it's not there.

MS. CHARLES:                                  My Lord, I was merely addressing your statement that the decision was made on a technicality, and perhaps the Court can, I'm just suggesting that some courtesy would be appreciated.

SAUNDERS J:                                   Yes, okay, let us not get too hot. I want to say, is it they gave a written judgment, or was it a certificate?

MS. CHARLES:                                  Similar, there's a certificate of the results of the appeal, and we had also provided to the Court the digest of the decision in documents that were filed by Kevin Horstwood.

SAUNDERS J:                                   Documents, I have 235, 236, 237, 241, 242. A, B, and K, H, I bundle substitution, and a file and acknowledge opposition to defendant's application for extension of time. Is it in any of those?

MS. CHARLES:                                  So it is in the exhibit, certificate of exhibit to the affidavit in opposition to the application for substitution. And I will try to draw the attention of the Court to the specific page.

SAUNDERS J:                                   That's 242?

MS. CHARLES:                                  Your indulgence, My Lord. So the certificate of result of appeal, sorry, wrong document. Right, so page 55 of the - - page 57 of the actual bundle.

SAUNDERS J:                                   Which, see which bundle?

MS. CHARLES:                                  That's titled A, B, V - - bundle



substitution.

SAUNDERS J:                    Right, let's see.

MS. CHARLES:                   I'm just thinking.

SAUNDERS J:                    You see, the matter, this is how I - - this is what I believe is the logical extension of the substitution. Ms. Charles, you want to substitute a new claimant. From what I see about the ruling, that is a relatively perfunctory exercise. Ms. Slack, you dispute that it's an ex parte application?

MS. CHARLES:                   Yes, My Lord.

SAUNDERS J:                    All right. When I go to the rules, let's see.

MS. SLACK:                     Sorry, My Lord, I didn't hear you. It was a what exercise? Did you?

SAUNDERS J:                    A perfunctory exercise. So, relatively. So, number one, it seems to me that it is, it is ex parte. There's a rule, I thought I saw a rule, which suggested that - - All right. One second. That it is, there's no need to give notice.

MS. SLACK:                     Right, that's 19.3.

SAUNDERS J:                    Right.

MS. SLACK:                     Three, My Lord, yes.

SAUNDERS J:                    Yes. So, to me, they can succeed on their application without even being heard. Right. So, your comments on the evidence, you know, I'm a little, how to put it, dubious about that. I'm looking at what could have been judgmental. What it seems to me, like I was saying, how the logical extension of the application is this, I do have to make sure, though, that, one second, the court may order a new party to be substituted for an existing one if the court can



resolve the matter more effectively by substituting a party, the existing party or existing parties interest and liability has passed to the new party. Yeah. So, I take order of the Court of Appeal to be saying that 5A and B was not complied with. Yeah. Insofar as the judge had none of that information before her, and she made the order. Yeah.

MS. SLACK:                              Yes, please, Master, because at the time the assignment was not attached to the initial application. That is correct.

SAUNDERS J:                         Right. As I see it, see the complaints that you make about the application, are complaints which, as far as you are concerned, the claimant has no claim against you. You are to strike them out. Yeah. It does occur to me, though, that the one issue of prejudice that arises is your costs. But if it is that, let's see, if it is that you have an issue that the party that has been joined is really, because I know that is what you seem to be suggesting, is a shell and offers nothing and there's no connection in reality between it and the Bilzerian's.

If it is for example, you are here to prove that on an application to strike it out as a claimant, but you want, for example, your costs against Mr. Bilzerian, and, you know, yeah, and Mr. Bilzerian, for example, when you do manage, if you do manage to strike out the claim against the claim by the company, because presumably you would be saying the company has no interest. That is what your complaint is, that the company, correct me if I'm wrong, I know you are complaining about several things, but one of the things that you've complained about is that the company really is a shell and the interest in litigation has not passed to it. If that is correct, it certainly has no cause of action against you. You would agree with that, Ms. Slack?

MS. SLACK:                              Yes, please, my Lord.

SAUNDERS J:                         Which would make it vulnerable to a strikeout application.


TRANSCRIPT

MS. CHARLES: But okay, so my Lord, I would like to start at the point where you began - -

SAUNDERS J: Uh-huh.

MS. CHARLES: - - in relation to the application that is before the court - -

SAUNDERS J: Yeah.

MS. CHARLES: - - and whether it is to be treated as ex parte, because while the court, while the rules indicate that the application may be filed without notice, we have an application of which we received notice and - -

SAUNDERS J: I'm going to listen to you, you know. However, you already filed your submissions, you are here, so not I'm not going to listen to you, but my point is simply that all this prejudice that you complain about, this is prejudice that you could deal with even after the order is made. The only one that I'm considering that, you know, you might be in a difficulty with is the costs against the Bilzerian's, if they're no longer parties to the action.

But to me, that may be curable by you joining them or even the court making an order against them insofar as they were - - had been parties to the action previously, yeah, which is a matter of record and etcetera. So I don't see why in these circumstances, a cost order could not be made against them if, for example, you strike it out on the basis of this claimant has no cause of action against me. I have one against it, but I want costs against the Bilzerian's, because they transferred it simply to avoid a cost order being made against them. Right, so do you understand? Yes, go ahead Ms. Slack.

MS. SLACK: Yes, so My Lord, that's one, that's one aspect of it and we take the court's position on that. But insofar as the court



referenced prejudice, what we were also hoping to communicate to the court was the bigger picture, which the court would have seen from the documents we put before the court and - -

SAUNDERS J:                    Yeah. But you see, on that bigger picture, I remember trial indicating that **Justice Master  Pariagsingh,** as he was, you know, as he was, had a certain view about the United States Orders. While I would like to accommodate the United States Court as much as possible, I still have an action before me in this jurisdiction to treat with, one.  Number two, Mr. Bilzerian has gone so far as I see it even recited in the United States Opinion. Mr. Bilzerian has gone so far as to relocate to St. Kitts and Nevis to be able to, you know, institute these proceedings.

MS. SLACK:                    No, my Lord.

SAUNDERS J:                    Wait, wait, wait. He's now trying to transfer the claim to a separate entity to be able to - - so that entity can conduct the proceedings without being in breach of the order. That's what I believe is motive. That's from all appearances, you know, I can't speak to subjectively, subject of intentions, but that seems to be part of the motivation for transferring to this other company. Right. So in the grand scheme, whether you know, the bigger picture insofar as it is, should I be making an order which it appears a United States Court, it has said. Mr. Bilzerian is in contempt of pursuing.

The weight I should give to that relative to the considerations in the rules and your any other legal considerations that you have. I'm feeling is, you know, not as big, put it that way. Yeah. So, so in terms of bigger picture. When you say bigger picture, I know you mean the fact of the contempt, and it's not  - -  is a contempt overseas. Not a contempt in this court.

MS. SLACK:                    Yes, my Lord.



SAUNDERS J:                    There's that that's how I'm looking at I, because the whole point of the application is to not be in contempt. Yeah.

MS. SLACK:                    Right.

SAUNDERS J:                    Apart from what else I have discussed. So I'm more concerned about your rationale for saying numbers. Why, you know, the arguments that you raise, in my view, are ones which may be very germane to strike out application, and insofar as you want to treat with it when they have tried to join a claimant to substitute the claimant. They have produced some evidence now. Yeah. Which is all that they have to do. Whether it is sufficient to warrant to merit a cause of action, as to warrant a cause of action I don't believe that is - -  the test goes so far.

Let's see what it says 5(a). The court can resolve the matters in dispute more effective by substituting the existing party or the ex parte's interest or liabilities has passed to that new party. Yeah. So (a) is a that is a different - -  I agree that (a) encompasses quite a lot. But I expect Miss Charles is wanting to rely on (b), which is that the interest has passed to produce some evidence of it. And she would rather not get into a mini trial on that point. If you have strong feelings on either of those things, (a) or (b), it could, you could agitate them by way of a strike out application.

MS. SLACK:                    Well, my Lord, the issue though, in relation to 5(b), is that court has to be satisfied that there has been a genuine assignment of that interest or liability, which is the point we were really trying to make in largely in the submissions that were filed. And without the court being in a position to determine, yes, this is a genuine transfer or assignment, then we are back in the same position we would have been in before on the previous application where the court couldn't properly say there has been some assignment or there has been some



transfer. Because the court at that time had nothing.

Here we have a document, but because of what that document represents, and in the larger scheme of things with a matter commencing in 2011, which seeks an order to say this person owns these companies, and a document before the court on the premise that I am already the owner, and so I'm able to transfer an interest, it puts the court in a difficult position to satisfy itself that, yes, the interest or liability has passed when that is something you're asking the court to determine at the same time. So - -

SAUNDERS J:                                    Okay, as we were discussing yesterday, a share is a chosen action. So if they've agreed to dispose it to another entity, you know, that's part and parcel of the same issue you're treating with. I mean, that is sufficient. One, I see that you are making claims about whether they have in fact agreed. Yeah, and so far as you criticize that they have not shown the promissory note, that's one of the things you have.

MS. SLACK:                                    Yes, my Lord, but only in the context that there is this relationship between, you know, everybody and it just seems like we don't have something that's genuine or arm's length. What we have - -

SAUNDERS J:                                    But how are we resolving that in this application? You see, because that involves a mini trial, which is why I am less attracted to dealing with it in the application for substitution. And if you have strong feelings about it, what you have to do is to make an application for summary judgment, make an application for strikeout, or deal with it at a trial.

MS. SLACK:                                    But Milord, in that vein as well, we, and the court introduced yesterday's hearing, we had the court indicating that certain things could not be proceeded with because of the larger matter.

SAUNDERS J:                                    Right.



MS. SLACK:                          We are here in the instant, in that matter, where parties are seeking a determination that they own these companies and a document being presented to the court on the basis that, yes, we know we own it and we're doing what we wish to do on that premise.

SAUNDERS J:                          No.

MS. SLACK:                          The court is being asked to take an action on the basis of that document that is being produced. And at the same time, asking the court to make a determination on ownership. So in the same vein as yesterday's matter was done.

SAUNDERS J:                          Okay, what is the prejudice to you, if they are wrong, that they don't own it?

MS. SLACK:                          Then there ought not to be an assignment.

SAUNDERS J:                          Yeah, but if they don't own it, then you do.

MS. SLACK:                          Right, Milord, and - -

SAUNDERS J:                          So, my point is, it is not as if the person or the entity that owns the share in not before the court and therefore your litigation is going to be spurious or [inaudible] because as a result of the transfer, that is the ultimate it is found that they don't own it.  You are going to be found to be the owner in which case, there's no prejudice to you.

MS. SLACK:                          Well, save and except, Milord that the proposed party or company that would substitute the claimant is a stranger to the respondent.

SAUNDERS J:                          And therefore.



TRANSCRIPT

MS. SLACK:                                    The prejudice of costs.

SAUNDERS J:                                    Right. Right. So you see, coming back to that, that is the issue, main issue I'm seeing for you, and I'm considering whether - - could a court not make a cost order insofar as, let us say, you decide or you have evidence or you have to prove that this entity does not, was not actually transferred the rights in the relevant companies. Could you, could the court not make a cost order in relation to Mr. - - the Bilzerian's up until the transfer?

MS. SLACK:                                    Milord, if you could clarify that last part, up until the transfer.

SAUNDERS J:                                    Up until the substitution, I should say. Well, that is something that the court would be entitled to do, Milord. But what I - - what I initially, the intention, what I'm communicating to the court and this may be a little, a diversion from what we are substantively discussing, but the respondent/defendant, put certain documents before the court. Not to ask the court to make a decision on the basis of a US court order, a foreign court order, because if that's what we wish to do, we are aware of the avenues that are available.

However, insofar as we should be guided by what is the overriding objective. And given the, the evidence that's disclosed in the affidavit of Kevin Horstwood, and what the party that's named as the claimant or applicant in the matter has indicated that he proposes to do. whether or not the court should take the steps to deal with a substitution in light of those circumstances. We have an indication of an impending withdrawal of the substantive matter.

SAUNDERS J:                                    Well, Mr. Gilpin Payne is here. Mr. Bilzerian is here. They are free to say whether that is what is intended or not.

MS. SLACK:                                    Well, Milord, just to say - -



SAUNDERS J:                              No, but, but like you say that is relevant to the - - as you say, the overall picture. That's not relevant to this matter. All we are concerned with here is trying to get this matter that's been on the court's books for 14 years resolved.

MS. SLACK:                              Yes, Milord, but my concern is with the Bilzerian who brought this action has not been before this court for the longest time. And we have an indication from him that he knows nothing of what is happening in his name and the evidence that is before the court.

SAUNDERS J:                              But okay, but isn't, could you not simply the - -  Go ahead, Ms. Charles.

MS. CHARLES:                              Master, I was using best efforts to not intervene, but, and I would equally. I noted those comments made in Mr. Horstwood's affidavit and I made it my duty to call counsel or US counsel and I would only say since I myself am not purporting to give evidence from the bar table. That the reflection in those affidavits are not entirely accurate. I certainly spoke to counsel, and they have indicated to me that they have, having spoken to Adam as well that I am to press on with this substitution application and more so Master because Adam's position has been for almost two years or more.

He had transferred his interest and has no interest in this matter so that my friend purporting to suggest that he is not before the court is entirely accurate because his interest has long been transferred, and in other matters or other pleadings my friend continuously makes the point that there's an attempt at delaying the progress of this matter and this very application, which once determined and the substitution is granted, gives us the opportunity to go back before the judge and get a trial date and bring this all to an end. Is the solution that in some other quarters she's asking for but is now



asking for the opposite to happen.

There's also the issue please Master that there's no counter claim live before this court in respect of this matter. So I hear my friend on the issue of possible prejudice in respect of costs, but if we also looked at the matter that we had yesterday, we had that dilemma when you came on please Master where there's a party that you that was removed and the court had to make whatever adjustments to allow for the order to then be enforced against a party that was no longer a party. It can work. So if that's the major prejudice, there's no counter claim. So there's nothing at real risk there. I think the substitution, according to the Court of Appeal, the main issue is that the assignment was not disclosed.

We have now disclosed the assignment and as the court rightfully pointed out. There is no even not even a need to have the respondent here. We could have done it ex parte provided what the court required and we are depending on clause (b), that the interest of us and asking that the substitution be granted please Master, because again we have also made an application to the court for urgent trial date, which the court has indicated we will get once these last applications are resolved, and again, these delays are attempting to just further delay the final determination of this matter in whatever direction.

SAUNDERS J:                              Yeah. Okay. Thank you, Miss Charles. All right. Ms. Slack, I just wanted to get from Ms. Charles a refresher on how Adam dropped out. And yes, the refresher is that he transferred his interest to Paul who's now transferring his interest because elsewhere he has been ordered not to take part in the litigation.

MS. SLACK:                               No, no transfer to Paul.

MS. CHARLES:                            No transfer to Paul. It's the



international - - Yes, my Lord.

SAUNDERS J:                                   All right, fine. And Paul represents international, I take it.

MS. CHARLES:                                  No, Paul has a power of attorney for Adam.

SAUNDERS J:                                   I see. I see. Okay.

MS. CHARLES:                                  So until Adam is removed from this matter, Paul acts as a power of attorney for Adam.

SAUNDERS J:                                   And Payne substitutes for - -

MS. CHARLES:                                  And Mr. Gilpin Payne is for International Investment.

SAUNDERS J:                                   Thank you. Until international is substituted. Until  - -

MS. CHARLES:                                  Yes, please. Right. Okay. You see, my concern, one is the 14-year delay and two, the prejudice to you by the rejoining of the claimant. So, certainly, I do not, I'm not going to, I've seen the application for the adjournment to deal with the - -  to deal with the application substitution today. I'm not minded to grant it. So I would like to deal with that application. I know that's what we've been discussing and, and the reason we've been doing so is, you know, that's why we came here today and having read the application, unless you can provide very, very, very potent reasons, barring, you know, what we've already discussed, I don't see that, you know, you have made a case for adjourning the application today.

Yeah. Ms. Charles' application has been pending for quite some time. I see you're trying to adjourn it, but I don't know that I could, I could speak much mind in these circumstances. I am, I see that you have filed submissions in relation to the



application notwithstanding. This is the substitution application and so I know, like I said, I know we've been discussing it, but I'm happy to hear any further submissions you have on that, and as well as Ms. Charles. Yeah.

MS. SLACK: Yes, please, Milord. So it's really two separate things. The adjournment request was really in the interest of a faster resolution to the matter.

SAUNDERS J: Which matter? This matter?

MS. SLACK: On this matter, on the basis that - -

SAUNDERS J: How would that - - Why would it be a faster resolution?

MS. SLACK: Here's why, Milord.

SAUNDERS J: Uh-huh.

MS. SLACK: Because we have an order from a foreign court, and we understand that the court does not have to make any decisions on that premise.

SAUNDERS J: Yes.

MS. SLACK: But insofar as there is evidence before the court, given by Kevin Horstwood, which indicates that the named party to this matter is taking steps to file a notice of discontinuance, we ask the court to consider giving time - -

SAUNDERS J: But Mr. Bilzerian, from what I've heard, Mr. Paul Bilzerian has a power of attorney for that, for that gentleman. You dispute that?

MS. SLACK: Well, we have seen the power



of attorney, Milord, but while a power of attorney is in existence, what we have is communication. This is in the evidence. Communication from Adam Bilzerian's attorney indicating he's taking steps to discontinue matters.

SAUNDERS J:                    No, well, Mr. Bilzerian, you say you've seen the power of attorney. Mr. Paul Bilzerian is as good as Mr. Adam Bilzerian for the purposes of instructions to Ms. Charles, and certainly for the purpose of communicating to the court whether he intends to follow through with the action. Yeah. I mean, that is the purport of the power of attorney, is it not? Ms. Slack.

MS. SLACK:                    Perhaps, Milord.

SAUNDERS J:                    Right. So could I not simply ask Mr. Paul Bilzerian whether he intends to withdraw his claim and that may be a resolution of that issue?

MS. SLACK:                    Well, Milord, what we would get would be what Paul Bilzerian's position is and I think - -

SAUNDERS J:                    No, no, no, that's my point. There's a power of attorney under which he has been acting for quite some time. Is that - - Are you suggesting it's a fraudulent document?

MS. SLACK:                    Milord, I would not use that language, save to say that if Paul Bilzerian is given an opportunity to indicate what should happen with the matter, it would be an indication from Paul Bilzerian. We have different evidence or information from exchanges we've had with the person named Adam Bilzerian who is named in the matter.

SAUNDERS J:                    So you spoke with Mr. Adam Bilzerian?

MS. SLACK:                    We've spoken with his counsel,



Milord.

SAUNDERS J:    Okay. So why doesn't he give an affidavit in the matter?

MS. SLACK:    As the evidence of Mr. Horstwood outlines, he's a U.S. attorney and not familiar with - - he was seeking guidance on how the - -

SAUNDERS J:    The Adam Bilzerian?

MS. SLACK:    Adam Bilzerian's counsel, Milord.

No, no, Mr. Adam Bilzerian can speak for himself. So if you are of the views that, presumably he's taken advice from his counsel because otherwise it couldn't be his counsel. So if you are of the view that is a reflection of Mr. Bilzerian's instructions, which is what it should be you should be able - - if that's how he feels about it, he should be able to give an affidavit in the proceedings, no?

MS. SLACK:    I agree, Milord.

SAUNDERS J:    So - -

MS. SLACK:    And so the extension of time or adjournment was merely to allow them to get their affairs in order. That was what we were indicating to the court.

SAUNDERS J:    No - - but I'm sorry, I have a - - Mr. Paul Bilzerian, who's been acting under power of attorney, granted by Adam Bilzerian for quite some time, from what I understand and from - - according to Mr. Bilzerian, can you just confirm, just so that I - - I've heard it from your lips. I know Ms. Slack doesn't doubt that's the case, but just so I've heard it from your lips. Do you intend to withdraw these proceedings as is being suggested?

MR. BILZERIAN:    No, no, my Lord, and I



recognize that Ms. Slack might not have seen it yet, but my son's lawyers filed in the District Court in the United States a paper, which Ms. Dariann Charles has, which indicates he does not intend to dismiss this claim. Further, he doesn't have the power or the right to do it because he transferred his interest two years ago. So he is - - and like I said, Ms. Slack may not have seen that document - -

MS. SLACK:                          My Lord.

MR. BILZERIAN:                     - - that was filed with the court. Okay, so - - but Ms. Dariann Charles has a copy of it, and that makes it crystal clear that his lawyers have indicated that he doesn't have the right or the power to do it, and he has no intention to do it.

SAUNDERS J:                        Yeah. But I mean, if anything, it's a cautionary tale about why, you know, this court should not be guided by what is transpiring overseas.

MS. SLACK:                          Yes, Milord.

SAUNDERS J:                        So we really are unable to say one way or the other what is transpiring. We have a lot of statements being made, in this case, from counsel for the parties. We've seen court orders, but there's a context missing, you know? So what I would say is, no, I've heard enough to know, one, Ms. Charles' application was first in time. I don't see any reason to depart from hearing that application first.  You have filed submissions in respect of the application for substitution and so my main issue with that is, one, it's a without notice application.

It's not that I don't intend to hear you. You are here, you have made submissions, I intend to have paid regard to them, right. But my point is, the reasons, in my view, the reasons are without notice application, because anything that turns on a claim of transferring their interests, which you could treat with in that application, you can treat



with after it has been made and granted via a strikeout at trial or, for example, maybe a summary judgment.

The only thing that that I believe it could be said that you can't treat with is a cost order. So, let me see, not for my part, I don't see how, I don't see that the court is not in a position to make a course order at the relevant time, if so, against Mr. Bilzerian, Mr. Adam Bilzerian, or the separate Mr. Paul Bilzerian, for example. Yeah. What we have is a situation where Mr. Adam Bilzerian gave the initiated claim, Mr. Paul Bilzerian has been conducting it on the basis of a power of attorney and the fact that he has transferred his interest to this third party. Yeah, that's the third party that we are trying to regularize now.

So, in a sense, you don't have the party, the claimant, before the court, if what Mr. Paul Bilzerian is saying is correct, and what the applicant is saying is correct. You have a situation where Mr. Adam Bilzerian has invested his interest in a claim, and mildly, it is very messy, it's not very neat. What I would say is, is there an order I can make in relation to costs, that would satisfy you, that Mr. - - The cost that you, I presume you want, are the costs against Mr. Adam Bilzerian.

MS. SLACK:                              Yes, please, Milord.

SAUNDERS J:                              Right. So, do you have some kind of, I know Ms. Charles raised the issue of a counterclaim, but have you challenged to any extent, have you counterclaimed against Mr. Adam Bilzerian, or have you challenged, have you raised in issue? I don't see that you would, that Adam Bilzerian has not transferred the proceedings to any third party.

MS. SLACK:                              In the substantive claim, no Milord.

SAUNDERS J:                              No, because, so, my issue is - -



Okay. One second. Mr. Bilzerian, are you, would Mr. Adam, would you on behalf of Mr. Adam Bilzerian, be prepared to undertake to pay any cost order made against the third party entity?

MR. BILZERIAN:                    Well, let me just make it clear, and Mr. Gilpin Payne is here, but that entity has millions of dollars. I mean that is not a shell entity, millions of dollars.

SAUNDERS J:                    Mr. Bilzerian, you see the thing is.

MR. BILZERIAN:                    Yes, we would indemnify, I will say on behalf of my son, that if there's a cost order entered in favor of Mr. Horstwood and International Investments doesn't pay it, that my son will pay it. I'll make that representation now.

SAUNDERS J:                    All right. Ms. Slack, if I made an order in relation to exactly what is being said.

MS. SLACK:                    Well, my Lord, save that not, if an order is made against IIL and IIL does not pay it, but if an order, a cost order is made in Mr. Horstwood's favor, that the cost order is to be paid by Adam Bilzerian.

SAUNDERS J:                    No, no, I believe what Ms.  - - I don't, I don't have a difficulty with how Mr. Bilzerian is putting it. Ultimately, the party is the company, and that's the company that should pay the order. I know you have a concern that they will not. And he has said, as if offering a guarantee that he, in the event that they refuse to pay a cost order, he, Mr. Adam Bilzerian will. And you notice, as you know, he's not before the court. Mr. Adam Bilzerian, as you are saying, is in fact the party that is before the court.

You see, my difficulty with the submission is that there's no, you know, there's



not, there's no claim, whether in the defense or counterclaim, that he is the party before the court, Mr. Adam Bilzerian. But still, just so that we can move the matter forward, I'm trying to treat with the cost issue so that, one, there's not going to be some kind of, you know, we're not going to go on and on with this application. So, for example, to the Court of Appeal, because you want to satisfy your cost prejudice, yeah, which is your right. So I'm just trying to treat with it now.

MS. SLACK: Yes, my Lord. I just want to address one thing.

SAUNDERS J: Yes.

MS. SLACK: So there was no issue in the substantive proceeding about a transfer. The matter was, at all times, Adam Bilzerian and Kevin Horstwood.

SAUNDERS J: Right.

MS. SLACK: The issue of IIL became live when the substitution application was sought, initially.

SAUNDERS J: Right.

MS. SLACK: There would have been - -

SAUNDERS J: IIL has said the interest in litigation has been transferred to it.

MS. SLACK: Right.

SAUNDERS J: You have disputed that?

MS. SLACK: In relation to the application, yes, my Lord.

SAUNDERS J: Right. Good. So, in the event that you are correct on that, yeah, and in the event that you foresee some kind of failure to



pay a cost order, etcetera, etcetera, Mr. Bilzerian is saying, I, in the event, the court is, I'm going to recite, he, on behalf of Adam Bilzerian and the third party entity, accept that if the third party entity does not pay any cost, any cost order and entered against it by consent, Adam Bilzerian is going to pay the cost, the cost order, the same cost order.

MS. SLACK:                    Very well, my Lord.

SAUNDERS J:                    Right. So I will say, when a claims applicant substitutes himself with the entity, what's the name of the entity, please, Ms. Charles?

MS. CHARLES:                    International Investments Limited, Master.

SAUNDERS J:                    L-I-M-I-T-E-D?

MS. CHARLES:                    Yes, please, the extended version. L-I-M-I-T-E-D.

SAUNDERS J:                    And upon, Paul Bilzerian holds a power of attorney for Adam Bilzerian in the [inaudible] to the court that Adam Bilzerian consented, he agreed, and consented to pay any cost order made against International Investments Limited in these proceedings, if the same is not paid by that entity within 30 days. Right.  So can I now say - -

MS. CHARLES:                    Sorry Master, I was literally just looking back at the incorporation documents, it's L-T-D, apologies.

SAUNDERS J:                    Right. Right. And I want to say next, and upon the defendant not opposing the application [inaudible] to substitute claimants, substitute International Investments Limited.

MS. SLACK:                    Well, my Lord, I'm not sure if you could say that the application was not opposed.



SAUNDERS J:                              Well, I know you filed the application for adjournment, but I may not reach to the application period. So point is, is it that you mean that you have this application for an adjournment? Or you mean a substantive application? I thought you had boiled down your opposition to this application, the substitution application to the cost issue.

MS. SLACK:                              Well, okay, so my Lord, we are opposed to the substitution. I've already moved away from the adjournment because I know I - -

SAUNDERS J:                              Right, good. But I thought we had boiled down your opposition to the substitution to the cost.

MS. SLACK:                              Well, it remained an overall opposition, Milord.  We - -

SAUNDERS J:                              Okay, so if not the cost, what is the other objection? What is your prejudice?

MS. SLACK:                              So my Lord, we had a general opposition to the substitution. We - -

SAUNDERS J:                              I know you proposed - -

MS. SLACK:                              Right.

SAUNDERS J:                              - - but the question is why? It's not a matter that concerns you, right? Which is why it's an ex parte application. So what we want to know is what is the premise of the objection, apart from the technical legal points?

MS. SLACK:                              But Milord what is set out in the affidavit and submissions that are before the court, we noted where the court was going, and given that the court has accepted the submissions insofar as they concern the



prejudice - -

SAUNDERS J:                                    Yes.

MS. SLACK:                                    - - we accept that our opposition was dismissed, if I could refer to it that way. But we have an order that takes care of the general application in a sense, but we would prefer for the order to recite that it was opposed.

SAUNDERS J:                                    Right. So, what else? Okay, so I will recite, and I'm talking about Paul Bilzerian, who was a former attorney for Adam Bilzerian, indicating to the court that Adam Bilzerian agreed and consented that he, on behalf of - - that he on behalf of Adam Bilzerian, agreed and consented to pay any cost or the mail against International Investment Ltd in these proceedings if the same was not paid by that entity within 30 days. So I will take out the opposition there. Are there any other oral submissions related to the application by either of the party? The substitution application?

MS. CHARLES:                                    Nothing on behalf of the applicant, please, Master.

MS. SLACK:                                    No, please, My Lord.

SAUNDERS J:                                    Thank you.

MS. CHARLES:                                    And Master and I totally understand that the court is purporting to draft the order in a particular manner, but perhaps we could - -

SAUNDERS J:                                    What I will do is, I'm going to reserve Ms. Charles, but what I will do is I will reserve, and obviously this order application is being contested, I have to give my reasons in the application for the order. So I have to draft the judgment. Yeah. I could do an oral decision here, but given the



amount of documents filed, I would rather not do so. I prefer to, you know, review the documents and give my - - a written, it wouldn't be a written decision, an order, but at least one that, you know, condescending to my consideration and reasons, as well as the fact that there was this concession by Adam Bilzerian that removed the issue, of course, which for me was really the biggest factor. Yeah. So that's what I'm going to do. So subject to that, I will prepare to hear any other submissions. I believe me, Ms. Slack has said she didn't have any.

MS. SLACK:                                    No, my Lord, we would have put forward our submissions in writing.

SAUNDERS J:                                    Yes. Ms. Charles, so do you have any?

MS. CHARLES:                                    Yeah, I stand on my written submissions, please, Master, both that and the submissions in reply. I have nothing further unless I could be of any assistance to the court.

SAUNDERS J:                                    Yes. So I would say the court's judgment is reserved. Can we have a date in April, please?

THE CLERK:                                    The 8th of April.

SAUNDERS J:                                    8th?

THE CLERK:                                    Yes.

SAUNDERS J:                                    Right. And I'll say, the claimant shall file his - - Yes, the claimant shall file this order. Yeah. Yes. So what I will do if I do grant the application is, I will obviously order Mr. Bilzerian to pay any cost order made in the proceedings against Investment International Limited within 30 days of nonpayment by that entity. Yeah.

MS. SLACK:                                    Yes, please, my Lord. And the



date, Milord, is that the date is the 8th April, the return date?

SAUNDERS J:                         That's right. So in April, we come back to court.

MS. CHARLES:                        And Master, I noted in our submissions, I think we did speak to the issue of cost as well on this application subject to the court's determination as to what it's - -

SAUNDERS J:                         Given it was an ex parte. application. Nah. Ms. - -  Yes, so I assume you are asking for your cost, Ms. Charles.

MS. CHARLES:                        Yes, please, Master.

SAUNDERS J:                         Ms. Charles, thank you for reminding me of that. Ms. Slack, yes. What is your position in relation to cost?

MS. CHARLES:                        My Lord, I think the position is clear. The first thing that the court indicated to us is that, you know, this is really a without notice application and - -

SAUNDERS J:                         So you oppose it.

MS. SLACK:                          I did, Milord.

SAUNDERS J:                         Yeah.

MS. SLACK:                          But what as happened in the first substitution application and what the Court of Appeal indicated is the nature of an application such as this, whether it is opposed or not, is one where you're making basically an amendment on your own motion that had nothing to do with Kevin Horstwood. And insofar as you now want to change the claimant in the matter, the costs are yours.

SAUNDERS J:                         Well, to change the claimant, yes, but the cost of the application, the cost of the deed, the cost of arguing the application.


TRANSCRIPT

Well, the cost of arguing the application. I mean, you see, when I think about it, Ms. Charles, the marginal difference is, you know, ultimately these are questions I would have had to ask in any event. I agree, the time that we were here may be lengthened a little bit, but I don't think we've been here half an hour yet. So the question is, how much has it been lengthened?

Now, I'm conscious that the submissions you filed would have been a little bit more copious because of the opposition that you receive. But I suppose I would reserve on that as well. I do take Ms. Slack's point that the application is without notice, and insofar as she's saying that the Court of Appeal has made an indication of what the cost position should be, I know that there's a general cover on the rules that, you know, if you are seeking permission to amend, the costs are yours, right. That is your issue. But ordinarily, such an application is with notice.

If you're seeking permission to amend, if you're seeking permission to join a party, to substitute a claimant, it's not on notice ordinarily, one, and two, I also accept that the general position that costs, you know, costs at the CMC are prescribed costs. Yeah. And I don't know that the [inaudible], they are not, you know, I believe we're still at the CMC stage. So there's also that factor to be considered as well. Yeah.

SAUNDERS J:                              There are authorities in submission, maybe on both sides, that were put before the Court in writing on the issue of costs, and the Court also has the digest of the Court of Appeal decision in relation to what their view was on how costs should be dealt with.

SAUNDERS J:                              Yes, thank you very much, Ms. Slack. Unless there's anything else, Counsel?

MS. SLACK:                              Not on my end.

MS. CHARLES:                              Nothing further, please, Master.



SAUNDERS J:                                    Yes, thank you. Yes, so the parties are excused, Counsel, you are both excused.

MS. CHARLES:                                  Grateful to the Court, please, Master.

MS. SLACK:                                    Thank you Milord.

SAUNDERS J:                                   Yes, thank you. All right. Thank you very much, Ms. Branch, we've come to the end of our sitting. I will send these orders to you within the day, hopefully. Yes.

MS. BRANCH:                                   Okay, Master. Take care.

SAUNDERS J:                                   Yes, you take care. I'll see you guys next month.

MS. BRANCH:                                   Thanks very much, Master.

SAUNDERS J:                                   All right, bye-bye.

[THEREUPON, court adjourned]



TRANSCRIPT

## CERTIFICATE

I, **JEAN MORILLE** of Transcript Solutions (SLU), Gros Islet, Saint Lucia, do hereby certify:

That the foregoing transcript is a true and accurate account of the audio recording in the matter of ***Adam Bilzerian versus Kevin Horstwood.***

I further certify that the foregoing **30** pages of the above-mentioned proceeding are a true and accurate computer-generated record of the audio recording.

Dated this **15**th day of **April** 2025

`Per:
*Transcript Solutions (SLU)*

_____
**JEAN MORILLE, APS, CMRS**

**Transcript Solutions (SLU)**

